## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EARTHWORKS<br>1612 K Street, NW, Suite 808<br>Washington, D.C., 20006<br><br>HIGH COUNTRY CITIZENS' ALLIANCE<br>716 Elk Ave, P.O. Box 1066<br>Crested Butte, Colorado 81224<br><br>GREAT BASIN RESOURCE WATCH<br>85 Keystone Ave., Suite K<br>Reno, Nevada 89503<br><br>SAVE THE SCENIC SANTA RITAS<br>8987 E. Tanque Verde #309-157<br>Tucson, Arizona 85749<br><br>WESTERN SHOSHONE DEFENSE PROJECT<br>P.O. Box 211308<br>Crescent Valley, Nevada 89821<br><br>                      Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF THE INTERIOR<br>Attention:  Kenneth Salazar<br>Secretary of the Interior<br>1849 C Street, N.W.<br>Washington, D.C. 20240<br><br>U.S. DEPARTMENT OF AGRICULTURE<br>Attention:  Thomas Vilsack<br>Secretary of Agriculture;<br>1400 Independence Ave., S.W.<br>Washington, D.C. 20250<br><br>U.S. BUREAU OF LAND MANAGEMENT<br>1849 C Street N.W.<br>Room 5665<br>Washington, D.C. 20240 | Civil Case No. _____<br><br>COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF |

U.S. FOREST SERVICE )
1400 Independence Ave., S.W. )
Washington, D.C. 20250-0003 )
)
　　　　　　　　Defendants. )
)

## I. PRELIMINARY STATEMENT

1.　　This is an action for declaratory and injunctive relief against the U.S. Department of the Interior ("DOI"), Secretary of Interior Ken Salazar, DOI's U.S. Bureau of Land Management ("BLM"), the U.S. Department of Agriculture ("DOA"), Secretary of Agriculture Tom Vilsack, and DOA's U.S. Forest Service ("USFS").  Plaintiffs, Earthworks, High Country Citizens' Alliance ("HCCA"), Great Basin Resource Watch ("GBRW"), Save the Scenic Santa Ritas ("SSSR"), and the Western Shoshone Defense Project ("WSDP"), request that this court review, declare portions invalid, and partially enjoin implementation and enforcement of the DOI/BLM's Interim Final Rule titled "Mining Claims Under the General Mining Laws," published in the Federal Register on December 4, 2008.  73 Fed. Reg. 73789-73794 ("2008 Mining Claim Rule" or "2008 Rule").

2.　　The Mining Claim Rule was issued in direct response to the decision and Order of the United States District Court for the District of Columbia, in Mineral Policy Center v. Norton, 292 F.Supp.2d 30 (D.D.C. 2003)(Civ. No. 01-0073, HHK – Henry H. Kennedy, presiding).

3.　　Plaintiffs also request that this court review, declare portions invalid, and partially enjoin implementation and enforcement of the DOI/BLM's Final Rule titled "Locating, Recording, and Maintaining Mining Claims or Sites," published in the Federal Register on October 24, 2003. 68 Fed. Reg. 61046-61081 (Oct. 24, 2003), particularly

those portions of the October 24, 2003 Final Rule related to Millsites, or Millsite Claims (hereinafter, "2003 Millsite Rule").

4.     Plaintiffs also seek to declare invalid and enjoin the DOA's and USFS's adoption of, and reliance upon, the two above-mentioned DOI/BLM Rules (and the policies contained therein) in DOA/USFS' review, management, and regulation of mining operations on federal public lands administered by DOA/USFS.

5.     The 2008 Mining Claim Rule and the 2003 Millsite Rule do not comply with the statutory authorities under which they were promulgated, specifically the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. § 1701 *et seq.*, the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et. seq.*, the General Mining Law of 1872 ("The Mining Law") 30 U.S.C.  §§ 22-47; and the Administrative Procedure Act, 5 U.S.C. §§ 553, 701-706.  Any reliance by the Defendants on these two Rules and the policies contained therein in the management, review, approval, or regulation of mining operations on public lands also violates these statutes.

6.  .   The 2008 Mining Claim Rule fails to correctly respond to, contradicts, and essentially ignores the decision and Order issued by Judge Kennedy in Mineral Policy Center.  That Order, in relevant part, established the proper scope of DOI/BLM's authority, pursuant to FLPMA and the Mining Law, over mining operations proposed on lands not covered by "valid and perfected claims." *See* 292 F.Supp.2d at 46-48.  The Order partially remanded DOI/BLM's mining regulations challenged in that case (36 CFR Subpart 3809), finding that DOI/BLM had improperly interpreted FLPMA and the Mining Law regarding mining operations proposed on lands not covered by valid claims.  The Order required DOI/BLM to publish regulations governing mining operations that

were proposed on lands that were not covered by valid mining or millsite claims and

directed DOI/BLM to issue regulations requiring such mining operations on federal land

to pay Fair Market Value ("FMV") for the use of such lands. Id. at 49-51.

7.      More specifically, the Order stated:

> Operations neither conducted pursuant to valid mining claims nor otherwise
> explicitly protected by FLPMA or the Mining Law (i.e., exploration activities,
> ingress and egress, and limited utilization of mill sites) must be evaluated in light
> of Congress's expressed policy goal for the United States to "receive fair market
> value of the use of the public lands and their resources." 43 U.S.C. § 1701(a)(9).
> Because, in promulgating 65 Fed. Reg. 70,013, Interior was not cognizant of its
> statutory obligation to attempt to "receive fair market value of the use of public
> lands and their resources," and did not balance its competing priorities with that
> obligation in mind, the court finds that the regulations must be remanded to
> Interior, so that Congress's policy goal, as set forth in § 1701(a)(9), may be given
> proper effect. Judgment shall therefore be entered for plaintiffs on this claim.

292 F.Supp.2d at 51.

8.      In the 2008 Mining Claim Rule, DOI/BLM failed to comply with Judge

Kennedy's Order.   Instead, the 2008 Rule states that DOI/BLM will not require the

payment of FMV, relying on the same legal interpretations of FLPMA and the Mining

Law rejected by Mineral Policy Center.  The 2008 Rule perpetuates DOI/BLM's position

– rejected by Mineral Policy Center – that FLPMA and the Mining Law preclude the

agencies from applying the "wide discretion in deciding whether to approve or

disapprove of a miner's proposed plan of operations" on lands not covered by valid

claims, Mineral Policy Center, 292 F.Supp.2d at 48, and preclude the agencies from

requiring the payment of FMV. See 73 Fed. Reg. at 73791-92.

9.      Thus, under the 2008 Rule, DOI/BLM will not inquire into whether a

specific claim or group of claims proposed for mining operations are valid, will not apply

its FLPMA-mandated discretion over operations proposed on lands not covered by valid

claims, and will not require the payment of FMV.  In practice and in formal agency manuals and policies, the DOA/USFS have adopted these DOI/BLM positions.

10.     In promulgating the 2008 Mining Claim Rule, DOI/BLM also failed to comply with the strict procedural requirements of NEPA.  In issuing the 2008 Rule, DOI/BLM failed to conduct the environmental analysis required by NEPA, and failed to provide any public review of the environmental impacts that will occur on public land as a result of the 2008 Rule.

11.     Instead, DOI/BLM determined that the 2008 Rule was "categorically excluded from environmental review under" NEPA. 73 Fed. Reg. at 73792.  Such an exclusion from NEPA's environmental and public review processes ignores the very real environmental impacts that the DOI/BLM's 2008 Rule (and DOI/BLM's and DOA/USFS' implementation thereof) will have on public land across the West.

12.     In the 2003 Millsite Rule challenged in this case, DOI/BLM illegally reversed and overturned the previous DOI/BLM position on the strict limitations on the number and allowable acreages of millsite claims proposed to be utilized by mining operations.

13.     A millsite claimant has "the right to locate up to five acres of nonmineral land for mill site use in association with **each** valid mining claim. 30 U.S.C. § 42." Mineral Policy Center, 292 F.Supp. 2d at 47 (emphasis added).  Prior to the 2003 Millsite Rule, DOI/BLM interpreted § 42 of the Mining Law similarly to this interpretation. However, in the 2003 Rule, DOI/BLM reversed itself and stated that a claimant had a statutory right to locate/claim as many millsite claims and acres as the claimant needed

for a proposed mining operation, regardless of the number of associated mining claims to be utilized by that mining operation.

14.     This policy reversal effectively eliminated the limitations on the allowable acreage and number of millsites under § 42. *See* 68 Fed. Reg. at 61054-61055. Thus, by greatly expanding the number and acreage of millsite claims that can be claimed and developed at a mine site in excess of what the Mining Law allows, the 2003 Millsite Rule illegally creates statutory rights against the United States where none exist, and severely limits the regulatory authority of the federal land agencies to protect the environment and non-mining resources of the public lands.

15.     In promulgating the 2003 Millsite Rule, DOI/BLM also failed to comply with the strict procedural requirements of NEPA. In issuing the 2003 Millsite Rule, DOI/BLM failed to conduct the proper environmental analysis, and failed to provide for any public review of the environmental impacts that will occur on public land as a result of the 2003 Rule.

16.     Instead, DOI/BLM claimed that it "conducted an environmental assessment and have concluded that this rule would not have a significant impact on the quality of the human environment under [NEPA], and therefore an Environmental Impact Statement is not required." 68 Fed. Reg. at 61063.

17.     This so-called "environmental assessment" was never submitted for public review, as required by NEPA. DOI/BLM also failed to adequately justify its failure to prepare an Environmental Impact Statement ("EIS") for the promulgation of the 2003 Millsite Rule.

18.     In addition, BLM failed to comply with NEPA's full environmental and public review requirements, thereby ignoring the very real environmental impacts that the DOI/BLM's 2003 Millsite Rule (and DOI/BLM's and DOA/USFS' implementation thereof) will have on public land across the West.

19.     The implementation of the 2008 Mining Claim Rule and the 2003 Millsite Rule will have direct, significant, and adverse impacts on Plaintiffs and their members and the environment in the western public land states. By interpreting FLPMA and the Mining Law to grant statutory rights to mining claimants where none exist, and to improperly restrict federal authority over proposed mining operations, the agencies have violated their duties to protect public land and the environment from degradation and pollution caused by mining operations.

20.     This action arises under and alleges a violation of the General Mining Law of 1872 ("The Mining Law"), 30 U.S.C.  §§ 22-47; the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. § 1701 et seq.; the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et. seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq..

21.     The 2008 Mining Claim Rule and the 2003 Millsite Rule challenged in this lawsuit (the "Challenged Rules") are not in accordance with the statutory authorities under which they were promulgated, including the Mining Law, FLPMA, NEPA, and the APA. By adopting regulations not authorized by law, DOI/BLM has acted arbitrarily and capriciously and not in accordance with law in violation of the APA. Until DOI/BLM revises the regulations, and all Defendants revise their policies, to comply with federal

law, Plaintiffs seek an order enjoining DOI/BLM and DOA/USFS from processing or authorizing any mining related operations not in accordance with applicable laws.

22.     This relief is necessary to prevent illegal agency action, to uphold federal law, and to prevent irreparable harm to the environment and to Plaintiffs' interests. If the Defendants are permitted to implement the unlawful portions of the Challenged Rules, substantial, irreparable, and significant harm will result to the public lands in the West and to Plaintiffs and their members.

## II. JURISDICTION AND VENUE

23.     Jurisdiction over this action is conferred by 28 U.S.C. § 1331(federal question), § 2201 (declaratory relief), and § 2202 (injunctive and further relief), and under the judicial review provisions of the APA, 5 U.S.C. §§ 701-706. An actual controversy exists between the parties hereto within the jurisdiction of this Court. Defendants have acted or failed to act in an official capacity under legal authority within the meaning of 5 U.S.C. § 702.

24.     Venue in this court is proper pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703. This is the district in which Defendants reside, and the district in which a substantial part of the challenged actions occurred, including the issuance of the Challenged Rules.

## III.     PARTIES

25.     Plaintiff Earthworks (formerly Mineral Policy Center) is the nation's foremost conservation organization focusing on mining issues, and particularly mines operating on public land pursuant to the General Mining Law of 1872, FLPMA, and other public land laws. Earthworks is a non-profit organization with members nationwide.

Many of its members reside in the western U.S. and use and enjoy the public lands that will be affected by the Challenged Rules.

26.     Earthworks' members' interests in using DOI/BLM and DOA/USFS public lands for hiking, aesthetic enjoyment, wildlife viewing, photography, and scientific study will be adversely and significantly affected by the agencies' consideration of, and/or approval of, mining proposals utilizing the Challenged Rules. Members of Earthworks use and enjoy lands that are proposed for mining operations whose management and regulation will be governed by the Challenged Rules. DOI/BLM's and DOA/USFS' failure to adequately protect environmental and other resources from such mining operations will adversely affect the use and enjoyment of public lands by Earthworks' members.   The new regulatory regime challenged in this case fails to adequately consider and protect these interests of Earthworks and its members.

27.     The Challenged Rules violate Congress' mandate that the public lands be managed on the basis of environmental protection, multiple use, sustained yield, fair economic return for the federal treasury, and in the public's best interest. Earthworks has an interest in having FLPMA's, the Mining Law's, and other public land law statutory mandates upheld – both in terms of its practical effect on the ground and its legal effect in setting the regime by which mining development proposals will be evaluated on DOI/BLM and DOA/USFS lands.

28.     Plaintiff High Country Citizens' Alliance ("HCCA") is a non-profit citizens' conservation organization located in Crested Butte, Colorado.   HCCA was formed in 1977 in direct response to the original proposal by AMAX Exploration Inc. to construct and operate a molybdenum mine on mining and millsite claims on public lands

administered by the DOA/USFS outside of Crested Butte on Mt. Emmons. U.S. Energy Corporation is the successor in interest to AMAX and has styled a similar proposal as the Mt. Emmons Project. The mission of HCCA is to champion the protection, conservation and preservation of the natural ecosystems within the Upper Gunnison River Basin, including Mt. Emmons which forms the western skyline of the town of Crested Butte.

29.    HCCA's members' interests in using DOA/USFS public lands for hiking, skiing, aesthetic enjoyment, wildlife viewing, photography, and scientific study will be adversely and significantly affected by the DOA/USFS's consideration of, and/or approval of, mining proposals utilizing the Challenged Rules. More specifically, HCCA's members use and enjoy lands that are proposed for mining operations whose management and regulation will be governed by the Challenged Rules, including the Mt. Emmons Project.

30.    The agencies' failure to adequately protect environmental and other resources from such mining operations will adversely affect the use and enjoyment of public lands by HCCA's members. The new regulatory regime fails to adequately consider and protect these interests of HCCA and its members. The Challenged Rules violate Congress' mandate that the public lands be managed on the basis of environmental protection, multiple use, sustained yield, fair economic return for the federal treasury, and in the public's best interest. HCCA has an interest in having FLPMA's, the Mining Law's, and other public land law statutory mandates upheld – both in terms of its practical effect on the ground and its legal effect in setting the regime by which mining development proposals will be evaluated on DOA/USFS lands.

31.     On April 3, 2007, HCCA submitted a letter to the DOA/USFS requesting that DOA/USFS inquire into the validity of the mining and millsite claims associated with the proposed Mt. Emmons Project (formerly known as the Lucky Jack Project) on and around Mt. Emmons, and to assure that the lands proposed for the Project were covered by valid claims.  In its response letter dated June 19, 2007, DOA/USFS rejected HCCA's request, and repeated the legal argument contained in the preambles to the Challenged Rules that the agencies would not review the validity of the claims, and would simply assume that the mining claimant had a statutory right to develop the claims – in violation of the Mining Law and the court's decision in <u>Mineral Policy Center</u>.

32.     In a similar request, members of Congress from Colorado, John Salazar and Mark Udall (now Senator Udall), submitted a letter to the USFS on June 23, 2008, requesting that the USFS review and determine whether the mining and millsite claims at the site of the Mt. Emmons Project were valid.  On July 3, 2008, the USFS responded and repeated the legal argument contained in the preamble to the Challenged Rules that the agencies would not review the validity of the claims, and would simply assume that the mining claimant had a statutory right to develop the claims – in violation of the Mining Law and the court's decision in <u>Mineral Policy Center</u>.

33.     The majority of the lands proposed for mine waste and tailings facilities at the Mt. Emmons Project are on millsite claims.  Under the DOI/BLM and DOA/USFS interpretation of the Mining Law's millsite provision, 30 U.S.C. § 42, as embodied in the 2003 Millsite Rule, DOA/USFS will consider that the operators of the Mt. Emmons Project will be able to utilize as many of their millsite claims as the company needs for these facilities as a statutory right – in violation of the Mining Law.  The number and

acreages of millsite claims proposed by the Mt. Emmons Project exceed the number and acreages allowed by a proper interpretation of § 42 of the Mining Law. For the Mt. Emmons Project, DOA/USFS also does not intend on requiring the payment of fair market value for the use of these public lands not covered by valid claims – in this case the invalid millsite claims which exceed the limits on acreage and numbers contained in § 42 of the Mining Law.

34.     Plaintiff Great Basin Resource Watch ("GBRW") (formerly Great Basin Mine Watch) is a nonprofit organization based in Reno, Nevada that is concerned with protecting the Great Basin region's land, air, water, wildlife and communities from the adverse impacts of hardrock mining. GBRW is a coalition of environmentalists, ranchers, and Native Americans dedicated to reforming the hardrock mining industry and the agencies that regulate them to protect the land, air, water and Native American resources of the Great Basin. GBRW's board and membership is diverse with representative of several environmental and social groups and Native Americans. GBRW (then Great Basin Mine Watch) was a plaintiff in <u>Mineral Policy Center</u>.

35.     GBRW's members include individuals that reside in Nevada who use and enjoy the public lands that will be affected by these Challenged Rules. Their interests in using the public lands for hiking, aesthetic enjoyment, wildlife viewing, photography, traditional religious and cultural uses, and scientific study will be adversely affected and were not given due consideration and protection by promulgation and implementation of the Challenged Rules.

36.     GBRW's members use and enjoy lands that are proposed for mining operations whose management and regulation will be governed by the Challenged Rules.

DOI/BLM is currently reviewing proposed mining operations on public land in Nevada that rely upon, or will rely upon, the Challenged Rules in the agencies' review and approval of the mining operations.

37.    DOI/BLM is currently reviewing the proposed expansion of the Round Mountain Mine in central Nevada.  Members of Plaintiffs GBRW, Earthworks, and Western Shoshone Defense Project (WSDP) use and enjoy the public lands at and adjacent to the Round Mountain expansion site that will be adversely affected by the project.  That project proposes to expand an existing open pit gold mine, blast and excavate a new open pit, and conduct related processing and waste dumping on public land.  The Round Mountain Mine expansion proposes to dump mine waste, conduct cyanide leaching operations, and other non-extraction activities, on mining and/or millsite claims.  The expansion will result in a total of at least 4,698 acres of new ground disturbance, of which 4,581 acres will be on public land administered by DOI/BLM.

38.    Relying on the 2008 Mining Claim Rule, 2003 Millsite Rule, and related DOI/BLM policies based on these Rules, DOI/BLM has not determined whether any of these mining or millsite claims proposed for use at the Round Mountain Mine site are valid, nor do the agencies intend to make such determination prior to approving the expansion.  For the Round Mountain expansion, DOI/BLM also does not intend on requiring the payment of fair market value for the use of public lands not covered by valid mining or millsite claims.  DOI/BLM's review and approval of the expansion of the Round Mountain Mine utilizing the Challenged Rules and the associated DOI/BLM policies will adversely affect the use of public lands by members of GBRW, Earthworks, and WSDP.

39.     Within the past few years, DOI/BLM has approved other large-scale open pit gold mines in Nevada without inquiring as to whether the mining or millsite claims used at these sites are/were valid.  Neither has DOI/BLM required the payment of fair market value for the use of public lands not covered by valid mining or millsite claims at these sites.

40.     The agencies' failure to adequately protect environmental and other resources from such mining operations will adversely affect the use and enjoyment of public lands by GBRW's members.  The new regulatory regime fails to adequately consider and protect these interests of GBRW and its members.  The Challenged Rules violate Congress' mandate that the public lands be managed on the basis of environmental protection, multiple use, sustained yield, fair economic return for the federal treasury, and in the public's best interest.  GBRW has an interest in having FLPMA's, the Mining Law's, and other public land law statutory mandates upheld – both in terms of its practical effect on the ground and its legal effect in setting the regime by which mining development proposals will be evaluated on DOI/BLM and DOA/USFS lands.

41.     Plaintiff Save the Scenic Santa Ritas ("SSSR") is a volunteer-based, non-profit organization, based in Tucson, Arizona.  The mission of SSSR is to protect the scenic, aesthetic, recreational, environmental and wildlife values of the Santa Rita Mountains, Patagonia Mountains, Canelo Hills and San Rafael Valley through participation in the permitting process, education and outreach, including protection of these areas from degradation due to mining activities.  Among other activities, SSSR is

currently working to protect public land from a large open-pit copper mine known as the Rosemont Copper Project.

42.     SSSR and its members' interests in using public lands for hiking, aesthetic enjoyment, wildlife viewing, photography, and scientific study will be adversely and significantly affected by the DOA/USFS's consideration of, and/or approval of, mining proposals utilizing the Challenged Rules. SSSR's members use and enjoy lands that are proposed for mining operations, including the Rosemont Project, whose management and regulation will be governed by the Challenged Rules. SSSR's and its members' interests in using the public lands for hiking, aesthetic enjoyment, wildlife viewing, photography, and scientific study will be adversely affected and were not given due consideration and protection by promulgation and implementation of the Challenged Rules.

43.     The agencies' failure to adequately protect environmental and other resources from such mining operations will adversely affect the use and enjoyment of public lands by SSSR's members.   The new regulatory regime fails to adequately consider and protect these interests of SSSR and its members.   The Challenged Rules violate Congress' mandate that the public lands be managed on the basis of environmental protection, multiple use, sustained yield, fair economic return for the federal treasury, and in the public's best interest.   SSSR has an interest in having FLPMA's, the Mining Law's, and other public land law statutory mandates upheld – both in terms of its practical effect on the ground and its legal effect in setting the regime by which mining development proposals will be evaluated on public lands.

44.     On December 19, 2006, the County Administrator for Pima County, Arizona, in which the proposed Rosemont Project would be located, submitted a letter to

the DOA/USFS requesting that DOA/USFS inquire into the validity of the mining and millsite claims associated with the proposed Rosemont Project, and to assure that the lands proposed for the Project were covered by valid claims. In a response letter dated February 11, 2007, DOA/USFS rejected the County's request, and repeated the legal argument contained in the preamble to the Challenged Rules that the agencies would not review the validity of the claims, and would assume that the mining claimants had a statutory right to develop the claims – all in violation of FLPMA, the Mining Law, and the court's decision in Mineral Policy Center.

45.     On June 8, 2009, Members of Congress from Arizona, Raul Grijalva and Gabrielle Giffords, wrote a letter to Defendant Agriculture Secretary Tom Vilsack which expressed their significant concern that DOA/USFS refused to inquire into the validity of the mining claims at the proposed Rosemont site. The letter also questioned DOA/USFS' stated position that the agencies did not have the authority to deny the Rosemont Project. This position was based on the agencies' policies codified in the Challenged Rules – which granted statutory rights to develop mining claims in excess of what is allowed by the Mining Law.

46.     The majority of the lands proposed for the waste, processing, and tailings facilities at the Rosemont Project are on mining claims on public land. The actual mine pit is proposed on private land. Neither DOI/BLM nor DOA/USFS have inquired into whether these mining claims are valid under the Mining Law – nor, under the Challenged Rules and associated policies, do the agencies intend to verify that such claims are valid and perfected prior to approving the Rosemont Project. Also, under the Challenged Rules, the agencies will not exercise their discretionary authority under FLPMA and

related policies governing lands not covered by valid claims, nor will the agencies require the payment of fair market value for the use of public lands not covered by valid mining or millsite claims – in violation of the court's decision in <u>Mineral Policy Center</u>.

47.    Plaintiff Western Shoshone Defense Project (WSDP) is a non-profit organization located in northern Nevada. Its mission is to protect and preserve Western Shoshone rights and homelands for present and future generations based upon cultural and spiritual traditions. WSDP staff operate under the guidance of director Carrie Dann and a Community Advisory Board with members from seven Western Shoshone communities.

48.    WSDP's members include individuals who reside in Nevada and who use and enjoy the public lands that will be affected by the Challenged Rules. Their interests in using the public lands for traditional religious and cultural practices, hiking, aesthetic enjoyment, wildlife viewing, photography, and cultural educational purposes will be adversely affected and were not given due consideration and protection by promulgation and implementation of the Challenged Rules. WSDP's members use and enjoy lands that are proposed for mining operations whose management and regulation will be governed by the Challenged Rules. Members of WSDP use and enjoy the public lands at and adjacent to the Round Mountain Mine expansion site that will be adversely affected by that project.

49.    The agencies' failure to adequately protect environmental and other resources from such mining operations will adversely affect the use and enjoyment of public lands by WSDP's members. The new regulatory regime fails to adequately consider and protect these interests of WSDP and its members. The Challenged Rules

violate Congress' mandate that the public lands be managed on the basis of environmental and cultural resource protection, multiple use, sustained yield, fair economic return for the federal treasury, and in the public's best interest. WSDP has an interest in having FLPMA's, the Mining Law's, and other public land law statutory mandates upheld – both in terms of its practical effect on the ground and its legal effect in setting the regime by which mining development proposals will be evaluated on DOI/BLM and DOA/USFS lands.

50.     In addition to the above-noted injuries to Plaintiffs and their members, Plaintiffs and their members will be injured by the failure of the Defendants to follow the proper procedures in promulgating and implementing the Challenged Rules.

51.     Defendants' failure to comply with NEPA in the promulgation and adoption of the two Challenged Rules injures Plaintiffs and their members by denying them the ability to adequately participate in the public review process and denying them information concerning environmental impacts and other issues that NEPA requires the agencies to disclose, analyze, and seek public review of prior to promulgating the Challenged Rules.

52.     Defendants' failure to comply with the APA's procedural notice-and-comment requirements in the promulgation of the 2003 Millsite Rule injures Plaintiffs and their members by denying them the ability to adequately participate in the public review and rulemaking process.

53.     Defendants' failure, in the adoption of the 2008 Mining Claim Rule, to comply with federal law requiring the agencies to obtain "fair market value" for the use of lands not covered by valid mining and millsite claims injures Plaintiffs and their

members by facilitating and providing a financial subsidy that may increase environmentally damaging mining development that otherwise may not occur in the same way (or not at all) if the law was properly applied.

54.    Defendants' failure to comply with federal law by providing mining claimants with statutory and property rights in excess of that authorized by the Mining Law (e.g., for millsite claims and acres in excess of that allowed by 30 U.S.C. § 42, and for rights on lands not covered by valid mining and millsite claims) injures Plaintiffs and their members by providing incentives and rights to develop environmentally damaging mining operations that otherwise may not occur in the same way (or not at all) if the law was properly applied.

55.    The Plaintiff organizations file this lawsuit on behalf of themselves and their members.

56.    All Plaintiff organizations participated in one or both of the rulemaking processes that culminated in the promulgation of the Challenged Rules.

57.    The injuries to Plaintiffs can be redressed by an order from this Court granting the requested declaratory and injunctive relief.

58.    All administrative remedies have been exhausted and there is no other adequate remedy available at law.

59.    Defendants in this action include the U.S. Bureau of Land Management, a federal agency in the U.S. Department of the Interior; the U.S. Department of the Interior; Kenneth Salazar, acting in his official capacity as Secretary of the Interior; the U.S. Forest Service, a federal agency in the U.S. Department of Agriculture; the U.S.

Department of Agriculture; and Thomas Vilsack, acting in his official capacity as Secretary of Agriculture.

60.     FLPMA imposes on DOI and the Interior Secretary the duty to promulgate rules and regulations to carry out the purposes of FLPMA, including for operations proposed on lands not covered by valid mining or millsite claims, the duty to obtain Fair Market Value for the use of public land and to manage public lands under principles of environmental and cultural resource protection, multiple use and sustained yield.  These requirements also apply to DOA/USFS' management of mining operations on lands under its jurisdiction.

61.     Operations on public lands not covered by valid mining and millsite claims are regulated under the broader discretionary authorities contained in FLPMA and its implementing regulations (for DOI/BLM lands) and the public land statutes and regulations applicable to DOA/USFS lands (such as the Forest Service Organic Act, 16 U.S.C. § 551, and the National Forest Management Act, 16 U.S.C. §§ 1600 *et seq.*, as well as certain provisions of FLPMA).

62.     Defendant Interior Department is an agency of the United States charged with administering FLPMA, the Mining Law, and other applicable laws.

63.     Defendant BLM is an agency of the Interior Department and through which the Department and Secretary acts in administering FLPMA, the Mining Law, and other applicable laws.

64.     Defendant Interior Secretary Ken Salazar, acting in his official capacity, is the agency official responsible for all DOI and BLM activities, including the

promulgation of the Challenged Rules and the management and regulation of mining on lands administered by DOI/BLM.

65.     Defendant Agriculture Department is an agency of the United States charged with administering public lands within its jurisdiction under applicable public land and mining laws and regulating and managing public lands under principles of environmental protection, multiple use and sustained yield.

66.     Defendant USFS is an agency of the Agriculture Department and through which the Department and Secretary acts in administering the public land and other applicable laws.

67.     Defendant Agriculture Secretary Tom Vilsack, acting in his official capacity, is the agency official responsible for all DOA and USFS activities, including DOA/USFS' reliance on the Challenged Rules and the management and regulation of mining on lands administered by DOA/USFS.

68.     DOA/USFS have historically relied upon, and currently rely upon, DOI/BLM's interpretation of the Mining Law (including the Challenged Rules) in DOA/USFS' management of mining operations on the public lands.

## IV. FACTUAL BACKGROUND

The 2008 Mining Claim Rule

69.     In 1976 Congress passed FLPMA to provide DOI/BLM with a framework for managing its lands.  The statute directs the Secretary of the Interior to promulgate rules and regulations to carry out the purposes of FLPMA and of other laws applicable to the public lands.  43 U.S.C § 1740.

70.     In 1980, under the authority granted by FLPMA, DOI/BLM issued regulations to govern its management of hardrock mining. 45 Fed. Reg. 78,902 (the "1980 Regulations").

71.     Beginning in at least 1985, the DOI/BLM began to review the need to revise the 1980 Regulations and DOI/BLM hardrock mining policy. In 1992 a task force of DOI/BLM specialists collected public comments and recommended changes to the 1980 Regulations. In April of 1997, DOI/BLM published a notice of intent to propose revisions to the 1980 Regulations and also published a scoping notice for a Draft Environmental Impact Statement ("DEIS") that would analyze the proposed revisions. 62 Fed. Reg. 16,177.

72.     On February 9, 1999 the DOI/BLM published a proposed rule to amend the 1980 Regulations. 64 Fed. Reg. 6422-6468.

73.     DOI/BLM promulgated the final rule on November 21, 2000 in the Federal Register. 65 Fed. Reg. 69998-70132 (the "2000 Regulations").

74.     The 2000 Regulations were challenged in lawsuits brought by the National Mining Association, among others, and the Mineral Policy Center ("MPC") and Great Basin Mine Watch ("GBMW"). Mineral Policy Center v. Norton, (D.D.C. 2003)(Civ. No. 01-0073, HHK – Henry H. Kennedy, presiding). MPC is now known as Earthworks, a Plaintiff in this action. GBMW is now known as Great Basin Resource Watch, another Plaintiff in this action.

75.     The 2000 Regulations became effective on January 20, 2001.

76.     On March 23, 2001, DOI proposed to suspend the 2000 Regulations and initiated another round of public comment. 66 Fed. Reg. 16162-16171 (March 23, 2001).

77.     On October 30, 2001, the Interior Department published its revisions to the 2000 Regulations (known as the "2001 Regulations") in the Federal Register. 66 Fed. Reg. 54834-54862.

78.     Shortly thereafter, MPC and GBMW filed their amended complaint in this court challenging the issuance of the 2001 Regulations. Mineral Policy Center v. Norton, (D.D.C., Civ. No. 01-0073, HHK).

79.     Upon cross-motions for summary judgment, on November 18, 2003, Judge Kennedy issued his decision and Order, granting in part and denying in part Plaintiffs' summary judgment motion. Mineral Policy Center v. Norton, 292 F.Supp.2d 30 (D.D.C. 2003).

80.     That decision and Order, in relevant part, established the proper scope of the federal government's authority, pursuant to FLPMA and the Mining Law, over mining operations proposed on lands not covered by "valid and perfected claims." See 292 F.Supp.2d at 46-48. The Order partially remanded DOI/BLM's 2001 Regulations, finding that DOI/BLM had improperly interpreted FLPMA and the Mining Law regarding mining operations proposed on lands not covered by valid claims. The Order required DOI/BLM to publish regulations governing mining operations that were proposed on lands that were not covered by valid mining or millsite claims and directed DOI/BLM to issue regulations requiring such mining operations on federal land to pay Fair Market Value ("FMV") for the use of such lands. Id. at 49-51.

81.     The Solicitor and Secretary of Interior subsequently issued two Memorandums regarding the issues raised by Judge Kennedy's decision and Order. On November 14, 2005, DOI issued M-37011, entitled "Rescission of 2001 Ancillary Use

Opinion," which rescinded a previous Memorandum issued by Interior Secretary Babbitt on January 18, 2001, entitled "Use of Mining Claims for Purposes Ancillary to Mineral Extraction," M-37004. In M-37011, DOI noted that the Chief of the Forest Service had requested DOI to interpret the Mining Law and the previous DOI Memorandums as to how they would be applied on USFS land.

82.     Secretary Babbitt's January 18, 2001 Ancillary Use Memorandum, M-37004, had recognized that the statutory rights to develop mining and millsite claims contained in the Mining Law did not apply to operations proposed on lands not covered by valid claims.    M-37004 was cited favorably by Judge Kennedy as correctly interpreting the Mining Law and FLPMA. Mineral Policy Center, 292 F.Supp. 2d at 48.

83.     The second Interior Department Memorandum was also issued on November 14, 2005, and was entitled "Legal Requirements for Determining Mining Claim Validity Before Approving a Mining Plan of Operations," M-37012. This Memo established that the federal agencies would not inquire into the validity of mining or millsite claims unless the lands covered by the claims had previously been withdrawn from mineral entry – contradicting the legal reasoning of M-37004 and Judge Kennedy's decision and Order.

84.     On September 22, 2003, DOA Undersecretary Mark Rey had issued a Memorandum entitled "USDA Policy on Mining of Public Domain Mineral Estate," which essentially followed DOI/BLM policy of not inquiring into the validity of mining or millsite claims unless the lands covered by the claims had previously been withdrawn from mineral entry.

85.     On February 24, 2007, DOA/USFS Regional Forester for the Southwest Region, Harv Forsgren, submitted testimony to the House Subcommittee on National Parks, Forests and Public Lands and Subcommittee on Energy and Mineral Resources (Committee on Natural Resources), reiterating the agency's reliance on the September 22, 2003 Memorandum by Undersecretary Rey.  Mr. Forsgren further stated that: "For National Forest System lands that are open to entry under the 1872 mining law, the Forest Service is not required to inquire into claim validity before processing and approving a plan of operation."

86.     The two Interior Department Memorandums, both issued on November 14, 2005, M-37011 and M-37012, and the DOA Memorandum issued by Undersecretary Rey on September 22, 2003, all contradict Judge Kennedy's decision and Order in Mineral Policy Center.  More specifically, DOI/BLM's and DOA/USFS's position in these Memorandums improperly assert that claim validity is irrelevant to the agencies' authority over mining, that the agencies would not inquire into claim validity when reviewing a mining proposal on lands open to the Mining Law, and that the agency lacks the discretion to disapprove mining operations under their multiple use authorities, even on lands for which there is no evidence that the mining or millsite claims are valid.

87.     In February, 2007, in response to Judge Kennedy's decision and Order in Mineral Policy Center, DOI/BLM published an "Advanced Notice of Proposed Rulemaking," which proposed the language and policies that would eventually be promulgated as the final 2008 Mining Claim Rule. 72 Fed. Reg. 8139-8142 (Feb. 23, 2007).  All Plaintiff groups submitted comments on that proposal, detailing why the

proposed Rule failed to comply with Judge Kennedy's decision and Order, and violated applicable federal laws such as FLPMA and the Mining Law.

88.     In the waning days of the Bush Administration, on December 4, 2008, DOI/BLM published the "Interim Final Rule" titled "Mining Claims Under the General Mining Law" in response to Judge Kennedy's decision and Order. 73 Fed. Reg. 73789-73794 (Dec. 4, 2008) ("2008 Mining Claim Rule"). As part of this promulgation, DOI/BLM revised its regulation at 43 CFR § 3800.6, stating in relevant part that, for all claimants: "Other than the [claim] processing, locating, and maintenance fees, you are not required to pay any other fees to the BLM to use the surface of public lands for mining purposes." Although DOI/BLM solicited further public comments on this Rule, it became immediately effective on the date it was first published on December 4, 2008. 73 Fed. Reg. at 73790, and has not been revised.

89.     In these Memorandums issued by the Bush Administration and in the 2008 Mining Claim Rule, the agencies reject any inquiry into whether FMV shall be charged for the use of lands not covered by valid claims. The 2008 Mining Claim Rule fails to fulfill FLPMA's requirement that the "United States receive fair market value of the use of the public lands and their resources unless otherwise provided for by statute." 43 U.S.C. § 1701(a)(9). As held by Judge Kennedy, only initial exploration activities on lands open to location and subsequent legal uses on valid claims under the Mining Law are exempted from this requirement. Mineral Policy Center, 292 F.Supp.2d at 46-51. Therefore, the DOI/BLM and DOA/USFS must require the payment of FMV for all other lands proposed for mining development.

.

90.    Regarding compliance with NEPA (or the lack thereof), the 2008 Mining

Claims Rule states that:

> The BLM has determined that this interim final rule, which makes it clear that the
> BLM will not charge fair market value or any additional fee for mining or related
> use of public lands except as otherwise provided by statute or regulation, is a
> regulation of an administrative, financial, legal, technical, or procedural nature.
> Therefore, it is categorically excluded from environmental review under Section
> 102(2)(C) of the National Environmental Policy Act, pursuant to 516
> Departmental Manual (DM), Chapter 2, Appendix 1. In addition, the interim final
> rule does not meet any of the 10 criteria for exceptions to categorical exclusions
> listed in 516 DM, Chapter 2, Appendix 2.

73 Fed. Reg. at 73792.

91.    In the promulgation of the 2008 Mining Claim Rule, DOI/BLM never

conducted any of the required environmental and other reviews, and never provided

public notice and the opportunity to comment under NEPA.

92.    The 2008 Rule does not qualify under the "categorical exclusion" claimed

by DOI/BLM in the preamble to the Rule, at 73 Fed. Reg. 73792.  That categorical

exclusion, as contained in the cited DOI Manual, is limited to:

> Policies, directives, regulations, and guidelines that are of an
> administrative,      financial, legal, technical, or procedural nature and whose
> environmental effects are too broad, speculative, or conjectural to lend themselves to
> meaningful      analysis and will later be subject to the NEPA process, either collectively
> or case-      by-case.

DOI DM 2, Appendix 1 (1.10).

93.    Further, DOI/BLM has not demonstrated that none of the "10 criteria for

exceptions to categorical exclusions" apply to the 2008 Mining Claim Rule or its

implementation by the agencies in their review of mining operations on public lands.

These criteria, as stated in the DOI Manual, are:

The following exceptions apply to individual actions within categorical exclusions (CX). Environmental documents must be prepared for actions which may:

2.1 Have significant adverse effects on public health or safety.

2.2 Have adverse effects on such unique geographic characteristics as historic or cultural resources, park, recreation or refuge lands, wilderness areas, wild or scenic rivers, sole or principal drinking water aquifers, prime farmlands, wetlands, floodplains or ecologically significant or critical areas, including those listed on the Department's National Register of Natural Landmarks.

2.3 Have highly controversial environmental effects.

2.4 Have highly uncertain and potentially significant environmental effects or involve unique or unknown environmental risks.

2.5 Establish a precedent for future action or represent a decision in principle about future actions with potentially significant environmental effects.

2.6 Be directly related to other actions with individually insignificant but cumulatively significant environmental effects.

2.7 Have adverse effects on properties listed or eligible for listing on the National Register of Historic Places.

2.8 Have adverse effects on species listed or proposed to be listed on the List of Endangered or Threatened Species, or have adverse effects on designated Critical Habitat for these species.

2.9 Require compliance with Executive Order 11988 (Floodplain Management), Executive Order 11990 (Protection of Wetlands), or the Fish and Wildlife Coordination Act.

2.10 Threaten to violate a Federal, State, local or tribal law or requirement imposed for the protection of the environment.

DOI DM 2, Appendix 2.
The 2003 Millsite Rule

94.    DOI is the primary federal agency charged with interpreting the provisions of 1872 Mining Law.

95.    Beginning in March of 1993, the Office of the Solicitor of the Interior Department began a comprehensive review of patent applications under the Mining Law.

96.     As a result of this review, the Solicitor of the Interior Department, with concurrence by Interior Secretary Bruce Babbitt, issued DOI's interpretation of the millsite provision of the Mining Law, 30 U.S.C. § 42. Memorandum M-36988, "Limitations on Patenting Millsites Under the Mining Law of 1872," November 12, 1997 (signed by the Solicitor on November 7, 1997) ("the 1997 Millsite Memorandum").

97.     In the 1997 Millsite Memorandum, the Secretary and Solicitor stated in relevant part:

> The Mining Law of 1872 provides that only one millsite of no more than five acres may be patented in association with each mining claim. ... In addition, the Bureau [BLM] should not approve plans of operation which rely on a greater number of millsites than the number of associated [mining] claims being developed unless the use of additional lands is obtained through other means.

1997 Millsite Memorandum, at 2.

98.     The 1997 Millsite Memorandum generated controversy regarding its application to existing mining operations and patent applications.  In DOI's fiscal year 2000 Appropriations Act, Congress prohibited application of the 1997 Millsite Memorandum, for fiscal years 2000 and 2001, to existing patent applications and to mining plans of operations submitted before November 7, 1997, or that BLM approved before November 29, 1999. Pub. L. No. 106-113, § 337.  Congress did not prohibit the application of the 1997 Millsite Memorandum to operations that did not qualify under the grandfather provision in the 2000 Appropriations Act and took no legal opinion regarding the 1997 Millsite Memorandum.

99.     In 1999, DOI proposed a set of regulations streamlining and clarifying DOI policy on numerous issues related to mining and millsite claims.   "Location, Recording, and Maintenance of Mining Claims or Sites," 64 Fed. Reg. 47023-47046

(August 27, 1999) (the "1999 Proposed Rule").  Regarding the number of millsites that

may be associated with proposed mining operations, DOI stated:

> In accordance with the Mining Law, this rule proposes to make clear that you may not locate more than an aggregate of 5 acres of mill site land for each associated placer or lode mining claim.  The provision allowing a maximum of 5 acres of mill site land for each lode or placer mining claim held is contained in 30 U.S.C. 42, and derives from the Lode Law of 1866 (14 Stat. 251).  This requirement was recently reviewed and Solicitor's opinion M-36988 reaffirmed it on November 7, 1997.

> 64 Fed. Reg. at 47028.

100.   The 1999 Proposed Rule proposed to codify these millsite requirements at

43 CFR § 3832.32, which would state:

> A mill site must not exceed 5 acres in size.  You may locate more than one mill site, so long as you do not locate more than an aggregate of 5 acres of mill site land for each 20-acre parcel of patented or unpatented place or lode mining claims associated with that mill site land, regardless of the number of lode or placer claims located in the 20-acre parcel.

> 64 Fed. Reg. at 47037.

101.   After the change in the presidential administration, and without any prior

public notice, on October 7, 2003, the new Deputy Solicitor of the Interior Department,

Roderick Walston, issued a Memorandum which reversed the legal findings contained in

the 1997 Millsite Memorandum and the 1999 Proposed Rule. *See* M-37010, "Mill Site

Location and Patenting Under the 1872 Mining Law (co-signed by Interior Secretary

Gale Norton on October 8, 2003)(the "2003 Millsite Memorandum").  The 2003 Millsite

Memorandum found that a mining claimant may locate as many millsite claims as needed

in association with a proposed mining operation, such as for lands for the dumping of

mine waste.

102.   Also, and without prior public notice other than the promulgation of the

1999 Proposed Rule, DOI issued a new regulation, the 2003 Millsite Rule, which, in

relevant part, codified the new 2003 Millsite Memorandum's interpretation of the Mining Law. 68 Fed. Reg. 61046-61081 (Oct. 24, 2003). The 2003 Millsite Rule stated that as long as a proposed mill site was used for mining purposes, "[y]ou may locate more than one mill site per mining claim." Codified at 43 CFR §3832.32.

103.  This switch in DOI/BLM policy and legal interpretation of the Mining Law was done without adequate public notice and opportunity to comment, as required by the APA, and was not a "logical outgrowth" of the 1999 Proposed Rule (64 Fed. Reg. 47023-47046 (August 27, 1999)).

104.  As a justification for not conducting NEPA review on the 1999 Proposed Rule, DOI/BLM had stated in the 1999 Proposed Rule that the proposed rule merely "reaffirmed" and "made clear" existing DOI/BLM legal interpretation and policy regarding the Mining Law's millsite provision, 30 U.S.C. § 42, as contained in the 1997 Millsite Memorandum. 64 Fed. Reg. at 47028. Thus, DOI/BLM concluded:

> Since no substantial changes are proposed, this rule does not constitute a major Federal action significantly affecting the quality of the human environment. Because this rule does not substantially change BLM's overall management objectives or environmental compliance requirements, it would have no impact or only marginally affect, the following critical elements of the human environment [listing a range of environmental impacts].

64 Fed. Reg. at 47030. Accordingly, BLM asserted that NEPA review was not required, nor would it be conducted, for the Proposed Rule.

105.  The 2003 Millsite Rule was promulgated as a final rule and relied upon the August 27, 1999 Proposed Rule as the basis for the rulemaking.

106.  DOI/BLM's statement in the preamble to the 1999 Proposed Rule (64 Fed. Reg. at 47030), that the proposed rule would not result in any "substantial changes" to DOI/BLM policy – which was the basis for DOI/BLM's decision not to undertake NEPA

review – is contradicted by the very substantial change (in the 2003 Millsite Rule) from the 1997 Millsite Memorandum and the 1999 Proposed Rule which had strictly limited the number of allowable millsite claims and acreage to five acres of millsite claim(s) for each valid mining claim to be utilized by a proposed mining operation.

107.  In promulgating the 2003 Millsite Rule, DOI/BLM failed to conduct the environmental analysis required by NEPA, and failed to provide any public review of the environmental impacts that will occur on public land as a result of the 2003 Millsite Rule.

108.  Instead, DOI/BLM claimed that it "conducted an environmental assessment and have concluded that this rule would not have a significant impact on the quality of the human environment under [NEPA], and therefore an Environmental Impact Statement is not required." 68 Fed. Reg. at 61063 (preamble to 2003 Millsite Rule).

109.  This so-called "environmental assessment" was never submitted for public review, as required by NEPA.  In addition, this avoidance of NEPA's full environmental and public review processes ignores the very real environmental impacts that the DOI/BLM's Rule (and DOI/BLM's and DOA/USFS' implementation thereof) will have on public land across the West.

Environmental Impacts of the 2008 Mining Claim Rule and the 2003 Millsite Rule

110.  The Challenged Rules will result in significant and substantial impacts to environmental, cultural, and other resources in the western states.  The Challenged Rules illegally provide financial, administrative, legal, and operational incentives and allowances for increased mining operations.

111.  For example, by eliminating the requirement that mining operations pay FMV for the use of lands not covered by valid mining or millsite claims, the Defendants

have provided an illegal financial subsidy to those operations. In addition, the Defendants will not inquire as to whether proposed operations are on valid claims. Instead, the Defendants assume, without any evidence, that all claims are valid and that the claimants have statutory rights against the United States to develop those public lands. This reduces the Defendants' regulatory authority over these operations, with the associated increase in the size and number of mining operations and related environmental impacts.

112.    In the 2003 Millsite Rule, by reversing the then-existing limitations on the number and acreage of allowable millsites that can be used at a mine site, the Defendants illegally provided millsite claimants with statutory and property rights to develop millsite claims in excess of that allowed by the Mining Law – thus giving claimants statutory rights against the United States to develop those public lands where none exist. This reduces the Defendants' regulatory authority over these operations, with the associated increase in the size and number of mining operations and related environmental impacts.

113.    The environmental and other impacts that will result from the Challenged Rules are significant. As Judge Kennedy's decision and Order stated:

> Mining activity emits vast quantities of toxic chemicals, including mercury,    hydrogen, cyanide gas, arsenic, and heavy metals. The emission of such chemicals affects water quality, vegetation, wildlife, soil, air purity, and cultural resources. The emissions are such that the hardrock/metal mining industry was recently ranked the nation's leading emitter of toxic pollution.

292 F.Supp.2d at 33. By illegally giving mining and millsite claimants statutory and property rights to public lands where none exist, and by providing illegal financial and other incentives to develop public land, these impacts will continue and likely increase.

114.    DOI/BLM's and DOA/USFS' reliance on, and implementation of, the Challenged Rules in the agencies' review and approval of the Round Mountain Mine, the Mt. Emmons Project, and the Rosemont Copper Project, as well as other similar mining projects, will result in severe disturbance of thousands of acres of public land, will cause substantial adverse impacts to public lands, water quality, air quality, wildlife, scenic views, and cultural resources, and will negatively impact local and regional tourism-based economies.

## V. REGULATORY AND STATUTORY BACKGROUND

FLPMA and the Mining Law

115.    FLPMA requires that the Secretary "manage the public lands under the principles of multiple use and sustained yield ...." 43 U.S.C. § 1732(a).  The multiple use mandate requires the BLM to ensure that activities authorized by the BLM "best meet the present and future needs of the American people." 43 U.S.C. § 1702(c).  It also requires "management of the various resources without permanent impairment of the productivity of the land and the quality of the environment with consideration being given to the relative values of the resources...." 43 U.S.C § 1702(c).  FLPMA further requires the BLM to consider in its decisionmaking a broad range of resource values, "including, but not limited to, recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific, and historical values." 43 U.S.C § 1702(c).

116.    In addition to FLPMA, regulations and statutes governing DOA/USFS management of public lands have similar requirements. *See* 36 CFR Part 251 subpart B, and authorities cited therein.

117.    FLPMA also states that "[t]he Congress declares that it is the policy of the United States that ... (9) the United States receive fair market value of the use of the public lands and their resources unless otherwise provided for by statute." 43 U.S.C. § 1701(a)(9). This duty applies to both DOI/BLM and DOA/USFS.

118.    FLPMA also requires that, "[i]n managing the public lands the Secretary shall, by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b). This duty to prevent unnecessary or undue degradation applies to all public lands under the administration of DOI/BLM.

119.    Under the 2008 Mining Claim Rule, DOI/BLM regulation of mining operations is wholly exempted from the above FLPMA requirements, except for the provision requiring the Secretary to prevent unnecessary or undue degradation. *See* 43 U.S.C. § 1732(b).

120.    Unlike DOI/BLM, DOA/USFS has not specifically promulgated regulations interpreting or implementing the claim validity, millsite, and other provisions of the Mining Law. Rather, DOA/USFS consider DOI/BLM's legal interpretations of the Mining Law as binding upon DOA/USFS' management of mining operations on lands under its administration.

121.    In the 1905 statute that transferred the National Forests (then known as Forest Reserves) from DOI to DOA, Congress mandated that DOI retain primary responsibility for, and administration of, the Mining Law on all public lands, including those lands administered by DOA/USFS. Act of Feb. 1, 1905, c. 288, § 1, 33 Stat. 628.

122.    According to the USFS Manual for Minerals and Geology, DOA/USFS state that:

The mining laws are comprised of two parts:

a.    The statutes themselves, which are general in nature; and

b.    The decisions of the courts and of the Department of the Interior,
which            interpret and apply the statutes to specific cases.

FSM 2819(2)(last revised April 4, 2007). *See also* FSM 2819.2 ("To that

Department [Interior], Congress has given adjudicative powers in matters relating to all

the land laws, including the mining laws.").

123.    The DOA/USFS have adopted DOI/BLM's interpretations of the Mining

Law. *See, e.g.*, FSM 2811.33 (adopting DOI/BLM's Millsite Rule codified in the 2003

Millsite Rule).

124.    Via DOA/USFS's adoption of and reliance on DOI/BLM's Challenged

Rules and related policies, DOA/USFS (like DOI/BLM) exempts all mining operations

from the environmental protection, public interest, multiple-use, and FMV requirements

that apply to mining operations proposed on lands not covered by valid mining or millsite

claims.

125.    While giving a limited right to explore for valuable minerals on public

lands, the Mining Law specifically limits the right of long-term occupation and

development to only those mining claims where there has been a discovery of a valuable

mineral deposit. 30 U.S.C. §§ 22, 26. Claims for non-mineral land (known as mill sites)

can also be made to limited acreage for ancillary facilities such as waste disposal and

processing facilities. 30 U.S.C. § 42. No statutory rights attach to activities, uses, and/or

claims not in full compliance with the Mining Law. The Mining Law also requires that

all operations conducted under the authority of the Mining Law must comply with

"regulations prescribed by law." 30 U.S.C. § 22. In addition, occupation and use of valid

mining and millsite claims is constricted by the requirement to "comply with the laws of the United States, and with State, territorial, and local regulations . . . ." 30 U.S.C. § 26.

126.    The Mining Law grants no statutory rights to develop lands not encumbered by valid mining or millsite claims, except for a limited right to explore for valuable minerals. *See* 30 U.S.C. § 22.

127.    As held by <u>Mineral Policy Center</u>, 292 F.Supp.2d at 46-51, ancillary mineral development activities (e.g., processing, waste disposal) on lands not covered by valid claims, like all other uses of public land, are not governed by the Mining Law. Rather, these uses are governed by the full range of public land statutes applicable to the appropriate agency (i.e., such as FLPMA's discretionary authorities). "Before an operator perfects her claim, because there are no rights under the Mining Law that must be respected, BLM has wide discretion in deciding whether to approve or disapprove of a miner's proposed plan of operations." <u>Mineral Policy Center</u>, 292 F.Supp.2d at 48.

128.    There are three sets of rights created by the Mining Law:  (1) the right to explore for valuable mineral deposits; (2) the right to occupy and develop lands in which valuable mineral deposits are found; and (3) the right to purchase lands in which valuable mineral deposits are found. "Except as otherwise provided, all valuable mineral deposits in lands belonging to the United States ... shall be free and open to exploration and purchase, and the lands in which they are found to occupation and purchase ... under regulations prescribed by law ...." 30 U.S.C. § 22.  In order to have a valid mining claim there must be the discovery of a valuable mineral deposit on that claim. *See* <u>Mineral Policy Center</u>, 292 F.Supp.2d at 46, n. 19.  The Mining Law also allows claimants to

locate up to five acres of nonmineral land for millsite use in association with each valid

mining claim. 30 U.S.C. § 42. *See also* <u>Mineral Policy Center</u>, 292 F.Supp.2d at 47.

129.   Rights under the Mining Law do not attach to invalid mining claims or

mill sites. "A mining claim does not create any rights against the United States and is not

valid unless and until all requirements of the mining laws have been satisfied." <u>Id</u>. at 48.

As stated by the DOA/USFS: "Satisfaction of other requirements of the 1872 act does not

make a claim valid absent a discovery of a valuable mineral deposit (30 U.S.C. 21-54)."

Forest Service Manual, FSM 2811.5.

130.   As stated by DOA/USFS, "The term 'valid claim' often is used in a loose

and incorrect sense to indicate only that the ritualistic requirements of posting of notice,

monumentation, discovery work, recording, annual assessment work, payment of taxes,

and so forth, have been met. This overlooks the basic requirement that the claimant must

discover a valuable mineral deposit." FSM 2811.5

131.   The Mining Law creates no statutory rights on lands that are not covered

by valid claims, except the general right to explore for valuable minerals. Therefore, all

mineral uses, beyond exploration, that occur on lands not covered by valid claims do not

fall within the FLPMA exemption for rights valid under the Mining Law.

132.   FLPMA applies in its entirety to all uses of the public lands administered

by the DOI/BLM "except that where a tract of such public lands has been dedicated to

specific uses according to any other provisions of law it shall be managed in accordance

with such law." 43 U.S.C. § 1732(a).

133.   Tracts of public land that are not covered by valid mining or mill site

claims are not dedicated by law to mineral development.  Therefore, DOI/BLM cannot

approve mineral development on lands not covered by valid claims until and unless it ensures that all of FLPMA's requirements - including managing for multiple use and sustained yield, charging FMV for uses of public land, and meeting the best interests of the public – as well as preventing unnecessary or undue degradation – are satisfied. The same requirements apply to DOA/USFS management of mining operations (except that the unnecessary or undue degradation requirement does not apply to the DOA/USFS).

134.    Further, FLPMA requires that the "United States receive fair market value of the use of the public lands and their resources unless otherwise provided for by statute." 43 U.S.C. § 1701(a)(9).  Only initial exploration activities on lands open to location and subsequent legal uses on valid claims under the Mining Law are exempted from this requirement. Mineral Policy Center, 292 F.Supp.2d at 46-51.  Therefore, the DOI/BLM and DOA/USFS must require the payment of FMV for all other lands proposed for mining development.

135.    As held by Judge Kennedy's decision and Order, DOI/BLM violated FLPMA by failing to recognize that all of FLPMA's requirements apply to mineral development operations on lands not covered by valid claims.

136.    Judge Kennedy's decision held that:

[I]f there is no valid claim and the claimant is doing more than engaging in initial exploration activities on lands open to location, the claimant's activity is not explicitly protected by the Mining Law.

292 F.Supp. 2d at 50.

137.    The two November 14, 2005 DOI Memorandums (M-37001 and M-37012), codified in the 2008 Mining Claim Rule, contradict and ignore this holding.

138.   DOI/BLM has, in the context of its special use permitting regulations, recognized its duty to require fair market value.  "There is no statutory authority for issuing land use authorizations under section 302 of [FLPMA] at less than fair market value."  46 Fed. Reg. 5772 (1981) (preamble to DOI/BLM special-use authorization regulations found at 43 CFR Part 2920). *See also* DOA/USFS special-use regulations at 36 CFR Part 251.   The same statutory authorities that underlie DOI/BLM's and DOA/USFS's special use regulations also govern the agencies' approval of mining proposals on lands not covered by valid claims.   As a result, there is no statutory authority for the agencies to approve mineral uses on lands not covered by valid claims without receiving FMV from the operator.  However, in the Challenged Rules, the federal agencies have failed to require any economic return for use of these lands by a mining operation.

139.   The 2008 Mining Claim Rule, relying on the erroneous 2005 DOI Memorandums, fails to distinguish between the regulatory oversight of operations proposed on valid claims, as opposed to invalid claims, in violation of FLPMA and the Mining Law.

NEPA

140.   NEPA is "our basic national charter for protection of the environment." 40 C.F.R. § 1500.1(a).  Congress enacted NEPA to, among other things, "encourage productive and enjoyable harmony between man and his environment" and to promote government efforts "that will prevent or eliminate damage to the environment."  42 U.S.C. § 4321.

141.    To fulfill this goal, NEPA requires federal agencies to prepare an environmental impact statement (EIS) for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); 40 C.F.R. § 1501.4.

142.    "Major federal actions" include the issuance of "new or revised agency rules, regulations, plans, policies, or procedures." § 1508.18(a). "Federal actions tend to fall within one of the following categories: (1) Adoption of official policy, such as rules, regulations, and interpretations adopted pursuant to the Administrative Procedure Act, 5 U.S.C. 551 et seq. ..." § 1508.18(b). *See also* 40 C.F.R. § 1502.4(b).

143.    Overall, an EIS must "provide [a] full and fair discussion of significant impacts" associated with a federal action such as the issuance of the Challenged Rules and "inform decisionmakers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1.

144.    If an agency is not certain as to whether its action may significantly affect the human environment, it must prepare an environmental assessment (EA).  Id. § 1501.4(b).  An EA must provide sufficient evidence and analysis for determining whether to prepare an EIS or a finding of no significant impact.  40 C.F.R. § 1508.9.  If the agency determines, based on the EA, that no EIS is needed because its action will not have a significant effect on the human environment, it may then prepare a "finding of no significant impact" (FONSI).  Id. §§ 1501.4(e), 1508.13.  Otherwise, it must prepare an EIS.

145.   NEPA requires federal agencies, including DOI/BLM, to include within an EIS "alternatives to the proposed action."   42 U.S.C. § 4332(2)(C)(iii).   The alternatives analysis is the "heart" of a NEPA document, and the statute's implementing regulations emphasize an agency's duty to "[r]igorously explore and objectively evaluate all reasonable alternatives."   40 C.F.R. § 1502.16.   NEPA also requires EAs to explore and evaluate all reasonable alternatives.   Id. § 1508.9(b).

146.   Both EAs and EISs must disclose the environmental effects or impacts of the proposed action and alternatives.   40 C.F.R. § 1592.2(b) (EISs); id. § 1508.9 (EAs); id. § 1508.8 (defining "impacts" as synonymous with "effects").   "Effects" that must be analyzed and disclosed include those that are direct, indirect, and cumulative.   40 C.F.R. § 1508.8.   "Indirect effects" are those "caused by the action and are later in time or farther removed in distance but are still reasonably foreseeable."   40 C.F.R. § 1508.8(b). Cumulative effects are "the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or non-Federal) or person undertakes such other actions.   Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time."   40 C.F.R. § 1508.7.

The Public Notice and Comment Requirements of the APA

147.    The APA, 5 U.S.C. § 553, requires that agencies provide adequate notice

of proposed rulemaking, § 553 (b), and provide the public with adequate "opportunity to

participate in the rule making." § 553(c).

148.    While an agency may promulgate a final rule that is somewhat different

than the proposed rule, the final rule must be a "logical outgrowth" of the proposed rule.

International Union, United Mine Workers of America v. Mine Safety and Health

Admin., 407 F.3d 1250, 1259 (D.D.C. 2005).   "Given the strictures of notice-and-

comment rulemaking, an agency's proposed rule and its final rule may differ only insofar

as the latter is a 'logical outgrowth' of the former." Environmental Integrity Project v.

EPA, 425 F.3d 992, 996 (D.C. Cir. 2005).

149.    Under the "logical outgrowth" rule, a final regulation cannot differ too

sharply from a proposed regulation and the public must be given an opportunity to

comment upon any substantial deviations in the agency rule or policy contained in the

proposed rule.   "[I]f the final rule deviates too sharply from the proposal, affected parties

will be deprived of notice and an opportunity to respond to the proposal." Small Refiner

Lead Phase-Down Task Force v. EPA, 705 F.2d 546, 547 (D.C. Cir. 1983).   "Thus, we

have refused to allow agencies to use the rulemaking process to pull a surprise

switcheroo" on the public in the final rule. Environmental Integrity Project, 425 F.3d at

996.

150.    In this case, the 2003 Millsite Rule completely reversed the then-existing

DOI/BLM policy and legal interpretation which limited the number of allowable millsites

under the Mining Law to five acres of millsite claim(s) for each valid mining claim to be

utilized by a proposed mining operation as stated in the August, 27, 1999 Proposed Rule and the 1997 Millsite Memorandum. No public notice was given of this "switcheroo," and the public was never given an opportunity to respond to or comment on DOI/BLM's new legal interpretation and policy – in violation of the APA.

FIRST CAUSE OF ACTION

**The 2008 Mining Claim Rule and Related Policies Violate the Mining Law, FLPMA, and Related Requirements of Federal Law**

151.   The allegations in the preceding paragraphs are reasserted as if fully stated herein.

152.   The 2008 Mining Claim Rule, and DOI/BLM policies and decisions implementing that Rule, violate the Mining Law and FLPMA because they do not comply with FLPMA's requirements of multiple use, sustained yield, meeting the best interests of the public, and the receipt of fair market value for mining operations proposed in whole or in part on public lands not subject to statutory rights under the Mining Law (i.e. lands without valid claims).   The 2008 Mining Claim Rule, and DOI/BLM policies and decisions implementing that Rule, ignore these FLPMA requirements for uses on lands not covered by valid claims and, therefore, violate the Mining Law and FLPMA.   The 2008 Mining Claim Rule and DOI/BLM policies and decisions implementing that Rule were also taken without adequate justification and explanatory rationale as required by the APA.

153.   DOA/USFS's reliance upon, and adoption of, these illegal DOI/BLM Rules and policies also violate the Mining Law and FLPMA, as well as DOA/USFS requirements to manage the public lands not covered by valid claims for multiple use, sustained yield, meeting the best interests of the public, and requiring fair market value

for operations proposed in whole or in part on public lands not subject to statutory rights under the Mining Law (i.e. lands without valid claims).

154.   DOI/BLM's and DOA/USFS' actions and inactions described herein are arbitrary, capricious, constitute an abuse of discretion, are done without observance of procedure required by law, are in excess of statutory jurisdiction, authority, or limitations, and are otherwise not in accordance with law, within the meaning of the APA, 5 U.S.C. § 706(2).

## SECOND CAUSE OF ACTION

### The 2003 Millsite Rule and Related Policies Violate the Mining Law and Related Requirements of Federal Law

155.   The allegations in the preceding paragraphs are reasserted as if fully stated herein.

156.   The 2003 Millsite Rule, and related DOI/BLM and DOA/USFS policies implementing that Rule, violate the Mining Law, including 30 U.S.C. § 42.

157.   DOI/BLM's and DOA/USFS' actions and inactions described herein are arbitrary, capricious, constitute an abuse of discretion, are done without observance of procedure required by law, are in excess of statutory jurisdiction, authority, or limitations, and are otherwise not in accordance with law, within the meaning of the APA, 5 U.S.C. § 706(2).

## THIRD CAUSE OF ACTION

### The 2003 Millsite Rule and 2008 Mining Claim Rule Violate NEPA and Related Requirements of Federal Law

158.   The allegations in the preceding paragraphs are reasserted as if fully stated herein.

159.   The promulgation of the 2003 Millsite Rule violates DOI/BLM's obligations under NEPA, including the need to provide the opportunity for public review and comment, and the requirement for adequate environmental and other analysis. DOI/BLM also failed to adequately justify the failure to prepare an EIS for the 2003 Millsite Rule.

160.   The promulgation of the 2008 Mining Claim Rule violates DOI/BLM's obligations under NEPA, including the need to provide the opportunity for public review and comment, and the requirement for adequate environmental and other analysis. Further, DOI/BLM's decision to "categorically exclude" the 2008 Mining Claim Rule from NEPA analysis violates NEPA. DOI/BLM also failed to prepare an adequate EA or EIS for the promulgation of the 2008 Mining Claim Rule, with full public comment, as required by NEPA.

161.   DOI/BLM's actions and inactions described herein are arbitrary, capricious, constitute an abuse of discretion, are done without observance of procedure required by law, are in excess of statutory jurisdiction, authority, or limitations, and are otherwise not in accordance with law, within the meaning of the APA, 5 U.S.C. § 706(2).

## FOURTH CAUSE OF ACTION

### The 2003 Millsite Rule Violates the Notice-and-Comment Requirements of the APA

162.   The allegations in the preceding paragraphs are reasserted as if fully stated herein.

163.   The promulgation of the 2003 Millsite Rule violates the notice-and-comment requirements of the APA, 5 U.S.C. § 553. The 2003 Millsite Rule was not a "logical outgrowth" of the 1999 Proposed Rule or any other proposed rule.

164.   DOI/BLM's actions described herein are arbitrary, capricious, constitute an abuse of discretion, are done without observance of procedure required by law, are in excess of statutory jurisdiction, authority, or limitations, and are otherwise not in accordance with law, within the meaning of the APA, 5 U.S.C. § 706(2).

## REQUEST FOR RELIEF

**Wherefore**, Plaintiffs pray this Court:

A.   Enter an order declaring that the 2008 Mining Claim Rule and DOI/BLM and DOA/USFS policies and decisions implementing that Rule violate the Mining Law, FLPMA, and related requirements of federal law;

B.   Enter an order declaring that the 2003 Millsite Rule and DOI/BLM and DOA/USFS policies and decisions implementing that Rule violate the Mining Law, FLPMA, and related requirements of federal law;

C.   Enter an order declaring that the 2008 Mining Claim Rule and the 2003 Millsite Rule violate NEPA and related requirements of federal law;

D.   Enter an order declaring that the 2003 Millsite Rule violates the notice-and-comment requirements of the APA;

E.   Enter an order vacating and remanding the 2008 Mining Claim Rule and 2003 Millsite Rule, and any policies or interpretations based on these Rules, to correct all legal deficiencies;

F.   Enjoin Defendants from taking any action, including processing, authorizing or approving any mineral operation proposals, in a manner inconsistent with the Court's orders and direction;

G.    Enter an Order granting Plaintiffs their costs and reasonable attorney fees incurred in bringing this action, pursuant to 28 U.S.C. § 2412 et seq., and any other applicable statutory and equitable principles; and

H.    Issue an order granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 20th day of October 2009.

Edward S. Scheideman (D.C. Bar No. 4751280)
DLA PIPER LLP (US)
500 8th Street, N.W.
Washington, D.C. 20004
Tel (202) 799-4000
Fax: (202) 799-5000
edward.scheideman@dlapiper.com

Roger Flynn, *Pro Hac Vice Application Pending*
Jeffrey C. Parsons, *Pro Hac Vice Application Pending*
WESTERN MINING ACTION PROJECT
P.O. Box 349
440 Main St., #2
Lyons, Colorado 80540
Tel (303) 823-5738
Fax (303) 823-5732
wmap@igc.org

Attorneys for Earthworks, High Country Citizens' Alliance, Great Basin Resource Watch, Save the Scenic Santa Ritas, and Western Shoshone Defense Project