## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
EARTHWORKS, et al.,                     )
                                        )
          Plaintiffs,                   )
                                        )
     v.                                 )
                                        )
U.S. DEPARTMENT OF THE                  )
INTERIOR, et al.,                       )
                                        )
          Defendants,                   )
                                        )
     and                               )
                                        )
BARRICK NORTH AMERICA                   )
HOLDING CORPORATION                     )     Case No. 1:09-CV-01972-HHK
     136 East South Temple Street       )
     Suite 1800                         )
     Salt Lake City, Utah  84111        )
                                        )
     and                               )
                                        )
ABX FINANCECO INC.,                     )
     136 East South Temple Street       )
     Suite 1800                         )
     Salt Lake City, Utah  84111        )
                                        )
          Applicants                    )
          Intervenors/Defendants.       )
_____)

## MOTION TO INTERVENE OF BARRICK NORTH AMERICA HOLDING
## CORPORATION AND ABX FINANCECO INC. AND MEMORANDUM OF
## POINTS AND AUTHORITIES IN SUPPORT

Barrick North America Holding Corporation and ABX Financeco Inc. (hereinafter "Barrick"),[1] by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 24, hereby move to intervene in this action.  Plaintiffs challenge two rules promulgated by the Department of the Interior/Bureau of Land Management (DOI/BLM).  Each rule applies exclusively to the regulation of hard rock mining operations on public lands in the United States.  Plaintiffs seek to invalidate those regulations, and—by way of injunction—to force DOI/BLM to impose a new and unworkable reading of the mining laws and a different and more burdensome set of regulations in their place.

Barrick's primary business enterprise is the ownership and operation of gold mines in the United States—including a mine specifically named in the Complaint itself.  Because of its direct and concrete interest in the subject matter of this dispute, Barrick seeks to intervene.

Under Federal Rule of Civil Procedure 24(a), an applicant may intervene as of right when (1) the motion is timely; (2) the applicant has a protected interest at issue; (3) that protected interest may be impaired by the litigation; and (4) existing parties do not adequately represent the interests of the applicant.  *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  These criteria are met here.  First, this motion is timely—it has been advanced less than three weeks since Plaintiffs' Complaint was filed and before an answer or responsive motion has been filed.  Second, Barrick's ongoing mining operations—conducted pursuant to permits issued by the named Defendants—are

---

[1] Barrick North America Holding Corporation and ABX Financeco Inc. are the wholly owned subsidiaries of Barrick Gold Corporation, which owns and operates mines throughout the world.  *See* Ex. 1 (Declaration of Gregory A. Lang) (hereinafter "Lang Decl.").  For ease of reference, they are collectively referred to as "Barrick" throughout this motion.  This motion is accompanied by Barrick's Corporate Disclosure Certificate in accordance with Local Rule 7.1.

protected, cognizable property interests; those interests—which extend well beyond the

three mining sites on which Plaintiffs focus—are the principal subject matter of the

regulations at issue.  Third, Barrick's efficient operation of its mines would be impeded

and impaired by the relief that Plaintiffs seek—essentially, a moratorium on the current

permitting process for hard rock mines on public lands.  Finally, the current

Defendants—federal agencies and officers sued in their official capacity—do not

adequately represent Barrick's multi-billion dollar investments in existing mining

operations and prospective properties.  For these reasons, Barrick is entitled to intervene

in this dispute as of right under Rule 24(a)(2), and moves to do so here.  Alternatively,

Barrick moves to intervene permissively in this matter under Fed. R. Civ. P. 24(b)(1)(B).

Pursuant to Local Rule 7(m), counsel for Barrick has contacted counsel for

Plaintiffs with respect to their position on this motion.  Plaintiffs' counsel has indicated

that they reserve their position until they are able to review the motion itself.  No counsel

for government Defendants has, as yet, entered an appearance in this matter.  Counsel for

Barrick has attempted to locate the government counsel who has been or will be assigned

this matter, but as yet has been unable to do so.  Barrick will notify the Court when it

does so and when it learns the government's position on this motion.[2]

## I. BACKGROUND

On October 20, 2009, Plaintiffs filed a Complaint challenging two DOI/BLM

Rules, each of which relates exclusively to hard rock mining operations on public lands.

Each Rule, and Plaintiffs' challenge to it, is described below.

---

[2] Pursuant to Rule 24(c) and Local Rule 7(j), a proposed Answer is attached. *See* Ex. (2).  Also attached, pursuant to Local Rule 7(c), is a proposed Order on the motion.

**A.      The 2008 Mining Claim Rule**

First, Plaintiffs challenge DOI/BLM's Interim Final Rule entitled, "Mining

Claims Under the General Mining Laws."  73 Fed. Reg. 73,789-73,794 (Dec. 4, 2008)

("2008 Mining Claim Rule" or "2008 Rule").  Plaintiffs assert that promulgation of this

Rule violates the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C.

§ 1701 *et seq*., and the General Mining Law of 1872 ("Mining Law"), 30 U.S.C. §§ 22-

47, along with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et*

*seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 553, 701-06.  *See* Compl. ¶¶

152, 154, 160.

The 2008 Mining Claim Rule was issued in response to this Court's decision in

*Mineral Policy Center v. Norton*, 292 F. Supp. 2d 30 (D.D.C. 2003).  In that case, this

Court substantially upheld a number of challenged DOI/BLM regulations.  *See id*. at 41-

46, 52-56.  But the Court remanded the regulation to the BLM for reconsideration in light

of a policy goal stated in the FLPMA that the United States "receive fair market value of

the use of the public lands and their resources unless otherwise provided for by statute."

*Id.* at 49-51 (quoting 43 U.S.C. § 1701(a)(9)).  The 2008 Mining Claim Rule is the

agency's considered response to that remand.

On February 23, 2007, the BLM published an advance notice of proposed

rulemaking to assist in the evaluation ordered by this Court; in particular, the BLM

requested public comments regarding any known examples of the types of operations that

were the subject of the Court's remand order—that is, operations conducted on

unclaimed lands.  73 Fed. Reg. 73,791.  After reviewing the public comments it received,

the BLM issued the Interim Final Rule challenged by Plaintiffs here.  In that Rule, the

BLM noted that the public comments indicated that no such operations—i.e., mining

operations on unclaimed lands—actually took place.  The BLM found this unsurprising, because any such operations would be impracticable given the severe economic disincentive:  a competitor could easily "locate mining claims over the area and assert adverse rights to the lands," 73 Fed. Reg. 73,791, thereby rendering such expenditures a complete loss.  Accordingly, because the operations at issue in the Court's remand—i.e., those on unclaimed lands—were not taking place, "there is nothing to evaluate in light of the fair market value policy."  *Id.*

The remand from this Court in *Mineral Policy Center* was limited to a consideration of operations on invalid or unclaimed lands, and did not address the separate issue of operations on lands where BLM had made no formal determination of claim validity.  The BLM nevertheless examined whether it could apply FLPMA's fair market value policy to such operations.  It found that it could not do so.  *See* 73 Fed. Reg. 73,791-92 (noting that such a requirement would be inconsistent with the policy reflected in the Mining Law and with subsequent legislation setting out administrative fees for the use of public lands encumbered with mining claims and mill sites).[3]  Accordingly, the BLM determined that "[o]ther than the processing, location and maintenance fees, [mine operators] are not required to pay any other fees to the BLM to use the surface of public lands for mining purposes."  *Id*. at 73,794.

---

[3] The BLM explained why the bulk of active claims are of unknown validity.  *See* 73 Fed. Reg. 73,791 (describing practical limitations and budgetary impacts of completing validity examinations on a routine basis, and describing its targeted enforcement strategies when claims are employed for purposes not contemplated by the Mining Law).

**B.      The 2003 Mill Site Rule**

Plaintiffs' second challenge relates to certain portions of DOI/BLM's Final Rule entitled, "Locating, Recording, and Maintaining Mining Claims or Sites."  68 Fed. Reg. 61,046-81 (Oct. 24, 2003) ("2003 Mill Site Rule").  Plaintiffs assert that this Rule violates the Mining Law, the APA, and NEPA.  *See* Compl. ¶¶ 156-57, 159.

Among other things, the 2003 Mill Site Rule identified standards and requirements for "mill sites"—essentially, federal lands that may be used to support mining operations conducted on claimed sites.  *See* 30 U.S.C. § 42.  Under the Mining Law, where such land is needed by a mine operator and is actually "used or occupied" for mining purposes, a mill site claimant may include such lands in a claim, so long as "[n]o location made of such [mill site] shall exceed five acres."  *Id.*  As explained in the BLM's 2003 Rule, "for nearly a half century, the BLM's written guidance has reflected the view that the mill site provision does not categorically limit the number of mill sites that may be located and patented for each mining claim."  68 Fed. Reg. 61,054 (quoting Deputy Solicitor's opinion describing written policy guidelines issued in 1954, 1958, 1966, 1976, and 1980 consistent with this view).

In 1999, the BLM proposed to change its interpretation of the Mining Law to limit a mining claim to "only up to 5 mill site acres *per mining claim*."  *Id.* (emphasis added).  Congress, however, twice prohibited the Department from enforcing that policy, and it was never put into effect.  *See id.*; *see also* Pub. L. No. 106-31, 113 Stat. 57, 90-91 (1999); Pub. L. No. 106-291, 114 Stat. 922 (2000).  In the 2003 Rule challenged here, the Department decided to "withdraw the proposed amendment to the mill site regulations and continue its prevailing practice and interpretation that the Department followed for a half century before the 1997 Opinion."   68 Fed. Reg. 61,054.  In other words, it would

continue to allow mill site claims based on "reasonable necessity" and "use and occupancy" rather than impose a numerical limit—so long as no single mill site exceeded five acres in size.  Thus, the Rule enacted "no change" in the BLM's practice regarding mill sites.  *Id.*

## II.  BARRICK: THE INTERVENOR APPLICANT

Barrick operates and owns, in whole or in part, mines on public lands throughout the United States, including seven in Nevada and one in Montana.  Lang Decl. ¶ 8.  In Nevada and Montana alone, Barrick's mines directly employ approximately 4,000 people, and thousands more support those mines as contractors and suppliers.  *Id.* ¶ 4.  In general, Barrick's mines are located in rural areas where the mines constitute the principal employment and tax base for the counties in which they are located and the towns they are near.  *Id.*

Barrick's ongoing mining operations in the United States are conducted in accordance with permits issued by the Bureau of Land Management.  Lang Decl. ¶ 5.  Accordingly, new regulations—such as those sought by Plaintiffs here—have enormous financial and community consequences.  *Id.* ¶ 9.  But the impact would go beyond the maintenance of current operations:  Were Plaintiffs to prevail, it would threaten Barrick's ability to expand existing mines or construct new mines.  *Id.* ¶¶ 8-9.  Such interests are not ephemeral:  Barrick has an ownership interest in three projects—the Round Mountain Mine, the Bald Mountain Mine, and the Dee Arturo Mine—which have proposed plans for expansion of existing mining operations awaiting BLM approval at different stages in the permitting process.  *Id.*  ¶ 9.  As explained below, any additional delay in permitting these projects threatens the very future of each one.

A.      **Round Mountain Mine**[4]

Barrick holds a 50% ownership interest in the Round Mountain Mine, which is located in Nye County, Nevada.[5]  Mining operations began at Round Mountain in 1906, and modern gold mining operations began in the 1970s.  Lang Decl. ¶ 11.  Since 1981, the Round Mountain Mine has operated under authorization from the BLM.  *Id.*  Currently, the mine produces gold and silver and operates on patented and unpatented mining claims.  *Id.*  It employs approximately 730 people either directly or through contractors.  *Id.*

In June 2006, Round Mountain Gold Corporation proposed an amendment to the plan of operations that would expand current mining activities ("Round Mountain Expansion Project").  Lang Decl. ¶ 12.  That proposal was submitted to the BLM and is currently under review.  *Id.*  In July 2009, the BLM released a Draft Environmental Impact Statement (EIS) on the Round Mountain Expansion Project for public review and comment.  *Id.*  A Final EIS is expected to be published within the next three months and a final decision made in the first half of 2010.  *Id.*  The proposed expansion would extend the active life of the mine by up to 13 years.  *Id.*  Without the proposed expansion, active mining is projected to cease in 2011.  *Id.*  Approval of the proposed expansion in 2010 is necessary to maintain operations and the existing work force.  *Id.*

If an order were issued enjoining the BLM from processing or authorizing plans of operations before a final decision is made, processing of the Round Mountain Mine

---

[4] As discussed further below, this mine is identified by Plaintiffs in the Complaint.  *See* Compl. ¶¶ 37-38, 48, 114.

[5] Barrick's interest is held through a joint venture with Round Mountain Gold Corporation, which is the operator of the property.  *See* Lang Decl. ¶ 10.

expansion plan of operations would be halted and operations would cease when the limits of current authorizations are met in 2011.  Lang Decl. ¶ 13.

**B.      Bald Mountain Mine**

Barrick also owns the Bald Mountain Mine in White Pine County, Nevada.  Lang Decl. ¶ 14.  The Bald Mountain Mine produces gold and operates on unpatented mining claims and mill sites.  *Id*.  Mining began at Bald Mountain in 1869.  *Id.*  Modern gold mining operations began in the 1980s.  *Id.*  Current operations are authorized by a plan of operations reviewed and approved by the BLM.  *Id*.  The Bald Mountain Mine currently employs between 180 to 210 full time employees and 50 to 100 contract employees.  *Id.*

In 2006, Barrick proposed an amendment to the plan of operations for the Bald Mountain Mine that would allow an extension and expansion of current mining activities ("Bald Mountain Mine Expansion").  Lang Decl. ¶ 15.  That proposed plan of operations was submitted to the BLM and is currently under review.  *Id*.  In November 2008, the BLM released a Draft EIS on the Bald Mountain Mine Expansion for public review and comment.  *Id*.  The Final EIS is scheduled for public release on November 13, 2009.  A final decision by BLM is expected before the end of January, 2010.  *Id*.  The proposed expansion would extend the life of the mine by approximately 10 years.  *Id*.  Without the project expansion, active mining is expected to cease in 2010.  *Id*.  Approval of the proposed expansion is necessary to maintain operations and the existing work force.  *Id*.

If an order were issued enjoining the BLM from processing or authorizing plans of operations before a final decision is made, processing of the Bald Mountain Mine expansion plan of operations would be halted and operations would cease when the limits of current authorizations are met in 2010.   Lang Decl. ¶ 16.

## C.     Dee Arturo Project

Barrick is the operator and majority owner (in a joint venture with Marigold Mining Company) of the Dee Arturo Project on patented and unpatented mining claims in Elko County, Nevada.  Lang Decl. ¶ 17.  In September 2009, Barrick submitted a proposed plan of operations to the BLM for construction and operation of the Dee Arturo Mine.  *Id.*  The proposed mine will be constructed in an area where an existing mine has been closed and reclaimed.  *Id.*  BLM's review of the proposed plan of operation has just begun.  *Id.*  BLM will prepare an environmental impact statement on the project, and it is anticipated that BLM will make a final decision on the proposal in about three years.  *Id.* If an order were issued enjoining the BLM from processing or authorizing plans of operations before a final decision is made, processing of the Dee Arturo plan of operations would cease.  *Id.*

Barrick also owns, in whole or in part, a number of other mines which operate on unpatented mining claims and mill sites. Lang Decl. ¶ 18.  Operations at those mines are authorized by the BLM under current regulations, including those challenged by the Plaintiffs.  *Id.*  In the normal course of business, Barrick expects to seek authorization from BLM to expand or extend mining operations on unpatented mining claims at several of those mines within the next few years.  *Id.*

## III. DISCUSSION

Under Rule 24(a), this motion meets the requirements for intervention as of right. Alternatively, Barrick moves for permissive intervention under Rule 24(b).

## A.     Barrick Is Entitled to Intervention as of Right.

Federal Rule of Civil Procedure Rule 24(a) provides that

> On timely motion, the court must permit anyone to intervene who . . .
> claims an interest relating to the property or transaction that is the subject
> of the action, and is so situated that disposing of the action may as a
> practical matter impair or impede the movant's ability to protect its
> interest, unless existing parties adequately represent that interest.

Pursuant to that Rule, the D.C. Circuit has set out four prerequisites to intervention as of right:  (1) the application must be timely; (2) there must be an adequate interest in the property or transaction that is the subject of the action; (3) the movant's ability to protect that interest may be impaired or impeded by the disposition of the action; and (4) existing parties do not adequately represent that interest.  *See Fund for Animals*, 322 F.3d at 731; *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003).

Because Barrick satisfies all of these requirements, it should be granted intervention as of right.

1.      The motion is timely.

"[T]imeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. AT&T*, 642 F.2d 1285, 1295 (D.C. Cir. 1980) (footnote omitted).

This motion is timely.  The Complaint in this matter was filed on October 20, 2009—less than three weeks ago—and the existing Defendants have yet to answer, engage in motions practice, or enter an appearance.  *See* 7C Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1916, at 555-57 (3d ed. 2007) (a motion to intervene "made before the existing parties have joined issue in the pleadings has been regarded as clearly timely").  Because proceedings have just begun, there can be no prejudice to existing parties related to the timing of this motion.  For this

reason, and in light of Barrick's significant interest in this litigation (as discussed below), this motion must be considered timely.

        2.      <u>Barrick Has a Cognizable Interest in the Subject Matter of this Action.</u>

A prospective intervenor must demonstrate "an interest relating to the property or transaction which is the subject of the action . . . ." Fed. R. Civ. P. 24(a)(2). There is no question that—as a leading producer in the sole industry directly affected by each of the challenged rules—Barrick has a cognizable and substantial interest in the subject matter at issue here. Indeed, where a challenged rule regulates property directly owned by a proposed intervenor, "there can be no question" that the proposed intervenor "has the requisite interest." *See Fund for Animals*, 322 F.3d at 735 (finding that the challenged regulation may serve as the "transaction" in which the intervenor has a cognizable interest); *see also Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) ("An intervenor's interest is obvious when he asserts a claim to property that is the subject matter of the suit.") (citation omitted). Barrick's mining operations in the United States are conducted in accordance with permits issued by the federal agency Defendants—and those permits are themselves cognizable property interests for purposes of intervention.[6] Barrick also owns and maintains unpatented mining claims and mill sites in connection with its mining and exploration activities. The Courts have repeatedly acknowledged that

---

[6] *See, e.g.*, *Sierra Club v. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993) (holder of a water quality permit had a "protectable interest" in the validity of its discharge permit and could intervene as of right because the relief sought would require the EPA to make the permit more restrictive); *Animal Protection Inst. v. Martin*, 241 F.R.D. 66 (D. Me. 2007) (licensed fur trappers granted intervention in ESA suit that would enjoin state agency from issuing licenses); *Nader v. Ray*, 363 F. Supp. 946, 953 (D.D.C. 1973) (holders of Atomic Energy Commission-issued nuclear facility licenses had sufficient property interest to intervene as of right in action challenging validity of certain AEC equipment acceptance criteria and seeking an injunction to terminate the use of certain nuclear reactors).

such mining claims are "property in the fullest sense of that term." *Wilbur v. United States ex rel. Krushnic*, 280 U.S. 306, 316 (1930); *Bradford v. Morrison*, 212 U.S. 389, 394-95 (1909); *Belk v. Meagher*, 104 U.S. 279, 283 (1881); *United States v. Shumway*, 199 F. 3d 1093, 1100 (9th Cir. 1999).

While identifying an interest sometimes requires fine distinctions between a direct interest and an indirect one,[7] that is not the case here.  At issue here are Rules directly regulating mining claims and operations—Barrick's property and its primary business enterprise.

Underscoring this point is the fact that the Complaint expressly discusses a mine in which Barrick has a substantial ownership interest—the Round Mountain Mine in Nevada.  Compl. ¶ 37-38, 48, 114; *see also supra*, Sec. II.A.  The Complaint recites that BLM is "currently reviewing the proposed expansion" of that mine and alleges that BLM does not intend, in reliance on the challenged Rules, to make a determination of validity of the mining or mill site claims proposed for use at the site, or to require payment of fair market value for the use of public lands not covered by valid mining or mill site claims in connection with the proposed expansion of the Round Mountain Mine.  Compl. ¶¶ 37, 38. The Plaintiffs thus allege that "DOI/BLM review and approval of the Round Mountain mine utilizing the Challenged Rules and associated DOI/BLM policies will adversely affect the use of public lands by" Plaintiffs' members.  Compl. ¶ 38.  Given Barrick's

---

[7]   Although there is no "concise yet comprehensive definition" of a cognizable "interest" for intervention purposes, the D.C. Circuit has resisted narrow conceptions of that requirement.  *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).  Instead, the interest requirement serves more broadly as "'a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'"  *Akiachak Native Cmty. v. Dep't of Interior*, 584 F. Supp. 2d 1, 6 (D.D.C. 2008) (quoting *Nuesse*, 385 F.2d at 700)).  Barrick is, without question, a "concerned person" with respect to the challenged regulations.

significant interest in that mine,[8] Barrick plainly has a cognizable interest in the subject matter underlying this action.[9]

      3.    <u>Barrick's Interests May Be Impeded or Impaired by this Action.</u>

An applicant for intervention must next show that it is "so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). That is the case here.

The relief Plaintiffs seek is, in short, more burdensome and unwarranted regulation of Barrick's business—whether the burden arises through substantive changes in regulations that are more onerous, or through additional regulatory steps that would substantially delay agency action on permit applications while advancing no statutory or sound regulatory goal. Either way, were Plaintiffs to prevail, the impact of the new regulations on Barrick would be new and unworkable limitations on the ability to rationally and economically design, construct, operate, and reclaim mines, which could in turn preclude the expansion of existing mines or construction of new mines, as well as increased operating costs, increased permitting costs, and substantial permitting delays. *See generally* Lang Decl. ¶ 19. Indeed, the permitting application process currently

---

     [8] Of course, and as noted elsewhere in this Memorandum, Barrick's U.S. mining operation interests—all of which will be adversely impacted by the relief sought by Plaintiffs—extend well beyond Plaintiffs' claimed interest in the Round Mountain site. *See generally* Lang Decl. ¶¶ 8-9, 14-18.

     [9] For the reasons explained in this section, Barrick also satisfies Article III's standing requirements. *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003); *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (citing with approval *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000)); *see also Friends of Animals v. Kempthorne*, 452 F. Supp. 2d 64, 70 (D.D.C. 2006) (standing inquiry for prospective intervenor may be addressed "with dispatch," because satisfying Rule 24(a)(2) also satisfies Article III standing requirements in D.C. Circuit).

underway before BLM for Barrick's Round Mountain, Bald Mountain, and Dee Arturo mines, Lang Decl. ¶¶ 10-17, would grind to a halt for no sound reason.

Accordingly, Barrick's legally protectable interest in current and future mining operations may be impaired or impeded by resolution of this litigation, warranting its intervention as of right. *See, e.g.*, *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) (timber industry permitted to intervene in environmental suit to restrict timber harvesting in National Forests); *Ross v. Marshall*, 426 F.3d 745, 757 n.46 (5th Cir. 2005) ("With respect to a potential intervenor seeking to defend an interest being attacked by a plaintiff in a lawsuit, we have observed that the intervenor is a real party in interest when the suit was intended to have a 'direct impact' on the intervenor.").

    4.    <u>Existing Parties (and Other Anticipated Intervenors) Do Not Adequately Represent Barrick's Interests</u>.

While an applicant for intervention must show that representation of its interest by an existing party may be inadequate, "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *Fund for Animals*, 322 F.3d at 735; *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (describing requirement as "not onerous"). Barrick's interests as an operator of mines are not identical to those of the existing Defendants, which are limited to federal agencies (and officials sued in their official capacities). *See* Compl. ¶¶ 62-66. For that reason, Barrick's interests are not adequately represented here.

As a fundamental matter, the federal agency Defendants are tasked with administering and/or enforcing the requirements of the FLPMA, the Mining Law, and other applicable laws. On the other hand, Barrick's interests are of a more narrowly defined scope: the protection of its multi-billion dollar investment in existing mines and

exploration property and the efficient, profitable, and rational operations of its current and proposed mining operations in the face of an interpretation offered by Plaintiffs intended to make mining impossible.  Indeed as the operator of mines, Barrick is best situated to demonstrate the irrationality of Plaintiffs' position.  In circumstances like these, a federal agency Defendant does not adequately represent a private party's interest. As the D.C. Circuit has explained, where an agency

> has no financial stake in the outcome of the challenge . . . [a private party's] application for intervention . . . falls squarely within the relatively large class of cases in this circuit recognizing the inadequacy of governmental representation of the interests of private parties in certain circumstances.

*Dimond*, 792 F.2d at 192; *see also Fund For Animals*, 322 F.3d at 736 & n.9 ("[W]e have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors.") (citing cases).

This is true even where, as here, a private party's interest overlaps to some degree with the government's interest in supporting the lawfulness of challenged regulations. *See National Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977) (allowing rubber and chemical companies to intervene in support of EPA because their interest "is more narrow and focussed than EPA['s] [and,] [g]iven the acknowledged impact that regulation can be expected to have upon their operations, appellants' participation in defense of EPA decisions . . . may also be likely to serve as a vigorous and helpful supplement to EPA's defense"); *cf. Fund For Animals*, 322 F.3d at 736 (intervention appropriate even though intervenor's and U.S. government's interests overlap in that they agree that "current rules and practices are lawful"); *County of San Miguel v. MacDonald*, 244 F.R.D. 36, 48 (D.D.C. 2007) ("[A]lthough the FWS and the

intervenor-applicants share a common interest—upholding the FWS's listing determination—that shared interest does not guarantee adequate representation of the intervenor-applicants' interests . . . .").

In any event, even if an intervenor's legal position at the outset of a dispute significantly overlaps with that of a current government defendant, the overlap may narrow or even disappear as the litigation continues. *See Nuesse*, 385 F.2d at 703 ("The tactical similarity of the present legal contentions of the [parties] does not assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf."). That is certainly a distinct possibility here, where Plaintiffs have expressed particular opposition to expansion of a mine partly owned by Barrick—the Round Mountain Mine. *See* Compl. ¶¶ 37-38, 48, 114. Were settlement negotiations to ensue, the federal government's position as to that application may diverge from—or even become adverse to—Barrick's. For these reasons, Barrick's interests are not adequately represented by the current federal agency Defendants.[10]

---

[10] Barrick is aware that other entities may seek to intervene in this matter, including one or more trade associations whose interests may overlap to some degree with Barrick's. But given Barrick's indisputably concrete interests in the matter—particularly its pending applications with respect to the Round Mountain Mine, the Bald Mountain Mine, and the Dee Arturo Project—its interests would not necessarily overlap with those of other mining companies or the mining industry as a whole. Moreover, Barrick's direct participation may bring additional and unique perspectives to bear on the matters at issue. *See Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969) (school board did not adequately represent interests of intervening parents because the board represents all parents, while intervenors "may have more parochial interests centering upon the education of their own children"); *see also National Res. Def. Council*, 561 F.2d at 912 (even "a shared general agreement . . . does not necessarily ensure agreement in all particular respects"), *cited in Fund For Animals*, 322 F.3d at 737. Thus, even if this motion were assessed in light of similar motions filed by other entities, Barrick's intervention should nevertheless be granted.

**B.** **Barrick Also Satisfies Rule 24(b) Intervention Criteria.**

In the alternative, Barrick requests permissive intervention under Rule 24(b).

That Rule states:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . .  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

*Id.*  Permissive intervention is an "inherently discretionary enterprise" and this Court enjoys "wide latitude" in granting such a motion.  *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

Permissive intervention is appropriate here.  First, as previously noted, this motion is timely.  Second, as an intervenor-defendant, Barrick does not anticipate injecting new questions of law and fact through independent affirmative claims; rather, it intends only to defend against claims brought by Plaintiffs.  Third, Barrick's economic interest in this matter—as discussed above—is substantial.  *See* Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, 7C *Federal Practice and Procedure* § 1911, at 452 (3d ed. 2007) ("Permissive intervention may be permitted when the intervenor has an economic interest in the outcome of the suit.").  Finally, because this matter is in its early stages (and because Barrick intends to abide by all briefing schedules and deadlines imposed by this Court), intervention will not unduly delay this proceeding or unfairly prejudice the rights of the parties.

Accordingly, should this Court deny Barrick's motion with respect to intervention as of right (Rule 24(a)), the Court should nevertheless permit Barrick's intervention under Rule 24(b).

## IV.  CONCLUSION

Barrick's motion should be granted.

**DATED**:  November 9, 2009

Respectfully submitted,

/s/ Stephen A. Fennell
Stephen A. Fennell, No. 290379
sfennell@steptoe.com
Jeffrey E. McFadden, No. 434234
jmcfadden@steptoe.com
John P. Nolan, No. 498581
jpnolan@steptoe.com
Steptoe & Johnson LLP
1330 Connecticut Ave. NW
Washington, D.C.  20036
*Attorneys for*
*Barrick North America Holding Corp. and*
*ABX Financeco Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of November, 2009, I caused the foregoing

MOTION TO INTERVENE OF BARRICK NORTH AMERICA HOLDING

CORPORATION AND ABX FINANCECO INC. AND MEMORANDUM OF POINTS

AND AUTHORITIES IN SUPPORT (and all attachments thereto) to be transmitted to

the Clerk's Office of the United States District Court for the District of Columbia via

email to the address of dcd_cmecf@dcd.uscourts.gov, and to the below-named parties in

the manners indicated:

**VIA Clerk-entered CM/ECF:**

Edward S. Scheiderman
DLA PIPER LLP (US)
500 8th Street NW
Washington DC 20004
202.799.4000 (T)
202.799.5000 (F)
Edward.scheiderman@dlapiper.com

**VIA Federal Express:**

Roger Flynn
Jeffrey C. Parsons
WESTERN MINING ACTION PROJECT
P.O. Box 349
440 Main Street, #2
Lyons, CO 80540
303.823.5738 (T)
303.823.5732 (F)
wmap@igc.org

U.S. DEPARTMENT OF THE INTERIOR
Attention: Kenneth Salazar
Secretary of the Interior
1849 C Street, N.W.
Washington D.C. 20240

1

U.S. DEPARTMENT OF AGRICULTURE
Attention: Thomas Vilsack
Secretary of Agriculture
1400 Independence Ave., S.W.
Washington D.C. 20250

U.S. BUREAU OF LAND MANAGEMENT
1849 C Street N.W.
Room 5665
Washington D.C. 20240

U.S. FOREST SERVICE
1400 Independence Ave. S.W.
Washington D.C. 20250-0003

U.S. DEPARTMENT OF JUSTICE
Attn: Eric Holder
Attorney General of the United States
950 Pennsylvania Ave N.W.
Washington DC 20530

U.S. ATTORNEY FOR THE DISTRICT OF COLUMBIA
Attn: Channing D. Phillips
Acting United States Attorney
501 3rd Street NW
Washington DC 20530

  /s/ Stephen A. Fennell_____
Stephen A. Fennell