**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| **EARTHWORKS**, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| **U.S. DEPARTMENT OF THE INTERIOR**, *et al.*, | ) | |
| Defendants, | ) | No. 1:09-cv-01972-HHK |
| and | ) | |
| **NATIONAL MINING ASSOCIATION**<br>101 Constitution Avenue, N.W.<br>Suite 500 East<br>Washington, DC  20001, | ) | |
| Proposed Intervenor-Defendant. | ) | |

**MOTION FOR LEAVE TO INTERVENE AS PARTY DEFENDANT, AND
MEMORANDUM IN SUPPORT**

Pursuant to Rule 24 of the Federal Rules of Civil Procedure and Rule 7 of this Court, the National Mining Association ("NMA") hereby moves to intervene in this action as a party defendant.  NMA seeks intervention as of right under Rule 24(a)(2) or, alternatively, permissive intervention under Rule 24(b)(2).

A proposed Order, proposed Answer, and Corporate Disclosure Certificate accompany this motion pursuant to Fed. R. Civ. P. 24(c), LCvR 7(c) and (j), and LCvR 7.1.  Pursuant to LCvR 7(m), counsel for NMA has conferred with counsel for the other parties to determine whether there is opposition to this motion.  Plaintiffs' counsel advise that their clients do not

consent to NMA's intervention at this time, nor do they necessarily oppose it, and that they will respond subsequently. Because there has been no appearance by any counsel for the Defendants at this time, NMA has been unable to obtain a position from the Defendants regarding the proposed intervention.

**INTRODUCTION**

In this lawsuit, Plaintiffs Earthworks, *et al*, challenge the issuance and implementation of two rules by the U.S. Department of the Interior's Bureau of Land Management ("BLM"): a final rule titled "Locating, Recording, and Maintaining Mining Claims or Sites" ("2003 Mill Site Rule"), which was signed on October 9, 2003, and published in the Federal Register on October 24, 2003, 68 Fed. Reg. 61046-81; and an interim final rule titled "Mining Claims Under the General Mining Laws" (2008 Mining Claim Rule"), which was signed on November 14, 2008, and published in the Federal Register on December 4, 2008, 73 Fed. Reg. 73789-94. *See* Compl. (Oct. 20, 2009) ¶¶ 1-4. Plaintiffs also challenge the alleged adoption of, and reliance upon, the challenged rules by the U.S. Department of Agriculture and its component, the U.S. Forest Service, in those agencies' review, management, and regulation of mining operations on federal lands under their jurisdiction. *Id.* ¶ 5.

The rules were issued pursuant to the Secretary of the Interior's authority under the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C. § 1701, *et seq.*, and the General Mining Laws, 30 U.S.C. § 21a, *et seq.*, as amended, and the Multiple Use Mining Act of 1955, 30 U.S.C. § 612, and represent the Secretary's current interpretations of those statutes as applied to the hardrock mining industry. The 2008 Mining Claim Rule was issued in response to this Court's decision in *Mineral Policy Center v. Norton*, 292 F. Supp. 2d 30 (D.D.C. 2003), which the Plaintiffs in this action have identified as a related case. NMA was granted intervention in that case as a defendant to protect its members' interests in regulations and

2

statutory interpretations that apply to mining operations on federal lands; and NMA seeks to intervene in the present case to protect those same interests.

## BACKGROUND ON PROPOSED INTERVENOR

NMA is the national trade association of the mining industry. NMA's members include the producers of most of America's coal, metals, and industrial and agricultural minerals; manufacturers of mining and mineral processing machinery, equipment, and supplies; and engineering and consulting firms that serve the mining industry. NMA and its predecessors have participated in virtually all of the major legislative, rulemaking, and other proceedings related to the enactment and implementation of FLPMA and the Mining Law, as applied to hardrock mining on public lands.

NMA members' interests would be substantially affected if Plaintiffs' proffered interpretations of FLPMA and the Mining Law were to prevail in this case. With regard to Plaintiffs' challenges to the 2008 Mining Claim Rule (Count I and part of Count III of the Complaint), Plaintiffs advocate for an interpretation of the Mining Law and FLPMA's "fair market value" policy (43 U.S.C. § 1701(a)(9)) that would override the authority conferred by Congress on BLM and would impermissibly restrict the statutory authority granted by Congress to citizens (including NMA's members) to explore for and develop valuable minerals on public lands and enjoy rights of reasonable access and use and occupancy of the public land for prospecting, mining, or processing operations and uses reasonably incident thereto as intended by Congress.

With regard to Plaintiffs' challenges to the 2003 Mill Site Rule (Counts II and IV, and Count III in part), Plaintiffs seek an interpretation of the Mining Law's mill site provision, 30 U.S.C. § 42, that radically departs from the Interior Department's long-standing and correct interpretation of the allowable location and reasonable use of mill sites in connection with

mining claims. More particularly, as the preamble to the 2003 Mill Site Rule explains, the Interior Department's consistent practice and interpretation for many decades has been that the 5-acre mill site provision in 30 U.S.C. § 42 limits the size of individual mill sites, not the number of mill sites per mining claim. *See* 68 Fed. Reg. 61054-55. Under this interpretation, as many mill sites as are actually needed for mining can be located, as long as the acreage does not exceed 5 acres per mill site. *Id*. In this lawsuit, Plaintiffs seek to impose the contrary interpretation that was the subject of a *proposed* rule that BLM did not finalize and has now withdrawn after considering public comments – *i.e.*, that 30 U.S.C. § 42 restricts a mining operation to a maximum of 5 mill site acres *per mining claim*. *See id.* at 61054; Compl. ¶¶ 94-109. Plaintiffs' interpretation would impermissibly restrict, and in many instances could eliminate altogether, the ability of citizens (including NMA's members) to explore for and develop valuable minerals on public lands as the Mining Law entitles and indeed encourages them to do.

As we explain below, these interests, together with the inability of the existing parties to protect NMA's interests adequately, provide a sound basis for NMA's intervention in this case.

## ARGUMENT

### I. NMA IS ENTITLED TO INTERVENE AS OF RIGHT

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides, in pertinent part:

> On timely motion, the court must permit anyone to intervene who . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

To intervene as of right under Rule 24(a)(2), an applicant must satisfy four elements: "(1) timeliness; (2) cognizable interest, (3) impairment, and (4) lack of adequate representation."

4

*Williams & Humbert, Ltd. v. W & H Trade Marks (Jersey)*, 840 F.2d 72, 74 (D.C. Cir. 1988); *see also Fund for Animals v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003).  In addition, the D.C. Circuit interprets Rule 24(a) to require that a proposed intervenor demonstrate its standing under Article III of the Constitution.  *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003) (collecting cases); *Fund for Animals*, 322 F.3d at 732.

NMA satisfies all of these requirements and should be granted intervention as of right.

A.    **This Motion Is Timely**

NMA's motion is timely.  "Timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case."  *United States v. American Tel. and Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980) (footnote omitted).

This case is still at a preliminary stage.  The Complaint was filed less than one month ago, and Defendants' Answer has not yet been filed.  A motion to intervene prior to a defendant's answer is timely.  7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1916, at 557 (3d ed. 2007) (a motion to intervene "made before the existing parties have joined issue in the pleadings has been regarded as clearly timely").  In addition, no preliminary or dispositive motions have been filed, nor have any rulings on the merits been entered or a briefing schedule set.  The fact that "little progress has been made in the underlying action" strongly militates in favor of timeliness here.  *LaRouche v. FBI*, 677 F.2d 256, 257-58 (2d Cir. 1982).

Moreover, the possibility of prejudice to those already parties to the case by reason of the timing of NMA's intervention is low.  NMA seeks to "participate in an upcoming . . . phase of the litigation," *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 908 (D.C. Cir. 1977)

("*NRDC v. Costle*"), and not to reopen settled issues that would otherwise remain closed. NMA's purpose for intervening is not to assert a different cause of action, but rather to join in defense of the challenged agency rules, interpretations, and practices.

Considering the short amount of time since the filing of the Complaint, the significance of NMA's interests in intervention, and the absence of prejudice to any party, this motion "cannot be regarded as untimely." *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (reversing district court and granting intervention of right to an economically-interested party).

### B. NMA Has Cognizable Interests That Could Be Impaired By The Disposition Of This Action

We discuss the closely related interest and impairment factors together. The "cognizable interest requirement assists in 'disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'" *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6, 8 (D.D.C. 1993) ("*PETA*") (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967)). NMA is clearly a "concerned person," since its members would conduct the mining and exploration operations Plaintiffs seek to prohibit and/or burden through their proffered interpretations of FLPMA and the Mining Law. As this case involves a challenge to important regulations implementing those statutes, the Court's assessment of NMA's interests must be guided by the even "greater impetus to intervention that inheres in administrative cases" than in ordinary private litigation. *Neusse v. Camp*, 385 F.2d at 700.

The potential for economic loss to NMA's members if Plaintiffs prevail is another strong interest that justifies intervention. *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 135-36 (1967), *vacated on other grounds sub nom. Utah Public Service Comm'n v. El Paso Natural Gas Co.*, 395 U.S. 464 (1969) (economic loss from implementation of a proposed

6

consent decree warrants intervention). The economics of many mining operations would be harmed greatly, for instance, if they could not enjoy rights of reasonable access, use and occupancy during exploration and development activities or if further stifling burdens were imposed through a restricted reading of Mining Law's mill site provisions, as Plaintiffs seek to require.

Moreover, such a change would reverse BLM's longstanding interpretations and would disrupt the legitimate investment-backed expectations of mining companies that would suddenly be prohibited or severely discouraged from pursuing their hardrock mining operations. NMA's members' property interests are certainly of the "significantly protectable" type referred to by the Supreme Court in *Donaldson v. United States*, 400 U.S. 517, 531 (1971), and fall well within the interest test enunciated by the D.C. Circuit in *Neusse*. These sunk costs could be lost, and the mining companies' legitimate expectations would be dashed, if Plaintiffs obtain their desired relief. *See Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 973 (3d Cir. 1998) (even intervenors' interest in *future* business operations is "substantial interest, directly related to and threatened by" lawsuit challenging those operations, and "meets the requirements of Rule 24(a)"); *PETA*, 151 F.R.D. at 8 ("proposed intervenor-defendant's interest in protecting his business is cognizable"); *Huron Environmental Activist League v. EPA*, 917 F. Supp. 34, 42-43 (D.D.C. 1996) (thwarting the "good faith effort of the cement industry to develop . . . agreement" with federal agency is impairment of a cognizable interest).

NMA's regulated-industry interest in avoiding greater burdens is sufficient for intervention here, as it has been in numerous other cases. *E.g., Kleissler v. U.S. Forest Serv.*, 157 F.3d 964 (3d Cir. 1998) (timber industry intervention in environmental suit to restrict timber harvesting in National Forests); *Conservation Law Foundation of New England v. Mosbacher*,

7

966 F.2d 39, 43-44 (1st Cir. 1992) (fishing industry intervention in environmental suit seeking greater restrictions on fish harvesting); *NRDC v. Costle*, *supra* (chemical industry granted intervention is suit seeking greater regulation); *PETA*, 151 F.R.D. at 8 (federal permittee granted intervention in environmental group suit seeking to invalidate permit); *National Wildlife Fed'n v. Hodel*, 661 F. Supp. 473, 474-75 (E.D. Ky. 1987) (coal industry intervention in suit seeking greater regulation under SMCRA).

Lastly, due process and simple fairness suggest that all persons potentially affected by the challenged regulations and practices should be represented in this litigation – the Federal Defendants, who issued the rules and apply them to mining exploration, development and operations; the Plaintiffs, who challenge them; and NMA, whose members would bear the brunt of any relief awarded. *See Kleissler*, 157 F.3d at 971 (in cases pitting private, state, and federal interests against each other, "[r]igid rules [barring intervention] contravene a major premise of intervention – the protection of third parties affected by the pending litigation. *Evenhandedness is of paramount importance*") (emphasis added).

As to impairment of NMA's interests, Rule 24(a)(2) focuses on the *practical* impairment of the ability to protect one's interests under the particular circumstances of the case. The Rule itself expressly provides for intervention of right when "disposing of the action may *as a practical matter* impair or impede the movant's ability to protect its interest" (emphasis added). The D.C. Circuit has consistently interpreted this language as requiring a court to look at the "practical consequences" of denying intervention when evaluating an intervention request. *Neusse v. Camp*, 385 F.2d at 702. *See Smuck v. Hobson*, 408 F.2d 175, 180-81 (D.C. Cir. 1969); *Textile Workers Union v. Allendale Co.*, 226 F.2d 765, 767 (D.C. Cir. 1955). The practical effect of granting Plaintiffs their requested relief would be to significantly impede or impair NMA's

members' ability to engage in hardrock exploration, development and mining. Intervention therefore is necessary to avoid depriving them of a meaningful opportunity to protect that interest.

### C. The Representation Of NMA's Interests By Existing Parties May Be Inadequate

The final criterion for intervention of right is whether the representation of NMA's interests by the existing parties "may be" inadequate. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538-39 n.10 (1972). The "burden of that showing should be treated as minimal." *Id.* The "burden is on those opposing intervention to show that representation for the absentee will be adequate." *United States v. AT&T*, 642 F.2d 1285, 1293 (D.C. Cir. 1980).

NMA clearly is not adequately represented by the Plaintiffs. They advocate a statutory interpretation that NMA opposes and seek to prevent NMA's members from conducting legitimate mining operations. *See United States v. Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986) (adverse party cannot adequately represent proposed intervenor's interests).

Nor can the Federal Defendants adequately represent NMA's interests. The government "must represent the broad public interest, not just the economic concerns of [private] industry." *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *see Trbovich*, 404 U.S. at 539. This difference could well affect briefing strategy and arguments, and the interest in settlement or appeal – just as happened recently in another case pending before this Court, *National Parks Conservation v. Salazar*, No. 1:09-cv-00115-HHK (D.D.C.). In that case, environmental groups challenge regulations issued by the Department of the Interior and NMA has intervened to defend the regulations, but the Department moved to vacate the regulations rather than litigate. It fell to NMA as intervenor-defendant to argue – successfully – that the requested vacatur conflicted with the Administrative Procedure Act's provisions for repealing a rule. *National*

*Parks Conservation v. Salazar*, No. 1:09-cv-00115-HHK (D.D.C. Aug. 12, 2009) (order denying motion to vacate). Such differences in interests between NMA and the Federal Defendants warrant intervention of right. *See Trbovich*, 404 U.S. at 539; *Kleissler*, 157 F.3d at 973-74 ("the straightforward business interests asserted by intervenors . . . may become lost in the thicket of sometimes inconsistent governmental policies"); *NRDC v. Costle,* 561 F.2d at 912 (the "possibility of disparate interests" between government regulators and industry "justif[ies] separate representation").

Finally and more generally, NMA will add a necessary element to the proceedings, by allowing the economically affected entities to be heard. Its participation will, therefore, lead to a more informed decision by the Court.

**D.     NMA Has Article III Standing**

In the D.C. Circuit, a prospective intervenor – even one who seeks to intervene as a defendant[1] –must demonstrate that it has Article III standing by showing "(1) injury in fact, (2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 733 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

NMA readily satisfies the test for Article III standing. If a party is itself the object of the government action at issue, there is "ordinarily little question" that the party can be harmed by the government action and that a judgment preventing the action will redress the injury. *Lujan v. Defenders*, 504 U.S. at 561-62. That is the situation here. The Defendants' rules, interpretations,

---

[1] The D.C. Circuit has noted the anomaly of requiring standing of a movant who seeks to intervene as a *defendant*, since the standing inquiry is directed at persons who invoke a court's jurisdiction. *Roeder*, 333 F.3d at 233. But in a recent case the Circuit found no need to dwell on the issue, since "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Id.* (citing with approval *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000)). Here, since NMA satisfies Rule 24(a)(2), it has standing.

and practices, if made more burdensome on industry through this lawsuit, would injure NMA's members by inappropriately restricting, making more costly, and in some circumstances potentially prohibiting altogether, their mining operations. *See, e.g., County of San Miguel v. MacDonald*, 244 F.R.D. 36, 44-45 (D.D.C. 2007) (expected increase in regulatory restrictions if suit were successful created sufficient basis for standing for affected business interests; intervention granted). These injuries will be redressed by a favorable ruling from the Court, which will leave the challenged regulations in place.

Indeed, the D.C. Circuit routinely holds that the mining industry has standing in cases challenging regulations that apply to mining operations. This case should be no exception. *See National Coal Ass'n v. Lujan*, 979 F.2d 1548, 1551-52 (D.C. Cir. 1992) (R. Ginsburg, J.) (finding "utterly unpersuasive" Interior's argument that NMA's predecessor lacked standing to challenge individual penalty provisions in regulations under the Surface Mining Control and Reclamation Act ("SMCRA"); companies' own economic interests were "vitally affected" even though regulations imposed penalties on individual company officers and agents and not directly on companies); *NMA v. U.S. Dep't of the Interior*, 70 F.3d 1345, 1349 (D.C. Cir. 1995) (NMA had standing to challenge regulation governing federal oversight of state regulatory programs, because regulation was ultimately intended to compel permittees' compliance with SMCRA). *See also NMA v. Kempthorne*, 512 F.3d 702, 706-06 (D.C. Cir. 2008) (NMA is an "industry trade association with standing to bring suit on behalf of its members under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977)").

## II.   ALTERNATIVELY, PERMISSIVE INTERVENTION SHOULD BE GRANTED

If intervention of right is denied, the Court should grant NMA's alternative motion for permissive intervention under Rule 24(b)(2).

Under Rule 24(b)(2), an applicant may be permitted to intervene if its application is timely, and if it has a claim or defense that shares with the main action a common question of law or fact. NMA's application is timely, as explained above. Moreover, there is a complete identity between Plaintiffs' claims and NMA's defenses as an intervenor-defendant that brings no affirmative claims.

The Court should exercise its discretion by finding it is in the interests of justice to allow all affected interest groups (the environmental group plaintiffs, the government regulators, and the economically-affected industry) to participate as parties in this case. *See Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 10-11 (D.D.C. 2007).

## CONCLUSION

For the foregoing reasons, NMA's motion to intervene should be granted.

Respectfully submitted,

/s/ R. Timothy McCrum
R. Timothy McCrum, No. 389061
rmccrum@crowell.com
J. Michael Klise, No. 412420
jmklise@crowell.com
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2595
(202) 624-2500

Dated:  November 10, 2009

Attorneys for Proposed Intervenor National Mining Association