## UNITED STATES COURT DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| EARTHWORKS, *et al.,* | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| U.S. DEPARTMENT OF THE | ) Civ. No. 1:09-cv-01972 (HHK) |
| INTERIOR, *et al.* | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |
| STATE OF ALASKA, | ) |
| 1031 W. 4th Avenue, Suite 200 | ) |
| Anchorage, AK  99501 | ) |
| | ) |
| _____Proposed Intervenor-Defendant_____ | ) |

## MOTION TO INTERVENE AS A PARTY DEFENDANT

Pursuant to Federal Rule of Civil Procedure 24, the State of Alaska (the "State") hereby moves to intervene in the above titled case in support of Defendants.  The State moves to intervene as of right because (1) it has interests in the subject matter of this action; (2) those interests will be impaired if the State is not able to intervene; (3) no other party will adequately represent the State's interests; (4) this motion is timely; and (5) the State has standing to intervene.  In the alternative, the State moves for permissive intervention.  The State also asks that the Court grant it leave to file briefing separate from the mining industry parties who have intervened in the case, with the understanding that the State will make every effort to avoid duplicative or unnecessary briefing.

This motion is supported by the following Memorandum of Points and Authorities, the Declaration of Edmund Fogels in Support of the State's Motion for

Leave to Intervene ("Fogels Decl."), the files of this case, and any additional matters presented to the Court.

Pursuant to Local Rule 7(m), counsel for the State has contacted all parties to confer regarding whether this motion will be opposed.  Counsel for Plaintiffs has indicated that they reserve their position until they receive the State's motion.  Counsel for the Federal Defendants stated that Defendants have no position on the State's intervention.  Counsel for the intervenor-defendants have indicated that they do not oppose the State intervening in this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs challenge two rules of the Department of Interior/Bureau of Land Management that regulate mining on federal public land.  Plaintiffs contend that the 2008 Mining Claim Rule fails to require payment of fair market value for use of federal lands not covered by valid claims, as required by statute.  (Complaint ¶ 88-89.)  Plaintiffs also contend that the 2003 Mill Site Rule allows claimants to locate as many millsite claims and acres as needed for a proposed mining operation, and that this violates statutes and was adopted in a manner that violated NEPA.  (*Id.* ¶¶ 101-109.)

If these rules are invalidated, miners would need to pay fair market value for unclaimed federal land and limit the number of millsites for mining operations — both of which would make mining on federal land more costly.  (*See* Fogels Decl. ¶ 4-5, 22-24.)  This could have several indirect effects on the mining industry in Alaska, and in turn impact the State's interests in regulating that industry and in promoting jobs and economic development in the state.

Mining exploration, development, and production, including on federal land, is a major source of jobs and economic development in Alaska.  (*Id*. ¶¶ 4-6, 18-20.) The federal government owns approximately 222 million acres of land within Alaska's borders — roughly 60 percent of land in the state.  (*Id.* ¶ 6.)  Most mining in Alaska occurs on publicly owned land, including approximately 11,750 claims on federal land. (*Id.* ¶ 10.)  The mining industry as a whole employs approximately 3500 people in Alaska, providing some of the more lucrative jobs in the state.  (*Id.* ¶¶ 14, 20.)  The industry indirectly employs and supports many more residents, including the small businesses that supply goods and services to the mines.  (*Id.* ¶ 15.)  The industry is also a significant source of state and municipal revenue.  (*Id.* ¶ 21.)

If mining on federal land becomes more costly it could cause existing mining projects on federal land to shut down and future projects to be abandoned.  (*Id.* ¶ 22-23.)  Any abandonment of mining projects on federal land would adversely affect the job market for Alaska residents and economic development in surrounding communities. (*Id.* ¶ 23.)

The State has a duty to promote economic development and to make economic opportunities available to its citizens.  Alaska Stat. § 44.33.020(a)(30)-(35). No other party shares those interests or will represent those interests in this case. Accordingly, the State moves to intervene, both as a matter of right and, alternatively, as permissive intervention.

## I.     THE STATE IS ENTITLED TO INTERVENTION AS A MATTER OF RIGHT.

Under Federal Rule of Civil Procedure 24(a)(2), the State is entitled to intervene as of right because (1) the State asserts interests related to mining on federal land, which is the subject matter of this appeal; (2) without intervention, the State's ability to protect its interests will be impaired; (3) the State's interests are not adequately represented by the existing parties; and (4) this motion is timely. *Fund for Animals v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  The State also has Article III standing.  *Id.* at 731-33.

### A.     The State Has Significant Protectable Interests Related to Regulation of Mining on Federal Land.

The State has a duty to promote economic development and opportunities in the state.  Alaska Stat. § 44.33.020(a)(30)-(35).  These duties provide significant protectable interests here.

Invalidation of the agency rules at issue could have several immediate and long term effects on the mining industry in Alaska.  If mining on federal land becomes more costly, existing and future mining projects could be abandoned. (Fogels Decl. ¶ 22-23.)  The immediate effect would be a loss of jobs from the federal mining projects.  (*Id.* ¶¶ 23-24.)  In the current economic climate, the State takes any loss of jobs for its residents very seriously.

In the long term, a shift away from mining on federal land could affect economic development in Alaska. (*Id.* ¶ 22-24.)  Alaska communities are comparatively

4

small and isolated, such that a change in a single industry can have broad, devastating effects. For example, the economy of Southeast Alaska, an area surrounded by the federally owned Tongass National forest, has declined dramatically in recent years as the timber industry in the Tongass has died out. (*Id.* ¶¶ 13, 24.) This area has started to recover through increased activity on two federal land mining projects in the area, but could take another hit if the two rules at issue here affects those mines. (*Id.* ¶ 24.) The potential effects on this and other communities include the direct employment of local residents and the support of local businesses who supply goods and services to the mines. (*Id.* ¶¶ 15, 18, 20, 24.)

The State acknowledges that its direct interests lie in mining on State land. But Alaska is unique in the shear volume of public land within its borders. (*Id.* ¶¶ 8-9.) Federal policy in regulating federal land invariably affects state policy in regulating state land — in part because regulated enterprises often cross federal/state borders, and also because regulation on federal land affects market forces for enterprises on state land, and vice versa. The D.C. Circuit has held that when federal and state policy intertwine a state has an interest in a legal controversy involving the federal government's regulation of similar subject matter, and thus intervention by a state should be liberally granted. *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) ("We should not be niggardly in gauging the interest of a state . . . in the validity of what [its] federal counterpart has done in an area of overlapping fact and intertwined law."). A state's interest in regulation of its natural resources in particular has been held sufficient to support intervention. *See, e.g.*, *Sierra Club v. Robertson*, 960 F.2d 83, 84 (8th Cir. 1992) (allowing state to

intervene in an action to challenging the United States Forest Service's management plan to protect essential interests in fish and wildlife, recreational opportunities and water quality); *Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 927 (9th Cir. 1990) (city had sufficient interest in enforcing it land use regulations to allow intervention in an action to restore lands to federal trust status).

Courts have also granted states leave to intervene to protect the interest of state residents. *See, e.g.*, *Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (allowing the State of Texas to intervene as a matter of right in a suit for injunctive relief under the Endangered Species Act in part because Texas had important interests in protecting the health and well-being of citizens affected by the suit). The State's residents will be directly and indirectly affected by this litigation if it causes federal mining projects to cease, thereby eliminating jobs and economic development in surrounding areas.

**B.      Absent Intervention, the State Will be Impaired in Protecting its Interests.**

In determining whether the State's interests will be impaired, this Court should look at the practical consequences of denying intervention. *Fund for Animals*, 322 F.3d at 735. As detailed above, invalidating the agency rules at issue could affect jobs and economic development for Alaska residents in the short term and the State's interests in both protecting and developing its own natural resources in the long term. The State has no forum other than this action to raise these interests. Accordingly, the State will be impaired in protecting its interests if it is not able to intervene.

**C.   The State's Interests Are Not Adequately Represented by the Other Parties.**

The State's unique interests satisfy the minimum burden to show that "representation of [its] interest[s] may be inadequate." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1972).  "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).  A mere "tactical similarity of . . . present legal contentions" between a party and an intervenor is no reason to deny intervention.  *Nuesse*, 385 F.2d at 703.

Here, the State raises interests unique to the State of Alaska and materially different from any existing party.  Plaintiffs consist of non-profit organizations concerned with environmental protection.  The State shares their interest in conserving natural resources, but does not share their interest in challenging the agency rules at issue.  These parties would surely not represent the State's interest.  *See United States v. Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986), *vacated in part on other grounds*, 480 U.S. 370 (1987) (adverse party cannot adequately represent applicant's interests).

Defendants are federal agencies.  While the State supports their position with respect to the agency rules at issue, the Federal Defendants do not share the State's interests in protecting jobs and economic development in Alaska or protecting and developing natural resources on state land.  Thus the State has no reason to believe Defendants will make all of the arguments that the State would raise in support of its

unique interests.  *Cf. Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (Observing the federal government's interests are not aligned with state or local interests).

The State has no reason to suspect that the mining entities that have moved to intervene will represent the State's interest either.  These entities no doubt have some of the same goals, but their interests are highly divergent from the State's.  These entities are not sovereigns.  They have no duty with respect to Alaska's natural resources or residents.  The substantial lack of symmetry between the mining entities' interests and the State's interests demonstrates that the existing intervenors would inadequately represent the State's sovereign interests.  *See, e.g.*, *Forest Conservation Council*, 66 F.3d at 1499. ("[T]he government must present the broad public interest, not just the economic concerns of the timber industry.")

No party shares the State's interest in protecting jobs and economic development in Alaska.  Since no parties share the State's interests, no party would adequately represent those interest in this action.

**D.      The State's Motion to Intervene is Timely.**

Determining the timeliness of intervention is left to the "sound discretion" of the trial court.  *Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 74 (D.C. Cir. 1988).  The court should consider all related circumstances, especially the time elapsed since the suit was filed, the purpose of intervention, the need

to preserve the applicant's rights, and the possibility of prejudice to existing parties. *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980).

This action is still in the early stages. Defendants have not yet answered, and will not do so until March 30, 2010, after briefing on this motion should be complete. The D.C. Circuit has granted leave to intervene in far later stages than this. *See, e.g.*, *Foster v. Gueory*, 655 F.2d 1319, 1324 (D.C. Cir. 1981) (motion to intervene timely ten months after litigation commenced and one month after class certification denial); *Hodgson v. United Mine Workers of America*, 473 F.2d 118, 129 (D.C. Cir. 1972) (intervention allowed seven years after case was filed). Accordingly, the State's motion for leave to intervene is timely.

### E.     The State Has Standing To Pursue This Action

The State meets the constitutional standing requirements to participate as a party in this litigation. The agency rules at issue affect the mining industry on federal land located within the borders of all states, including Alaska. Invalidating these rules would affect mining on federal land in Alaska, including the jobs that mining provides to Alaska residents and economic development in surrounding Alaskan communities. (Fogels Decl. ¶¶ 14, 17, 20.) These interests are sufficient to confer standing for the State. *See Nuesse*, 385 F.2d at 699-700 (state banking commissioner had standing for purposes of intervention in action by bank against federal banking regulator involving regulation in the state).

The State's sovereign interests here give it a particular basis for standing. The Supreme Court has held that given a state's "stake in protecting its quasi-sovereign interests, [a state] is entitled to special solicitude in our standing analysis." *Massachusetts v. E.P.A.*, 549 U.S. 497, 520 (2007); *see also Nat'l Ass'n of Clean Air Agencies v. E.P.A.*, 489 F.3d 1221, 1228 (D.C. Cir. 2007) (state agencies had standing to challenge a federal agency rule because there was a substantial probability the rule would harm the state agencies' interests).

## II.     IN THE ALTERNATIVE TO INTERVENTION OF RIGHT, THE STATE SHOULD BE ALLOWED PERMISSIVE INTERVENTION.

As set forth above, the State believes it is entitled to intervene in this case as of right.  In addition, the State is alternatively entitled to permissive intervention under Rule 24, which provides:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b)(2).  The primary concern in evaluating permissive intervention is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights.  *South Dakota v. United States Dept. of Interior*, 317 F.3d 783, 787 (8th Cir. 2003).

The State, by virtue of its responsibilities described above, holds claims and defenses in common with questions of law and fact raised in the Complaint.  In *Nuesse v.*

*Camp*, 385 F.2d 694, the D.C. Circuit Court reversed the district court's denial of

permissive intervention to the State of Wisconsin in a suit involving both federal and

state banking laws.  The Court recognized the "intimacy of the relationship between and

interdependency of the Federal and State statutes" involved.  *Id.* at 705.  The Court went

on to emphasize that when an intervenor-applicant is a public official, courts should

apply the rule liberally:

> It is a living tenet of our society and not mere rhetoric that a
> public office is a public trust.  While a public official may not
> intrude in a purely private controversy, permissive
> intervention is available when sought because an aspect of the
> public interest with which he is officially concerned is
> involved in the litigation.

*Id.* at 706.

Allowing the State to intervene will not unduly delay or prejudice the rights

of any parties.  The Federal Defendants have not yet answered.  The State does not

anticipate requesting any time extensions.  This case will be able to proceed on the same

schedule, but with the assistance of the State's unique perspective on these issues.

## III.  THE STATE REQUESTS SEPARATE BRIEFING FROM THE INDUSTRY INTERVENORS.

Under Rule 24, this Court may impose restrictions on intervening parties in

the interest of efficiency.  Fed. R. Civ. P. 24, 1966 Amendment Advisory Committee

Notes ("An intervention of right under the amended rule may be subject to appropriate

conditions or restrictions responsive among other things to the requirements of efficient

conduct of the proceedings.").  The State notes that this Court has granted motions to

intervene by several mining industry parties, but has ordered them to submit joint

motions and memoranda.  The State contends that its interests and status as a sovereign

are different enough from the industry entities that it could be prejudiced by joining with

those parties in a single brief.  The State will make every effort to coordinate with other

parties and to not submit any duplicative or unnecessary briefing.  It would strongly

prefer to do so, however, in papers separate from industry parties.

## IV.    CONCLUSION

For the foregoing reasons, the State asks that this Court grant it leave to

intervene as a matter of right.  In the alternative, the State seeks permissive intervention.

The State also requests that the Court allow it to file briefing separate from mining

industry intervenors, with the understanding that the State will strive to avoid any

duplicative or unnecessary briefing.

Dated this 9th day of March, 2010, at Anchorage, Alaska.

DANIEL S. SULLIVAN
ATTORNEY GENERAL

By:     ____/s/Bradley E. Meyen
        Bradley E. Meyen
        Assistant Attorney General
        Alaska Bar No. 8506067
        Alaska Department of Law
        1031 W. 4th Avenue, Suite 200
        Anchorage, AK  99501
        (907) 269-5100 (phone)
        (907) 279-8644 (facsimile)

By:     ____/s/Thomas Jantunen

Thomas Jantunen
Assistant Attorney General
Alaska Bar No. 0804016
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK  99501
(907) 269-5100 (phone)
(907) 279-8644 (facsimile)

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 9, 2010, the foregoing *Motion to Intervene as a Party Defendant*, *[Proposed] Answer of Intervenor-Defendant State of Alaska, Declaration of Edmund Fogels In Support of State of Alaska's Motion for Leave to Intervene* and *[Proposed] Order Granting the State of Alaska Leave to Intervene* were duly served on the following parties by the method of service noted below:

Via email to:          Stephen A. Fennell
                       STEPTOE & JOHNSON, LLP
                       1330 Connecticut Avenue, NW
                       Suite 238
                       Washington, DC 20036
                       (202) 429-8082
                       (202) 429-3902 (fax)
                       sfennell@steptoe.com

*Attorney for*
ABX FINANCECO INC.
*(Intervenor Defendant)*

BARRICK NORTH AMERICA HOLDING CORPORATION
*(Intervenor Defendant)*

Via email to:        ALASKA MINER ASSOCIATION, INC.
                     *(Movant)*

                     NORTHWEST MINING ASSOCIATION
                     *(Movant)*

Via email to:        Roger Flynn
                     WESTERN MINING ACTION PROJECT
                     P.O. Box 349
                     Lyons, CO 80540
                     (303) 823-5738
                     303- 823-5732 (fax)
                     wmap@igc.org


                     Jeffrey C. Parsons
                     WESTERN MINING ACTION PROJECT
                     P.O. Box 349
Via email to         Lyons, CO 80540
                     (303) 823-5738
                     303-823-5732 (fax)
                     wmap@igc.org


                     Edward S. Scheideman
                     DLA PIPER LLP (US)
                     500 Eighth Street, NW
                     Washington, DC 20004
Via email to         (202) 861-3900
                     (202) 223-2085 (fax)
                     edward.scheideman@dlapiper.com

                     *Attorneys for:*
                     EARTHWORKS

*(Plaintiff)*

GREAT BASIN RESOURCE WATCH
*(Plaintiff)*

HIGH COUNTRY CITIZENS' ALLIANCE
*(Plaintiff)*

SAVE THE SCENIC SANTA RITAS
*(Plaintiff)*

WESTERN SHOSHONE DEFENSE PROJECT
*(Plaintiff)*

U.S. FOREST SERVICE
*(Defendant)*

Via email to:          Joseph Michael Klise
                       CROWELL & MORING LLP
                       1001 Pennsylvania Avenue, NW
                       Suite 1000
                       Washington, DC 20004
                       (202) 624-2629
                       (202) 628-5116 (fax)


                       R. Timothy McCrum
                       CROWELL & MORING LLP
                       1001 Pennsylvania Avenue, NW
                       Suite 1000
                       Washington, DC 20004
                       (202) 624-2752
Via email to           (202) 628-5116 (fax)
                       rmccrum@crowell.com

                       *Attorney for:*

                       NATIONAL MINING ASSOCIATION
                       *(Intervenor Defendant)*

Via email to:          John S. Irving, IV
SANFORD WITTELS & HEISLER, LLP
1666 Connecticut Avenue
Suite 310
Washington, DC 20009
(202) 457-7842
john.irving@hklaw.com


Steven R. Milch
CROWLEY-FLECK PLLP
490 North 31st Street
Suite 500
Billings, MT 59101
(406) 252-3441
Via email to          (406) 252-5292 (fax)
smilch@crowleyfleck.com

*Attorneys for:*
ROUND MOUNTAIN GOLD CORPORATION
*(Intervenor Defendant)*


Via email to:          Gregory D. Page
US DEPARTMENT OF JUSTICE-FEDERAL
Litigation Section
P.O. Box 663
Washington, DC 20044-0663
(202) 305-0446
(202) 305-0505 (fax)
gregory.page@usdoj.gov

*Attorney for:*
U.S. BUREAU OF LAND MANAGEMENT
*(Defendant)*

U.S. DEPARTMENT OF AGRICULTURE
*(Defendant*

U.S. DEPARTMENT OF THE INTERIOR
*(Defendant)*

U.S. FOREST SERVICE
*(Defendant)*

By:      /s/Bradley E. Meyen
Bradley E. Meyen
Assistant Attorney General
Alaska Bar No. 8506067
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK  99501
(907) 269-5100 (phone)
(907) 279-8644 (facsimile)

By:      /s/Thomas Jantunen
Thomas Jantunen
Assistant Attorney General
Alaska Bar No. 0804016
Alaska Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK  99501