# Civil Case No. 1:09-cv-01972-HHK
# EXHIBIT I

# Civil Case No. 1:09-cv-01972-HHK
# EXHIBIT I

| | | |
|---|---|---|
| UNITED STATES DEPARTMENT OF AGRICULTURE | OFFICE OF THE GENERAL COUNSEL | Denver, Colorado 80202<br>(303) 844-4031   FTS 564-4031 |

October 25, 1990

REPLY TO: DBR

TO: Regional Forester
Lakewood, Colorado

ATTN: Charles Hendricks, Director
Watershed, Soils, and Minerals Area Management

FROM: Lawrence M. Jakub, Regional Attorney

By *Daniel B. Rosenbluth*
Daniel B. Rosenbluth, Attorney

SUBJECT: GILT EDGE EXPANSION - MINERALS

This responds to the referral from the Director, Minerals Area Management (R-2), concerning an issue posed by the Supervisor, Black Hills National Forest -

"Can lode claims be used for dumping mine waste and tailings from patented and unpatented mining claims?"

By oral presentation to the Director and Deputy Director on August 24, 1990 (between 11:00 a.m. and 12:00 p.m.) in the Second Floor Conference Room, Regional Office, the undersigned advised the Forest Service that storage and dumping of tailings and mine wastes on unpatented claims is a legitimate use under the mining law and Forest Service regulations.

This memorandum reduces OGC's opinion to writing and captures the legal and administrative bases for our conclusion the disputed use is permissible.

## I. GENERAL OVERVIEW

The issue posed by the Forest Supervisor as "using lode claims for dumping mine waste and tailings" has been addressed and resolved in the legal research and caselaw under the caption *"use of one claim for the benefit of another"*. The question of whether, and to what extent, the surface of one claim may be used to benefit another claim is the subject of a lengthy annotation at American Law of Mining 2d, § 110.02[2][a] (9 pages, citing 37 cases), as well as a thorough annotation in 58 CJS 2d, Mines Minerals and Mining. OGC has used the American Law of Mining Annotation and the caselaw cited therein as principal authority for our opinion the proposed use by Gilt Edge is permissible.

## II. VALIDITY OF THE PROPOSED USE

Our assessment of the relevant laws, agency regulations, reported caselaw (Supreme Court, Federal Appeals Circuits, and District Court decisions) and Department of Interior rulings relative to the issue of *"use of one claim for the benefit of another"* (storage of tailings and waste) is that such use is permissible. The applicable authorities in support of this opinion are listed below:

1. American Law of Mining 2d, p. 110-116 (4 cases cited)

2. Jackson v. Roby, 109 U.S. 440 (Supreme Court)

3. The legal and administrative concept of "Logical Mining Unit" (i.e., "a general plan or scheme for development of several claims" --

    a. Jackson v. Roby

    b. American Law of Mining, 2d

4. General Industry Procedures

5. Taking and Condemnation Considerations

6. 30 U.S.C. 612 - Surface Management
   (Forest Service mission and charge)

7. Operating Plan for Gilt Edge:
   Reclamation, Surface Management

The weight of authorities speaks for itself. We briefly address seriatim the major points highlighted above.

## III. REVIEW OF KEY AUTHORITIES

1. <u>American Law of Mining</u>

   Beginning with bedrock, OGC reviews the leading treatise on Mining Law. In <u>American Law of Mining</u>, Volume 4 (of a six volume set), § 110.02[2][d], as complete a discussion of the issue is contained as may be found anywhere. We excerpt as follows:

   > [d] Use of One Claim for the Benefit of Another
   >
   > *As a general rule, an operator can use a mining claim for purposes reasonably incident to mining, prospecting or processing, but other uses are not permissible. A more difficult question that is frequently faced by an operator is the extent to which the surface of one mining claim can be used for the benefit of another. Although this practice is widespread in the industry, there is little law that directly supports or contradicts its validity.*
   >
   > (<u>American Law of Mining</u>,
   > Vol. 4, p. 110)

   and further,

   > *Support for the proposition that use of one mining claim to develop the sources on another is within the intended scope of the mining law can be drawn from early mining custom. For instance, the United States Supreme Court noted that performance of group assessment work finds its roots in the traditional mining practice of operating a group of claims as one "general claim". The theory of a general claim is that the owner of the individual claims should have discretion to perform work anywhere within the group in order to develop individual claims. The theory could be equally applicable to the use of one claim for ancillary activities that benefit a group of claims, in that such use promotes development of the group without abusing surface resources.*
   >
   > *Support for a broad ancillary right can also be found in the laws and regulations enacted to correct abuses of the mining law. They do not generally limit ancillary uses of unpatented claims, but prohibit only certain types of uses. In addition, the need to minimize adverse environmental impacts favors a concentration, in many cases, of ancillary facilities onto a small area or a relatively few claims involved in a large operation. When it is possible to also develop and extract minerals from the claims supporting the ancillary uses, objections to such uses should be unlikely.*
   >
   > (<u>American Law of Mining</u>,
   > Vol. 4, p. 114-15)

American Law of Mining separately considers storage or dumping of tailings and waste at Volume 6, § 203.01[4][a], noting:

> [4] Disposition of Waste and Tailings
>
> [a] Right to Deposit Waste
>
> *Subject to mined land reclamation and solid and hazardous waste disposal legislation, and possible claims based on nuisance, a miner has the right to deposit tailings and dump waste rock on his own land and, subject to regulation by the admin- istering agency, upon vacant and unoccupied public lands. In the absence of an express provision in a deed or lease, it is generally held that a mineral owner or lessee has an implied right to a reasonable use of the surface of the land overlying the mineral estate for dumping waste from mining activities.*
> (American Law of Mining, Vol. 6, p. 203-12)

2. Supreme Court and Federal Precedent

Review of pertinent caselaw, including rulings of the United States Supreme Court, authorize the disputed use.

The Supreme Court has noted that ... "performance of group assessment work finds its roots in the traditional mining practice of operating a group of claims as one 'general claim'. The theory of a general claim is that the owner of the individual claims should have discretion to perform work anywhere within the group in order to develop the individual claims". American Law of Mining, Vol. 4, p. 110-14. Relative to use of one claim for the benefit of another, the Supreme Court has held:

> "In such cases it has always been the practice for the owners of different locations to combine and to work them as one general claim; and expenditures which may be necessary for the development of all the claims may then be made on one of them." Jackson v. Roby, 109 U.S. 440, 445 (1883); Smelting Co. v. Kemp, 104 U.S. 636, 655 (1882). In accord, see Kramer v. Taylor, 266 P.2d 709, 715 (1954).

Applying this line of reasoning, the Court of Appeals, 10th Circuit, upheld a Federal District Court ruling allowing a claimant to take timber from one unpatented claim <u>for use on land other than the claim</u>. The Court reasoned that to limit the use of timber on an unpatented claim to solely <u>that claim</u> "would place an arbitrary obstacle in the way of orderly mining operations on unpatented mining claims." United States v. Cruthers, 523 F.2d 1306 (9th Cir, 1975); Copper Mtn. Mining & Smelting Co. v. Butte & Corbin Consol. Copper & Silver Mining Co., 104 P. 540 (1909).

So here, OGC finds this reasoning and precedent persuasive with respect to the Gilt Edge project.

Relative to judicial interpretations, we again quote American Law of Mining, Vol. 2, p. 110-9.

> *"Judicial interpretations of the types of activities permissible on the surface of unpatented mining claims have generally not clearly defined the scope of permissible ancillary uses. Most of the early cases that focused upon the statutory grant of exclusive possession dealt with the nature of the possessory title of the locator vis a vis other locators and the United States rather than with the scope of rights conferred by it. Later cases have, for the most part, been limited to determinations that certain uses are impermissible. The absence of judicial explanation of the types of ancillary uses that are permissible indicates that the statutory grant was intended to be, and has been accepted as being, very broad. A review of several of the available judicial decisions does provide guidance as to the conflicting principles considered by courts in evaluating the legality of ancillary uses.*
>
> *Teller v. United States, decided in 1901, was the first important "limitations" case. The court held that a mining claim could not be used for timber harvesting because the activity was not "for the purpose of carrying on ... mining operations ..." Subsequent judicial decisions have repeated the general limitation that ancillary activities must be for mining purposes and have provided specific examples of impermissible uses, including operating a saloon, leasing the surface for grazing purposes, or using the surface for a residence unrelated to mining activities or for a resort hotel. However, these cases provide little additional guidance to the mine operator as to the scope of permissible ancillary uses beyond that provided by Teller.*
>
> *Some positive guidance can be obtained by reviewing the types of work courts have approved as fulfilling annual assessment work requirements under the general mining law. Because annual assessment work must be for mining purposes, by inference, any activity which qualifies as assessment work should qualify as a permissible use of the surface of a mining claim. Following this rationale, such direct mining activities as "sinking holes or shafts or in running tunnels or drifts therein to discover or locate ore bodies, the installation of machinery or fixtures to facilitate the extraction therefrom of any ores ..." or core drilling would clearly be per-missible. Ancillary uses such as houses for miners, mills, pumping plants, and related equipment have also been approved. Likewise, the courts have not questioned ore storage, storage of overburden, road building, construction of dams and reservoirs, flumes, and deposition of tailings as valid ancillary uses in the context of assessment work.*

More recent cases provide little further definition of the ancillary uses permissible on unpatented mining claims, except to confirm that the broad holding in Teller is still the law.

We concur.

3. <u>Administrative Regulations endorsing Surface Management on a "Project basis" rather than claim by claim</u>

Legally and administratively, the concept of a "Logical Mining Unit" - i.e., a general plan or scheme for developing several claims is endorsed by the Supreme Court in <u>Jackson v. Roby</u>, and also embraced by industry, the Forest Service and BLM. Again, quoting <u>American Law of Mining</u>, Vol. 4, p. 110-15.

> The BLM and Forest Service regulations governing plans of operation seem to contemplate operations on an area wide or "project basis" rather than a claim by claim basis. For instance, in 43 C.F.R. § 3809.0-5(i) (1983) "Project area" means a single tract of land upon which an operator is, or will be, conducting operations. It may include one mining claim or a group of mining claims ..." The regulations also are written in terms of development of "deposits" rather than individual claims. See, e.g., 43 C.F.R. §§ 3802.0-5(f) & 3809.0-5(f) (1983).

Forest Service regulations provide, at 36 C.F.R. 228A, "Definitions" under subsection (a) -

> "All functions, work and activities in connection with prospecting, exploration, development, mining or processing of mineral resources and all uses reasonably incident thereto, including roads and other means of access on lands subject to the regulations in this part, regardless of whether said operations take place on or off mining claims."

Both BLM and the Forest Service define, anticipate and regulate mining surface uses on an area wide or project basis, rather than claim by claim.

4. <u>The Gilt Edge Project Plan of Operations on File</u>

Exploration and mining activities on lands administered by the Forest Service are subject to the regulations of the Secretary of Agriculture at 36 C.F.R. 228. These regulations require that anyone whose proposed operation could likely cause "significant disturbance of surface resources" must submit a plan of operations. Such plan should address the nature of the proposed disturbance and steps to protect surface resources. It must also describe steps to reclaim the land after mining activities have ceased. The plan must be approved by an authorized Forest Service officer.

OGC has reviewed the plan of operations filed by the Brohm Mining Corporation and approved by the Forest Service relative to the Gilt Edge project. We find at least three sections of this document which exhaustively detail and address those environmental and surface management issues connected with storage and/or dumping of tailings and waste.

1. Section III, Project Description, Subpart 3.4.8 entitled "Tailings Disposal and Water Recovery"

2. Section III, Project Description, Subpart 3.3.5 entitled "Waste Dumps"

3. Section V, Project Description, Subpart 5.2 entitled "General Reclamation Plans and Objectives" (specifically providing at Paragraph 2, Sentence 1, that "the long-term objectives of the reclamation plan will ensure that the areas affected by mining ore are returned to a condition visually and functionally compatible with the surrounding environment.")

4. Section V, Project Description, Subpart 5.2.3 entitled "Concurrent and Interim Reclamation"

5. Section V, Project Description, Subpart 5.2.4 at pages V-7 through 9, entitled "Waste Rock Disposal Areas" and "Tailings Disposal Area"

Collectively, these sections of the Plan of Operations demonstrate that operator and the Forest Service have taken a hard look at the environmental consequences of the proposal, and have adequately ensured appropriate mitigation and reclamation measures consistent with long-term plan goals pledging "... areas affected by mining will be returned to a condition visually and functionally compatible with the surrounding environment."

5. **Taking and Condemnation Issues**

The Constitutions of every State and the United States place limits on the sovereign right of eminent domain whereby the government may acquire or "take" private property. Limits are imposed by the due process clause of the Fifth Amendment to the United States Constitution, applied to the States by way of the Fourteenth Amendment. The limitations require payment of just compensation for the property which is taken, provide the owner with due process, and require use of the condemned property for a "public use".

Even a defeasible mining claim is a property right which enjoys the protection of the due process clause; however, both the Supreme Court and the I.B.L.A. have repeatedly ruled that the statutory right granted under the Mining Law of 1872 to explore the public domain for mineral deposits is not infringed on by a contest challenging the validity of a mining claim location because a right to occupy and purchase the lands vests only if a valuable mineral deposit is discovered. David v. Nelson, 329 F.2d 840; Best v. Humboldt Placer Mining Company., 371 U.S. 334; Cameron v. United States, 252 U.S. 450.

OGC has been assured by the Regional Office that there is no issue concerning whether a valid discovery has been made on the subject mining site. If this is true, the owner may well discover that by storing waste and tailings on a site, claimant may put himself in future jeopardy should it ever become necessary for Brohm to prove discovery.

Reasonable Forest Service regulation of surface disturbance on unpatented claims in the National Forests is not a "taking" nor violative of due process. Best v. Humboldt Placer Mining Company, 371 U.S. 344.

6. <u>30 U.S.C. 612 (Surface Management)</u>

Quoting <u>Silbrico Corp. v. Ortiz</u>, 878 F.2d 333 -

> Congress enacted this legislation to combat the "waste of valuable resources of the surface on land embraced within claims." H.R. 730, 84th Cong. 1st Sess., *reprinted in* 1955 U.S. Code Cong. & Admin. News 2474, 2479 (hereinafter H.R.). Accordingly, an unpatented mining claim is subject to the right of the United States, its permittees and licensees "to manage and dispose of the vegetative surface resources thereof and to manage other surface resources thereof" so long a such shall not "endanger or materially interfere with prospecting, mining or processing operations or uses reasonably incident thereto." 30 U.S.C. § 612(b). *In view of the Act's legislative history, its language is sufficiently broad to permit surface uses which cannot reasonably be said to impede the claim owners mining operations and related activities.*

Thus, claimant is permitted to use its surface for purposes not impeding mining operations and related activities. Just as clearly, the United States may regulate and manage the surface use in these circumstances.

7. <u>Contrary Authorities</u>

There are no contrary authorities of significance. The broad holding in <u>Teller</u>, 113 F 273 (1901), is still the law. Ancillary activities and uses must be for mining purposes. The caselaw has highlighted specific examples of impermissible uses, including operating a saloon, leasing the surface of grazing purposes, or using the surface for a residence unrelated to mining processes, or for a resort hotel. BLM has enumerated certain uses of the surface of unpatented mining claims prohibited by the Multiple Surface Use Act of 1955 (which provided the first legislative limitations on the types of uses which can be made of the surface of claims after July 23, 1955). Filling stations, curio shops, cafes, tourist, or fishing and hunting camps are prohibited.

Storage or dumping of waste and tailings is not specifically identified or discussed. In the context of assessment work, the courts have not questioned regarding storage, storage of overburden, and deposition of tailings as valid ancillary uses. (<u>Jackson v. Roby</u>, supra; <u>Buckeye Mining v. Powers</u>, 257 p. 833 (1927); <u>Ring v. U.S. Gypsum</u>, 216 p. 409.

Thus, we have concluded the proposed use is within the scope of existing laws and regulations and permissible.

## IV. CONCLUSION

We answer the Forest Supervisor's query

"Can lode claims be used for dumping mine waste and tailings from patented and unpatented mining claims?"

in the affirmative.

The caselaw and authorities undergirding our opinion are attached as Exhibits hereto, pertinent portions highlighted.

Enclosures

DBR:ms