# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EARTHWORKS; | ) | |
| HIGH COUNTRY CITIZENS' ALLIANCE; | ) | |
| GREAT BASIN RESOURCE WATCH; | ) | |
| SAVE THE SCENIC SANTA RITAS; and | ) | |
| WESTERN SHOSHONE DEFENSE PROJECT. | ) | No. 1:09-cv-01972-HHK |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF THE INTERIOR; | ) | |
| KENNETH SALAZAR, Secretary of the Interior; | ) | |
| U.S. DEPARTMENT OF AGRICULTURE; | ) | |
| THOMAS VILSACK, Secretary of Agriculture; | ) | |
| U.S. BUREAU OF LAND MANAGEMENT; and | ) | |
| U.S. FOREST SERVICE. | ) | |
| | ) | |
| Defendants. | ) | |

---

## PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS IMPROPERLY WITHHELD FROM THE ADMINISTRATIVE RECORD AND MEMORANDUM IN SUPPORT THEREOF

---

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ........................................................................3

ARGUMENT ....................................................................................................7

I.   The Agencies Must Submit the "Whole Record" and Cannot
     Exclude Documents That Were Before It That Are Detrimental
     to Their Case .........................................................................................7

II.  The Record Improperly Excludes Pertinent Documents
     That Were Before the Agencies .........................................................10

III. The Federal Defendants Have Failed to Meet Their Burden
     in Withholding Documents Under the Asserted Privileges.............15

A.   Blanket Assertions of Privilege Are Inadequate ..............................16

B.   The Privileges Were Not Properly Invoked by the Proper Officials...............17

C.   Even if the Privileges Were Properly Invoked, the Asserted
     Privileges Are Not Justified.................................................................19

     1.   The Attorney-Client Privilege........................................................20

     2.   The Attorney Work Product Privilege .........................................21

D.   Even If the Privileges Are Valid in All Respects, the Need for Accurate
     and Complete Judicial Review Outweighs the Government's Interests
     in Non-Disclosure .................................................................................22

E.   In-Camera Review of the Withheld "Privileged" Documents
     May Be Justified....................................................................................25

CONCLUSION ..................................................................................................27

EXHIBIT LIST..................................................................................................29

## INTRODUCTION AND SUMMARY

Plaintiffs Earthworks, High Country Citizens' Alliance ("HCCA"), Great Basin Resource Watch ("GBRW"), Save the Scenic Santa Ritas ("SSSR"), and Western Shoshone Defense Project ("WSDP") submit this Motion to Compel Production of Documents Improperly Withheld from the Administrative Record in this case.  Pursuant to this Court's case management Order of December 6, 2010 (Docket # 52), the Federal Defendants have recently provided a copy of what they consider to be the complete administrative record to the parties and lodged it with this Court. *See* Federal Defendants' Notice of Filing Index to Administrative Record dated April 11, 2011 (Docket # 53), re-filed on April 12, 2011 (Docket #55).

The Federal Defendants had previously submitted record documents to all parties in February, 2011.  As contemplated by the case management Order, counsel for Plaintiffs contacted counsel for the Federal Defendants and informed the Federal Defendants that the record submitted by the agencies was incomplete, lacked significant documents, and improperly withheld documents under inadequate claims of privilege.  In their lodging of the record with this court on April 11-12, 2011, the Federal Defendants did not resolve the issues raised, adding only three documents to the record, claiming that they have now submitted what they believe is the complete and whole administrative record to this Court and all parties.[1]

This Motion seeks an Order requiring Federal Defendants to produce all agency documents relevant to the claims presented in Plaintiffs' Complaint, and requiring Federal

---

[1] Because the parties were unable to reach agreement as to the record, and with the filing of this Motion, the Plaintiffs' opening summary judgment motion, previously due by May 1, 2011, will now be due "no later than 45 days after the content of the administrative record is resolved by Court order." Order of December 6, 2010, at 2.

Defendants to produce documents for which they improperly asserted, and failed to substantiate, claims of attorney-client and attorney work product privilege.

This case involves Plaintiffs' challenge to the following federal agency actions: (1) Interim Final Rule titled "Mining Claims Under the General Mining Laws," issued by the Department of Interior ("DOI") and Bureau of Land Management ("BLM"). 73 Fed. Reg. 73789-73794 (Dec. 4, 2008) ("2008 Mining Claim Rule" or "2008 Rule"). *See, e.g.,* Plaintiffs' Complaint: First and Third Causes of Action.  The 2008 Mining Claim Rule was issued in response to the decision and Order of this Court in <u>Mineral Policy Center v. Norton</u>, 292 F.Supp.2d 30 (D.D.C. 2003)(Civ. No. 01-0073, HHK); (2) DOI/BLM's Final Rule titled "Locating, Recording, and Maintaining Mining Claims or Sites," 68 Fed. Reg. 61046-61081 (Oct. 24, 2003), particularly those portions of the October 24, 2003 Final Rule related to Millsites, or Millsite Claims (hereinafter, "2003 Millsite Rule" or "Millsite Rule"). *See, e.g.,* Complaint: Second, Third, and Fourth Causes of Action; and (3) Reliance upon, and implementation of, these two new regulations and the policies contained therein, by the DOI, BLM and the Department of Agriculture ("DOA") and its United States Forest Service ("USFS") in the agencies' review, management, and regulation of mining operations on federal public lands administered by both agencies. *See, e.g.,* Complaint: First Cause of Action (¶¶ 152-154), and Second Cause of Action (¶¶ 156-157).

Federal Defendants have failed to provide a complete record for the claims in this case. In failing to produce the complete administrative record, the Federal Defendants inappropriately excluded a number of federal agency documents that were before the agencies when they undertook the challenged actions in this case – failing to produce documents that are detrimental to the government's case.  For example, one of the critical issues in this case surrounding the

2003 Millsite Rule is the fact that the 2003 Millsite Rule reversed decisions of former Interior

Secretary Bruce Babbitt regarding Millsites (beginning in 1997 and continuing until the end of

President Clinton's second term on January 20, 2001).  However, except for one document (the

Millsite Memorandum issued by Secretary Babbitt in 1997), the record is devoid of any agency

documents related to Millsites produced during the Clinton administration.  This set of excluded

documents include those involving an important mine-specific decision implementing the

Clinton administration's Millsite policy, issued by both DOI/BLM and DOA/USFS (known as

the Crown Jewel Mine decision in 1999).  Despite the fact that the 2003 Millsite Rule expressly

discusses the decisions related to the Crown Jewel Mine, 68 Fed. Reg. at 61055, there are no

documents in the record related to that issue.

The same tactic was used by the Federal Defendants regarding the 2008 Mining Claim

Rule.  As submitted, the record does not even begin until the day when this Court issued its

ruling in <u>Mineral Policy Center</u> in November of 2003.  However, central to that case was

Secretary Babbitt's January 18, 2001 "Ancillary Use Memorandum" (co-signed by Interior

Solicitor John Leshy), which established the proper scope of DOI/BLM's authority over mining

operations proposed on lands not covered by "valid and perfected claims." *See* 292 F.Supp.2d at

46-51.  Despite the central role that Memorandum played in Interior Department policy on these

very issues, the Federal Defendants have chosen to exclude from the record that Memorandum,

as well as all other Clinton administration documents related to it.

Overall, the Federal Defendants' are not free to shield from this Court's review relevant

prior agency documents that support Plaintiffs' claims in this case.

Adding to the problem, the record submitted by the Federal Defendants, who include the

DOA and USFS, is devoid of **any** documents in the possession of these two Defendant agencies.

Indeed, it does not appear that the Federal Defendants inquired **at all** into whether DOA or USFS had any relevant documents.  This is despite the fact that this case challenges the policies of all four agencies – DOI, BLM, DOA, and USFS – related to the interpretations and implementation of the 1872 Mining Law.

Lastly, the Federal Defendants excluded 305 documents (64 related to the Millsite Rule and 241 related to the 2008 Rule), claiming that the documents are subject to "attorney work product" or "attorney-client" privileges.  However, many of the excluded documents assert no privilege at all.  For those that do assert a privilege, many are described as "undated."  Others list the author, but no recipient.  For all the entries, it is impossible to ascertain if the author or recipient are attorneys.  Also for all the excluded documents, the descriptions of the documents are conclusory, with little information given besides the simple title of the document.

Such incomplete and blanket assertions of privilege fail to meet the standards set by the Supreme Court, D.C. Circuit, and this District.  Based on this scanty information, Plaintiffs have no way to ascertain if the asserted privilege indeed applies at all to a particular document.

Overall, Plaintiffs seek to compel the production of a complete administrative record.  As explained more fully below, judicial review in an administrative record case must be based on the entire record before the agency.  Review of an incomplete record, parts of which are improperly withheld by the agency, will not suffice.  Even assertions of the attorney-client privilege are reviewed carefully to insure that no more of the record is withheld than is necessary to protect the core purposes of the privilege.  Any broader allowance of agency privilege claims, or the deliberate exclusion of documents detrimental the Federal Defendants' positions in this case, undermine both the Plaintiffs' ability to challenge the agency's actions and this Court's ability to review it.

## ARGUMENT

I.     **The Agencies Must Submit the "Whole Record" and Cannot Exclude Documents That Were Before It That Are Detrimental to Their Case**

Challenges to agency rulemaking decisions are reviewed under the APA, which authorizes courts reviewing agency action to hold as unlawful and set aside final agency action, findings, and conclusions that are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  "The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.  The task of the reviewing court is to apply the appropriate APA standard of review … to the agency decision based on the record the agency presents to the reviewing court."  Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985), *quoting* Camp v. Pitts, 411 U.S. 138, 142 (1973).

The administrative record before the Court for review must be "the whole record" that was actually before the agency, as opposed to a carefully culled "record" that the agency's lawyers compile and submit to the Court in subsequent litigation.  5 U.S.C. § 706(2)(A); *see* Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 420 (1971).

> The "whole record" includes all materials that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision. *Amfac Resorts v. U.S. Dep't of the Interior*, 143 F.Supp.2d 7, 12 (D.D.C. 2001). …
>
> The policy requiring a reviewing court to consider the entire record before the agency prior to rendering its decision ensures that neither party is withholding evidence unfavorable to its position and that the agencies are not taking advantage of post hoc rationalizations for administrative decisions. *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984).

County of San Miguel v. Kempthorne, 587 F.Supp.2d 64, 71 (D.D.C. 2008)(ordering the Interior Department to complete the record with improperly excluded documents).  *See also* Pers. Watercraft Indus. Ass'n v. Dep't of Commerce, 48 F.3d 540, 546 n. 4 (D.C.

Cir. 1995)(noting with approval that the "whole record" contained all materials "pertaining to the [challenged] regulations").  The Local Rules of this District further note the agency's "obligation to file the complete record." Comment to LcvR 7(n).

"The requirement of review upon 'the whole record' means that courts may not look only to the case presented by one party, since other evidence may weaken or even indisputably destroy that case." Walter O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1987).  An incomplete record must be viewed as a "fictional account of the actual decision-making process." Portland Audubon Society v. Endangered Species Committee, 984 F.2d 1534, 1548 (9th Cir. 1993).  "[T]he whole record is not necessarily those documents that the agency has compiled and submitted as 'the' administrative record, [but, rather,] the court must look to all the evidence that was before the decisionmaking body." Public Power Council v. Johnson, 674 F.2d 791, 794 (9th Cir. 1982).

"The agency may not skew the record in its favor by excluding pertinent but unfavorable information. *Envtl. Def. Fund v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978).  Nor may the agency exclude information on the grounds that it did not 'rely' on the excluded information in its final decision." Fund for Animals v. Williams, 391 F.Supp.2d 191, 197 (D.D.C. 2005).  "An agency may not submit an administrative record to the court which contains only documents favoring the agency's decision and omits documents present in the agency's file which bear upon matters before the Court." National Wildlife Federation v. Burford, 677 F. Supp. 1445, 1457 (D. Mont. 1985), (citing Envtl. Def. Fund, Inc. v. Blum, 458 F. Supp. 650, 661 (D.D.C. 1978)).  In Envtl. Def. Fund, the agency had relevant documents in its files, but asserted that those documents were "not considered by EPA to be part of the record as not relied upon in reaching

its final order."  458 F. Supp. at 661.  The court rejected the agency's attempt "to exclude from consideration pertinent material submitted as an integral part of the rulemaking process or otherwise located in EPA's own files." Id.  An "agency may not [] skew the 'record' for review in its favor by excluding from that 'record' information in its own files which has great pertinence to the proceedings in question."  Id.

Documents that were in possession of the agency in making its decision must also be included so that the Court can decide whether the agency "failed to consider an important aspect of the problem," or failed to "explain the evidence which is available," which would render the decision arbitrary and capricious under the APA. Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43 (1983).  *See also* Carlton v. Babbitt, 900 F. Supp. 526, 533 (D. D.C. 1995) (reversing DOI decision after finding that there was evidence that the agency "should have been aware of, but ignored" in its final decision).

One recent District decision outlined the burden on a party to obtain a complete record. "To ensure that an agency not skew the record in its favor by excluding pertinent but unfavorable information, the law affords a rebuttable presumption that it [the agency] properly designated an accurate and complete administrative record." County of San Miguel, 587 F.Supp.2d at 72.  "If a party can make a substantial showing that the agency has not filed the entire administrative record with the court, supplementation of the record can be ordered." Id. (citations omitted).

In this case, as shown below, the Federal Defendants failed to file a complete and accurate record and thus this Court should order the agencies to produce the withheld documents for the Plaintiffs and this Court.

## II.     The Record Improperly Excludes Pertinent Documents That Were Before the Agencies

The Federal Defendants improperly excluded a host of documents that were before it when it issued the challenged regulations.  "It is axiomatic that documents created by an agency itself or otherwise located in its files were before it." County of San Miguel, 587 F.Supp.2d at 76.

In failing to produce the complete administrative record, the Federal Defendants excluded a number of federal agency documents that were before the agencies when they undertook the challenged actions in this case – failing to produce documents that are detrimental to the government's case.  For example, one of the critical issues in this case surrounding the 2003 Millsite Rule is the fact that the 2003 Millsite Rule reversed the decisions of former Interior Secretary Bruce Babbitt regarding Millsites made in 1997 and continuing until the end of President Clinton's second term on January 20, 2001. See "Limitations on Patenting Millsites Under the Mining Law of 1872" ("1997 Millsite Memorandum"). AR: MIL012018 (added to the record by the Federal Defendants' April 11-12, 2011 filings).  However, except for one document (the 1997 Millsite Memorandum), the record is devoid of any agency document related to Millsites produced during the Clinton administration.  At a minimum, the documents cited in and relied upon by the Secretary and Solicitor in issuing the 1997 Millsite Memorandum were before the agency and relevant to this case. See, e.g., Complaint ¶¶ 95-109 (factual background for challenge to Millsite Rule).

It cannot be credibly argued that the Interior Department under the administration of President Bush, when it reversed the previous administration's policies regarding a highly controversial issue such as Millsites, did not have before it documents relied upon by, and available to, the previous administration.

As a demonstration that substantive documents exist that have been excluded from the record, Plaintiffs have attached to this Motion a September 28, 2001 Memorandum from Deputy Interior Secretary J. Steven Griles to Nina Hatfield, BLM Acting Director, which discusses implementation of the 1997 Millsite Memorandum, was improperly excluded from the record. That document is attached as Exhibit 1.  Again, it is hard to know how many other documents related to that Memorandum exist in the agencies' files.  For example, the Griles Memorandum discusses a letter from former Secretary Babbitt to Nevada Senator Reid involving implementation of DOI's Millsite policy, but that document too is missing from the record.

In addition, one of the most controversial mine-specific decisions issued by the agencies regarding the Millsite issue, involving both DOI/BLM and DOA/USFS (known as the Crown Jewel Mine decision in 1999) was excluded from the record.  Indeed, the final 2003 Millsite Rule expressly discusses the decisions related to the Crown Jewel Mine, 68 Fed. Reg. at 61055, yet there are no documents in the record related to that issue.  The Crown Jewel Mine decision, issued by both DOI/BLM and DOA/USFS, implemented the agencies' Millsite policies to deny a proposed mining operation in Washington State – policies that were reversed by the challenged 2003 Millsite Rule. *See* Rinke, "The Crown Jewel Decision: Recognizing the Mining Law's Inherent Limits," 27 ECOLOGY LAW QUARTERLY 819 (2000).

The Crown Jewel Mine decision is attached as Exhibit 2.  However, Plaintiffs do not have other documents cited in that decision or relied upon by DOI/BLM and DOA/USFS.  In this respect the Plaintiffs are at an extreme disadvantage because, although the agencies undoubtedly have other documents pertaining to the Millsite issue and the Crown Jewel Mine decision, the fact that the agencies have excluded them from the record makes it impossible for the Plaintiffs to list with exact specificity the other documents before the agencies.

The same lack of completeness applies to the administrative record pertaining to Plaintiffs' challenge to the 2008 Mining Claim Rule.  As submitted by Federal Defendants, the administrative record does not begin until the day when this Court issued its <u>Mineral Policy Center</u> ruling in November of 2003.  In that case, this Court in relevant part, established the proper scope of DOI/BLM's authority over mining operations proposed on lands not covered by "valid and perfected claims."  *See* 292 F.Supp.2d at 46-50.  The decision partially remanded DOI/BLM's mining regulations challenged in that case (36 CFR Subpart 3809), finding that DOI/BLM had improperly interpreted the Federal Land Policy and Management Act ("FLPMA") and the 1872 Mining Law regarding mining operations proposed on lands not covered by valid claims.

The <u>Mineral Policy Center</u> decision required DOI/BLM to publish regulations governing mining operations (except initial exploration activities) that are proposed on lands that are not covered by valid mining or millsite claims and directed DOI/BLM to issue regulations requiring such mining operations on federal land to pay Fair Market Value ("FMV") for the use of such lands. 292 F.Supp.2d at 49-51.  The 2008 Mining Claim Rule was issued in response to that decision. *See,e.g.*, Complaint ¶¶ 69-89 (factual background for challenge to 2008 Rule).

There is no credible reason why agency documents related to this issue that pre-date this Court's decision should be excluded from the record.  For example, one of the key agency documents relied upon by this Court in <u>Mineral Policy Center</u> to resolve issues surrounding mining operations proposed on lands not covered by valid claims – a central issue regarding the legality of the 2008 Rule – was Secretary Babbitt's January 18, 2001 Memorandum entitled "Use of Mining Claims for Purposes Ancillary to Mineral Extraction," ("Ancillary Use Memorandum") (co-signed by Interior Solicitor John Leshy). 292 F.Supp. 2d at 48.  The

Ancillary Use Memorandum is attached as Exhibit 3.   The record also excluded all of the documents relied upon or discussed in the Ancillary Use Memorandum, yet clearly those documents were before the agencies when they made their challenged decisions.

Overall, the record is devoid of any of the agency documents related to the Clinton administration's policies and interpretations of this issue, including the Ancillary Use Memorandum itself.  This is despite documents in the record that explicitly state that issues related to the Ancillary Use Memorandum were considered in developing the 2008 Rule. *See* AR: FMV000267-274 (DOI documents related to the Bush Administration's reversal of the Ancillary Use Memorandum).

Regarding documents in the possession of Defendants DOA and USFS, the record is devoid of any documents produced by those two agency defendants.  Indeed, it does not appear that the Federal Defendants inquired **at all** into whether DOA or USFS had any relevant documents.  The Federal Defendants failed to provide any affidavit or other evidence by any DOA/USFS official regarding the record.

Although a central part of this case challenges the two DOI/BLM regulations, the case also involves Plaintiffs' challenge to the policies of all four agencies – DOI, BLM, DOA, and USFS – related to the interpretations of the 1872 Mining Law taken by the four agencies.  *See, e.g.,* Complaint at ¶¶ 152-154; 156-157.  Apparently, the Federal Defendants do not believe that DOA and USFS are part of this case and thus any documents in their possession related to these issues are irrelevant and can be shielded from this Court's and the Plaintiffs' review.

That is wrong.  Issues surrounding how DOA and the USFS have interpreted the relevant provisions of the Mining Law, such as the Millsite provision and issues regarding the lack of a statutory right to conduct mining operations on lands not covered by valid claims pursuant to

Mineral Policy Center, are part of this lawsuit.  The Federal Defendants cannot simply exclude documents that they believe do not fit under their theory of the case.

For example, Plaintiffs have obtained, from their own independent investigation, DOA/USFS documents that explicitly discuss DOA/USFS interpretation and implementation of the Clinton administration's 1997 Millsite Memorandum, the 2001 Ancillary Use Memorandum, and the 1999 Crown Jewel Mine decision. *See* September 22, 2003 Information Memorandum from DOA Undersecretary Mark Rey, attached as Exhibit 4.  This document is not in the record and neither are any other DOA and USFS documents related to these issues.  The Rey Memorandum has been relied upon by USFS officials in the field to implement the DOA/USFS policies challenged in this case. *See* Letter from USFS Regional Forester Rick D. Cables to Colorado Rep. John T. Salazar dated July 3, 2008 (relying on the Rey Memorandum to hold that the agency will not inquire into, or question, whether a mining/millsite claim is valid when reviewing a proposed mining operation on non-withdrawn public lands) (Exhibit 5).

Similar to the categories noted above, it is impossible for the Plaintiffs to know what specific documents in the possession of the DOA/USFS were excluded from the record by the agencies.  For example, a November 14, 2005 Memorandum from DOI Solicitor Sue Ellen Wooldridge (AR: FMV000268) regarding the Ancillary Use Memorandum references a July 9, 2004 letter from USFS Chief Dale N. Bosworth to BLM Director Kathleen Clarke, but that document does not appear to be in the record.  That Memorandum also refers to a July 30, 2004 Memorandum from the BLM Director to the Solicitor regarding the Ancillary Use Memorandum, yet that document also does not appear to be in the record.

Overall, the record submitted by the Federal Defendants as supposedly "complete" is nothing of the sort.  Document after document directly related to the issues in this case and in the

agency files have been excluded.  Accordingly, Plaintiffs respectfully ask this Court to order the inclusion of these documents into the record, and to have the Federal Defendants conduct a more thorough investigation of their files to ensure that other documents have not been improperly excluded based on the Federal Defendants' truncated, and erroneous, view of what constitutes "the whole record" in this case.

### III.   The Federal Defendants Have Failed to Meet Their Burden in Withholding Documents Under the Asserted Privileges

The Federal Defendants have listed and excluded over 300 documents under asserted privileges of attorney-client and/or attorney work product (64 related to the Millsite Rule and 241 related to the 2008 Rule).[2]  To the extent that any documents may be withheld from the record in this case based on claims of privilege, the burden is on the agency to demonstrate that a privilege is appropriate for each document withheld.  "The agency asserting the privilege has the burden of establishing its applicability to the documents at issue. *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984)."  Schreiber v. Society For Sav. Bancorp, Inc., 11 F.3d 217, 220 (D.C. Cir. 1993). *See also*, Alexander v. F.B.I., 192 F.R.D. 42, 45-46 (D.D.C. 2000)(for both attorney-client and attorney work product privilege, burden is on the party asserting the privilege).  In determining whether a privilege can be asserted, a court also weighs the competing interests in government secrecy with the needs of the public.  Even if a privilege applies, "[the court] must still consider the competing interests of the party seeking the

---

[2] For one document, the privilege designation is simply "awp deliberative." *See* document with date of 4/16/1999 in Index for "Millsite Privileged."  Plaintiffs assume that this means that the attorney work product privilege is asserted.  If the Federal Defendants are also asserting a "deliberative" privilege, that privilege is inadequately asserted (similar to the attorney-client and attorney work product privileges asserted for the other 300+ documents).

- 15 -

document and the … agency before it can determine whether the privilege should be overridden." Schreiber, 11 F.3d at 222 (D.C. Cir. 1993).

The Federal Defendants have failed to carry their substantial burden to justify withholding these documents.

## A.     Blanket Assertions of Privilege Are Inadequate

In their Index to the withheld documents, the Federal Defendants simply list the name and date of the document, the addressee and author, and the type of privilege.  The two lists of excluded documents – one for the Millsite Rule, the other for the 2008, or FMV ("Fair Market Value") Rule – are contained in the agencies' April 11, 2011 filings (as re-filed on April 12, 2011)(Docket #s 53 and 55).  For many of the documents in the Index, however, either the date is missing, or the names of the author and/or addressee are missing.  For others where the names are listed, no title is given for the listed person, so it is impossible to tell if the person is an attorney, for example.  This minimalistic list fails to provide the level of information necessary to determine whether **any** privilege applies to each of the over 300 withheld documents.  It is impossible to determine from the list the actual content of the withheld documents, let alone the factual basis for the assertion of privilege.

Since the Federal Defendants have listed these documents as part of the record, they cannot dispute that these documents are relevant and are among the documents that were before the agencies.  Nevertheless, the agency has, in blanket fashion, withheld the documents from the record.  Such opaque and uninformative assertions of privilege, even in the context of civil discovery where privileges are sometimes more broadly construed, are extremely disfavored, and should be even more disfavored in the context of administrative record review cases.

The D.C. Circuit has repeatedly rejected precisely the type of privilege index that the Federal Defendants have offered in this case.  In Coastal States Gas Corporation v. Dept. of Energy, for example, the D.C. Circuit held inadequate a privilege log that was more detailed than that list produced by the Federal Defendants here.  617 F.2d 854, 861 (D.C. Cir. 1980). Similarly, Justice Ginsburg, writing for the D.C. Circuit in Senate of Puerto Rico v. U.S. Dep't of Justice, noted that "conclusory assertions of privilege will not suffice to carry the agency's burden," and went on to observe that "[t]he information provided by the DOJ – consisting almost entirely of each document's issue date, its author and intended recipient, and the briefest references to its subject matter – will not do."  823 F.2d 574, 584-85 (D.C. Cir. 1987), *citing* Coastal States Gas Corp. 617 F.2d at 861.

Here, the Federal Defendants have similarly failed to meet their burden of proof.  Indeed, if there is any difference in the inadequate privilege logs rejected in the cases discussed above and the list that the Federal Defendants produced for this case, it is that the current list is even less illuminating.  Under these circumstances, the Court should reject the agencies' inadequate list and order the agency to produce the documents on the grounds that the agencies have failed to properly assert any privilege at all for these documents.

**B.     The Privileges Were Not Properly Invoked by the Proper Officials**

As an initial matter, the asserted privileges were not properly invoked and thus cannot be used to withhold documents from the record. *See* April 11 & 12 Notice of Filing.  In their filing of the Authenticated Index to the parties in February, 2011, the Federal Defendants submitted the Declaration of BLM Division Chief of Solid Minerals Mitchell Laverette, attached as Exhibit 6. However, there is no discussion in that Declaration of any asserted privilege.  Mr. Mitchell

merely states how he oversaw the collection of the documents and that the documents produced in the record were true and correct documents, with no mention of any asserted privilege.

As noted by the Supreme Court, "There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after personal consideration by that officer." U.S. v. Reynolds, 345 U.S. 1, 7-8 (1953).  "While Reynolds involved military secrets, subsequent decisions have uniformly applied the guidelines it expressed irrespective of the particular kind of executive claim advanced." Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 326-27, n. 33 (D.D.C. 1966).

> In addition, to sustain a claim of privilege, this circuit requires: (1) a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for which the privilege is claimed with an explanation why it properly falls within the scope of the privilege. *In re Sealed Cases*, 856 F.2d at 271.

Tuite v. Henry, 98 F.3d 1411, 1417 (D.C. Cir. 1996).

"Further to protect against abuse of its executive privilege, the agency must follow established procedural formalities for invoking it.  Only the agency head may assert the privilege after that officer's personal consideration of the matter." Exxon Corp. v. Department of Energy, 91 F.R.D. 26, 43 (N.D. Texas 1981) *citing* Reynolds.  "The affirmations of staff attorneys, especially those participating in pending litigation are legally insufficient." Exxon at 43.  "This requirement has apparently been imposed in every case involving this [deliberative process] privilege, and in no case has assertion by the litigating attorney for the government been held adequate."  Resident Advisory Board v. Rizzo, 97 F.R.D. 749, 752 (E.D. Pa. 1983).  The court described the rational for requiring the agency head to invoke the privilege:

> [T]here is no indication in the record that these officials personally reviewed the evidentiary material in question and made a determination that the *public* interest, as

opposed to the government's interest in the litigation, would best be served by nondisclosure.

Id. at 752.  As discussed more fully below, in determining whether a privilege can be asserted, a court weighs the competing interests in government secrecy with the need of the public.  Even if a privilege applies, "[the court] must still consider the competing interests of the party seeking the document and the … agency before it can determine whether the privilege should be overridden." Schreiber, 11 F.3d at 222 (D.C. Cir. 1993).

The D.C. Circuit has followed the rule of Reynolds and Carl Zeiss Stiftung, and allowed a privilege to be invoked by the United States Attorney, rather than the agency head, only in very limited situations.  Association for Women in Science v. Califano, 566 F.2d 339, 347-48 (D.C. Cir. 1977) (exception to the rule requiring agency head to invoke privilege when the withheld documents "are all in a standard format, and little, if anything could be gained by having the Secretary … review each form before claiming the privilege.").

Thus, without complying with the necessary prerequisites for asserting the privileges, the government's privileges have been improperly invoked and thus cannot be used to exclude documents from the record.

## C.    Even if the Privileges Were Properly Invoked, the Asserted Privileges Are Not Justified

The Index to the record lists a number of privileges that the Federal Defendants assert as justification for their exclusion from the record.  The Federal Defendants have claimed two privileges: attorney work product, and attorney-client.  As noted above, due to the paucity of the government's filing, it is impossible to ascertain the content of these documents and whether any privilege properly applies to any of these documents.  However, even if the Federal Defendants eventually supply this Court and all parties with an adequate description of the documents and a

full analysis of the asserted privilege, it is likely that some, many, or all, of the withheld

documents are not protected by any privilege and should be released.

1.    The Attorney-Client Privilege

The government has asserted the attorney-client privilege for well over 200 documents,

alone and in conjunction with the attorney work product privilege.  As this District has stated:

> The privilege should be narrowly construed, however, because it "has the effect of
> withholding relevant information from the factfinder." *United States v. Zolin*, 491 U.S.
> 554, 562, 109 S.Ct. 2619, 2626 (1989) (quoting *Fisher v. United States*, 425 U.S. 391,
> 403, 96 S.Ct. 1569, 1577 (1976)).  For this reason, "evidentiary privileges in litigation are
> not favored." *See Herbert v. Lando*, 441 U.S. 153, 175, 99 S.Ct. 1635, 1648 (1979).
> Moreover, the party asserting the privilege has the burden of establishing its applicability.
> *In Re Sealed Cases*, 737 F.2d 94, 99 (D.C. Cir. 1984).

Montgomery v. Leftwich, Moore & Douglas, 161 F.R.D.224, 225 (D.D.C. 1995).

> [T]he party asserting the attorney-client privilege … must demonstrate 'the applicability
> of the privilege by way of affidavits or other competent evidence.' *Alexander v. F.B.I.*,
> 186 F.R.D. 102, 111 (D.D.C. 1998) (*citing Odone v. Croda Int'l PLC*, 950 F. Supp. 10,
> 12 (D.D.C. 1997)).  At a minimum, [the person asserting the privilege] must provide the
> court with evidence supporting each of the essential elements necessary to sustain a claim
> of privilege.

Alexander v. F.B.I., 192 F.R.D. 42, 45 (D.D.C. 2000).  "The burden is on the agency to

demonstrate that confidentiality was expected in the handling of these communications." Coastal

States, 617 F.2d at 863.

The Alexander court further noted the necessary elements of the privilege that must be

met by the government in this case:

> This court has previously stated the elements of the attorney-client privilege as follows:
> The privilege applies only if (1) the asserted holder of the privilege is sought to
> become a client; (2) the person to whom the communication was made (a) is a
> member of the bar of this court or his subordinate and (b) in connection with this
> communication is acting as a lawyer; (3) the communication relates to a fact of
> which the attorney was informed (a) by his client (b) without the presence of
> strangers (c) for the purposes of securing primarily either (i) an opinion on law or
> (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the

purposes of committing a crime or tort; and (4) the privilege has not been (a) claimed and (b) not waived by the client.
*Alexander*, 186 F.R.D. at 106 (quoting *In re Sealed Cases*, 737 F.2d 94, 98-99 (D.C. Cir. 1984)).

Alexander, 192 F.R.D. at 45, n. 2. *See also* Montgomery v. Leftwich, 161 F.R.D. at 225-26.

Here, the Federal Defendants have failed to "demonstrate 'the applicability of the privilege by way of affidavits or other competent evidence.'" and failed to "provide the court with evidence supporting each of the essential elements necessary to sustain a claim of privilege." Alexander, 192 F.R.D. at 45.

Similar to the other privileges claimed in this case, it is impossible to ascertain whether any of the withheld documents are properly protected by this privilege.  It appears that the Federal Defendants believe that the fact that a document may have been in the possession of a government attorney (which is about all Plaintiffs can ascertain about some of the withheld documents) means that it can be withheld.  That is not the law, as detailed above, and without the proper evidentiary support, the government's claims of privilege must fail.

2.      The Attorney Work Product Privilege

The Federal Defendants have also withheld numerous documents based on an assertion of the attorney work product privilege.  As the D.C. Circuit has stated:

> This doctrine stands in contrast to the attorney-client privilege; rather than protecting confidential communications from the client, it provides a working attorney with a "zone of privacy" within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories.  There is one significant limitation of the doctrine, however, which defeats the agency's claim of privilege here; it has uniformly been held to be limited to documents prepared in contemplation of litigation. *See, Jordan v. U.S. Dep't of Justice*, 192 U.S. App.D.C. 144, 591 F.2d 753 (1978) (*en banc*).

Coastal States, 617 F.2d at 864.

The burden of showing that the materials were prepared in anticipation of litigation is on the party asserting the privilege.  This burden entails a showing that the documents were

prepared for the purposes of assisting an attorney in preparing for litigation, and not for some other reason. *See Athridge v. Aetna Casualty and Surety Co.*, 184 F.R.D. 200, 205 (D.D.C. 1998) (holding that to qualify for the work-product privilege, documents must be prepared to 'assist an attorney in preparing for trial or for use at that trial.').

Alexander, 192 F.R.D. at 46 (other citations omitted).  An agency is not "entitled to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur." Coastal States, 617 F.2d at 865. *See also* Senate of Puerto Rico, 823 F.2d at 587.

Again, like the asserted attorney-client privilege, the government has not met its burden of proving that any of the withheld documents are protected by this privilege.  A cursory review of the list of the withheld documents reveals that the Federal Defendants assert this privilege for a number of documents that were written in 1999, four years before the 2003 Millsite Rule was issued (and ten years before this litigation commenced).  It is highly unlikely that the attorney work product privilege applies to documents prepared so many years before litigation commenced.  For the 2008 Rule, the government claims this privilege for some documents produced in 2005 – over three years before the Rule was promulgated.

Overall, it is impossible to determine whether these privileges, even if properly invoked and described (which they have not), legitimately apply to the 300+ documents withheld by the Federal Defendants.

**D.    Even If the Privileges Are Valid in All Respects, the Need for Accurate and Complete Judicial Review Outweighs the Government's Interests in Non-Disclosure**

Even if the privileges apply to all 300+ withheld documents, this Court should balance the needs of the parties as well as the public in seeing documents related to such important rulemakings versus the needs of the government.  Even if a privilege applies, "[the court] must still consider the competing interests of the party seeking the document and the … agency before

it can determine whether the privilege should be overridden." <u>Schreiber</u>, 11 F.3d at 222 (D.C. Cir. 1993). *See also* <u>Tuite v. Henry</u>, 98 F.3d 1411, 1417 (D.C. Cir. 1996) (discussing factors to be "weighed" when determining whether disclosure would be in the public interest.); <u>In re Sealed Case</u>, 856 F.2d 268, 272 (D.C. Cir. 1988)(discussing need to "balance" competing interests of disclosure vs. non-disclosure).

Here, the government has withheld numerous documents that appear to go the heart of this case – the proper interpretation of federal mining and public land laws.  The withholding of so many documents is especially problematic given the agency's shift in position after the new Presidential administration took office in 2001.  In this case, it is imperative that this Court and the parties understand the agencies' rationale for such a marked shift in legal interpretation of these laws.

A lax interpretation of the government's burden in asserting these privileges in the APA administrative record review context runs directly counter to the principle that the Court must review "the whole record" that was before the agency, and would in effect allow an agency unilaterally to immunize selected portions of its decisions from public or judicial scrutiny by preventing Plaintiffs and this Court from knowing the full basis for the agency's action.

As the D. C. Court of Appeals has stated:

[A]pplication of the arbitrary and capricious standard of review does require us to make a "searching and careful" inquiry of the record in this case to ensure "both that the [agency] had adequately considered all relevant factors … and that it has demonstrated a "rational connection between the facts found and the choice made." (citations omitted).  This we cannot do where, as here, the data relied on by the [agency] in reaching its decision is not included in the administrative record and is not disclosed to the court.  The reason is obvious, and has long been recognized: we simply cannot determine whether the final agency decision reflects the rational outcome of the agency's consideration of relevant factors when we have no idea what factors or data were in fact considered by the agency. (citations omitted).  We cannot, in other words, determine whether the agency action is arbitrary and capricious.

U.S. Lines v. Federal Maritime Commission, 584 F.2d 519, 533 (D.C. Cir. 1978).

By shielding so many agency documents from judicial and public review in this case, the government undermines this goal by protecting not good quality decision-making but rather what Plaintiffs have alleged was **bad** decision-making: an arbitrary and capricious decision based on shifting and improper interpretations of federal statutes.  Secrecy serves to protect and nurture arbitrary and capricious decision-making based on improper factors.  Cf. Texaco Puerto Rico v. Department of Consumer Affairs, 60 F.3d 867, 885 (1st Cir. 1995) ("[w]here the documents sought may shed light on alleged government malfeasance, the privilege is routinely denied") (internal quotation marks omitted).

"We would not uphold the claim of privilege if failure to disclose . . . would substantially impair the rights of [the parties challenging the agency action]." Izaak Walton League of America v. Marsh, 655 F.2d 346, 370 (D.C. Cir. 1981).   For the attorney work product privilege, the party challenging the privilege may overcome the privilege by demonstrating that the party: (1) has substantial need of the materials in preparation of the party's case; and (2) that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  Upjohn Co. v. U.S., 449 U.S. 383, 400 (1981) (citing Fed. R. Civ. P. 26).

Similarly, the attorney-client privilege must yield if appropriate in light of the circumstances of a case.  As the Supreme Court has observed, because "the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403 (1976).  *See also* Evans v. Atwood, 177 F.R.D. 1, 4 (D.D.C. 1997) (rejecting an "absolute" application of the privilege to every attorney-client communication because to do so "one would have to say that preventing the

disclosure . . . is so essential . . . that even the fundamental purpose of the trial – to ascertain the truth – must yield to it.").

Because this is a record review case, Plaintiffs are limited in their ability to obtain the information contained in the withheld documents it seeks by other means (*e.g.*, deposing the agency officials who authored the documents) and the material is admittedly relevant because it is a part of the agency record.  To deny access to these documents under these circumstances could significantly impair Plaintiffs' ability to prosecute their claims, as those claims depend, in large part, on the legality of the agencies' shifting interpretation of federal law.

In this case, this Court's, as well as the Plaintiffs', need to review "the whole record" is at stake.  This is not possible if the government suppresses selected documents on which the agency admittedly based its decision.  Accepting government counsel's assertion that the privileges are valid, without the necessary requirements and evidentiary showings, overrides the public interest in disclosure and significantly undermines the process of judicial review of agency action.  Thus, in this instance, disclosure of the documents is appropriate, notwithstanding the asserted privileges.

**E.**   ***In-Camera* Review of the Withheld "Privileged" Documents May Be Justified**

Based on the numerous errors and inadequacies of the asserted privileges, this Court should simply order the Federal Defendants to produce the withheld documents as part of the record in this case for all of the reasons discussed above.  However, this Court may order the government to submit the withheld documents to this Court for *in camera* review and an individualized determination of whether the documents have been properly withheld.  After the government submits the required justifications, and the parties have had an opportunity to

respond to that filing, this Court may have to review the documents *in camera* to properly ascertain whether non-disclosure is appropriate.[3]

Although use of *in camera* review is an accepted practice where plaintiffs challenge a government decision to withhold documents pursuant to the privileges, <u>EPA v. Mink</u>, 410 U.S. 73, 93 (1973), "this course of action should be taken 'only where it is unavoidable.' <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 789 F.2d 64, 67 (D.C. Cir. 1986)." <u>Senate of Puerto Rico</u>, 823 F.2d at 589.

The withheld documents should be produced because the claimed privileges have not been justified, likely do not apply, or if they do apply, the need for public and judicial review outweighs the need for non-disclosure. *See* <u>Alexander v. FBI</u>, 192 F.R.D. 42, 45 (D.D.C. 2000) (conducting *in camera* review of allegedly attorney-client privileged documents where "the descriptions of the documents are so brief and of such a general nature that they fail to give the court any basis for determining whether the privilege was properly invoked").

While this Court and the Plaintiffs should not be forced to do the agencies' work to determine whether documents properly are subject to a claim of privilege – and hence this Court would be justified in simply ordering all of the documents to be released – under the circumstances of this case, *in camera* review of the withheld documents may be necessary to complete the record.

---

[3] One result of this process may be that the agency would release the documents, while redacting those portions of documents still under a legitimately-asserted claim of privilege. *See* <u>Schreiber</u>, 11 F.3d at 220. Even if portions of withheld documents properly fall under a privilege, the analogous procedure under the Freedom of Information Act ("FOIA") requires the agency to provide "any reasonably segregable portion of a record . . . after deletion of the portions that are exempt." 5 U.S.C. § 552(b). In this case, the defendants have failed to provide any information concerning whether there are any segregable portions of the documents which they continue to withhold. *See* <u>Trans-Pacific Policing Agreement v. U.S. Customs</u>, 177 F.3d 1022, 1027-1028 (D.C. Cir. 1999).

## **CONCLUSION**

Regarding the missing documents, Plaintiffs respectfully ask this Court to order the inclusion of these documents into the record, and to have the Federal Defendants conduct a more thorough investigation of their files to ensure that other documents have not been excluded based on the Federal Defendants' truncated, and erroneous, view of what constitutes "the whole record" in this case.

Regarding the documents withheld under claimed privileges, because none of the Federal Defendants' privilege assertions can withstand scrutiny, Plaintiffs respectfully request that this Court order the Federal Defendants to produce those documents currently withheld from review so they can be added to the record and provided to the parties and this Court.  In the alternative, the Court should order the Federal Defendants to properly justify, through affidavits or other means, the reasons why the government believes it has met its burden in withholding the documents.  After such justification is submitted, with a reasonable opportunity for Plaintiffs to respond, this Court could review these documents *in camera* and determine whether the agency should, in whole or in part, disclose the documents and include them in the record.

Respectfully submitted this 18th day of April, 2011.


*/s/ Edward S. Scheideman*

_____
Edward S. Scheideman, DC Bar # 475128
DLA PIPER US, LLP
500 8th Street, NW
Washington, DC 20004
(202) 799-4534
Fax: (202) 799-5534
edward.scheideman@dlapiper.com

*/s/ Roger Flynn*
_____
Roger Flynn, *Pro Hac Vice*
Jeffrey C. Parsons, *Pro Hac Vice*
WESTERN MINING ACTION PROJECT
P.O. Box 349
440 Main St., #2
Lyons, CO 80540
(303) 823-5738
Fax (303) 823-5732
wmap@igc.org

Attorneys for Earthworks, High Country Citizens' Alliance, Great Basin Resource Watch, Save the Scenic Santa Ritas, and Western Shoshone Defense Project

## Certificate of Service

I hereby certify that on this 18th day of April, 2011, I caused the foregoing (and all attachments thereto) to be transmitted to the Clerk's Office of the U.S. District Court for the District of Columbia via email to the address of dcd_cmecf@dcd.uscourts.gov, which will serve counsel for all parties.

/s/ *Roger Flynn*
_____
Roger Flynn

# EXHIBIT LIST

for
Plaintiffs' Motion to Compel Production of Documents
Improperly Withheld From the Administrative Record
in
Earthworks, et al. v. U.S. Department of the Interior, et al.
No. 1:09-cv-01972-HHK

1.     Memorandum from J. Steven Griles, Deputy Secretary, Interior Department, to Nina Hatfield, Acting Director, U.S. Bureau of Land Management, dated 9-28-2001.

2.     Crown Jewel Mine decision (letter from various Department of Agriculture and Interior officials to Greg Etter, Vice President of Battle Mountain Gold Co.), dated 3-25-1999.

3.     Memorandum entitled "Use of Mining Claims for Purposes Ancillary to Mineral Extraction" ("Ancillary Use Memorandum"), signed by Interior Secretary Bruce Babbitt and Interior Solicitor John Leshy on 1-18-2001.

4.     Memorandum from Mark Rey, Undersecretary, U.S. Department of Agriculture, to Dale Bosworth, Chief, U.S. Forest Service, dated 9-22-2003.

5.     Letter from USFS Regional Forester Rick D. Cables to Colorado U.S. Rep. John T. Salazar dated 7-3-2008 (relying on Rey Memorandum).

6.     Declaration of Mitchell Leverette, U.S. Bureau of Land Management, signed 2-7-2011 (submitted with the Federal Defendants' initial filing of the record).