**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| EARTHWORKS; | ) | |
| HIGH COUNTRY CITIZENS' ALLIANCE; | ) | |
| GREAT BASIN RESOURCE WATCH; | ) | |
| SAVE THE SCENIC SANTA RITAS; and | ) | |
| WESTERN SHOSHONE DEFENSE PROJECT. | ) | No. 1:09-cv-01972-HHK-JMF |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| U.S. DEPARTMENT OF THE INTERIOR; | ) | |
| KENNETH SALAZAR, Secretary of the Interior; | ) | |
| U.S. DEPARTMENT OF AGRICULTURE; | ) | |
| THOMAS VILSACK, Secretary of Agriculture; | ) | |
| U.S. BUREAU OF LAND MANAGEMENT; and | ) | |
| U.S. FOREST SERVICE. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' *REPLY* TO THE FEDERAL DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS
IMPROPERLY WITHHELD FROM THE ADMINISTRATIVE RECORD**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

SUMMARY OF THE CASE AND THE DISPUTED DOCUMENTS ...................................5

I.   THE EXCLUDED DOCUMENTS ARE PART OF THE COMPLETE RECORD ...................11

A.   The Ancillary Use Memorandum and Related Documents Are
     Part of the Record.................................................................................11

B.   The Crown Jewel Mine Decision and Related Documents Are
     Part of the Record.................................................................................15

C.   The Agriculture and Forest Service Documents Are
     Part of the Record.................................................................................18

D.   The Excluded Documents Should Be Considered as
     Supplements to the Record ..................................................................19

II.  THE ASSERTED PRIVILEGES DO NOT APPLY TO ALL OF THE
     WITHHELD DOCUMENTS.........................................................................20

A.   The Government Failed to Respond at All to Plaintiffs' Motion Regarding
     the Attorney-Work-Product Privilege ..................................................20

B.   The Government Failed to Adequately Justify the
     Attorney-Client Privilege .....................................................................21

CONCLUSION .................................................................................................25

EXHIBIT LIST.................................................................................................27

**INTRODUCTION**

Plaintiffs Earthworks, High Country Citizens' Alliance, Great Basin Resource Watch, Save the Scenic Santa Ritas, and Western Shoshone Defense Project, submit this Reply to the Federal Defendants' Response (Docket # 72) to Plaintiffs' Motion to Compel Production of Documents Improperly Withheld from the Administrative Record (Docket # 65) in this case. The government's brief also responded in opposition to a similar motion (with some overlapping documents) submitted by the Northwest Mining Association and Alaska Miners Association ("Miners' Record Motion", Docket # 64).

The Federal Defendants' primary argument against including documents in the administrative record is that, in issuing the challenged mining regulations, because Bush Administration agency officials reversed the legal and policy decisions of the Clinton Administration, these highly-relevant Clinton-era documents were somehow not "before" the Bush agency officials. According to the government, whenever previous agency decisions are reversed or superseded by later officials, and those reversals are challenged in federal court, only the documents supporting the new decisions are part of the administrative record. However, the fact that these documents contradict the challenged regulations and the legal and policy directives that the agencies relied on in promulgating the regulations, does not make them "irrelevant" or "inadmissible" as asserted by the Federal Defendants.

The Federal Defendants' position contradicts well-established precedent in this Circuit, this District, and federal courts across the country. The government's response ignores the controlling caselaw which holds that a defendant agency may not unilaterally exclude documents from the record simply because they contradict or weaken the agency's defense of its actions. The fact that the previous legal and policy decisions were reversed does not mean that they are not part of the record. If that were the case, government agencies could preclude effective judicial review of new decisions by simply excluding documents that contradict their case.

The Federal Defendants similarly argue that, under their theory of the merits of this case, the Clinton-era documents are not relevant. This case focuses in large part on the federal

government's shifting statutory interpretations of the 1872 Mining Law and its application to western public lands.  According to the government's response, the withheld documents are "inadmissible" because they focus on issues that the Federal Defendants say were not considered by the agencies when they issued the challenged regulations.  One of these critical documents is the "Ancillary Use Memorandum," issued by President Clinton's Interior Secretary, Bruce Babbitt, in January of 2001 (Exhibit 3 to Plaintiffs' Motion).

However, as noted by the Plaintiffs' Motion, this and related documents are precisely at issue in this case and go directly to the legality of the Bush Administration's reversal of then-controlling Interior Department legal policy regarding the 1872 Mining Law.  Indeed, the Ancillary Use Memorandum was specifically relied upon by this court in its ruling in Mineral Policy Center v. Norton, 292 F.Supp.2d 30 (D.D.C. 2003).  This court's remand of the Interior Department's failure to require the payment of "fair market value" ("FMV") for mining operations proposed on lands not covered by "valid and perfected" mining claims was a key part of that decision and is central to the current case.

The government argues, however, that because the challenged 2008 Mining Claim Rule does not require the payment of FMV for these operations and allows the agencies to avoid considering the validity of mining and millsite claims altogether (requiring FMV payment for operations proposed only on lands "invalidly claimed" or not claimed at all), then any discussion of "valid and perfected" claims is irrelevant.  Thus, according to the agencies, because the Rule took an extremely narrow view of the law and this Court's decision, the agencies are then free to exclude from judicial review documents that do not fit their view of the merits.

While that may be the government's defense on the merits, it is not a legitimate excuse for withholding documents that contradict its legal arguments.  Plaintiffs, of course, challenge the agencies' truncated and limited view of this Court's decision in Mineral Policy Center, and the Mining Law itself.  The fact that the Federal Defendants disagree with the Plaintiffs' view of the law and the Mineral Policy Center decision does not mean that documents considered by this

Court in that case, and other related agency documents interpreting the provisions of the Mining Law at issue in this case, are not relevant to this Court's resolution of these issues.

The Federal Defendants offer the same defense for unilaterally excluding a number of other relevant agency documents, such as the 1999 Crown Jewel Mine Decision, as well as **any** document relied upon the agencies in preparing the Ancillary Use Memorandum or the Crown Jewel Mine Decision.  The government also applies the same defense to documents related to the Defendant Department of Agriculture/U.S. Forest Service's legal positions on these issues. Indeed, the agency admits that it purposely excluded all documents from these agencies because, under their view of the case, actions of these agencies are irrelevant to this case.

However, this motion is not the proper forum for deciding the merits of this case.  Yet, according to the government, the agencies' own documents are irrelevant because they do not fit their theory of the merits.  Such a position would set a dangerous precedent for federal court review of government decisions.  Under this view, the government could exclude documents from the record simply because they do not fit its version of the facts and the law – regardless of the fact that the governments' shifting legal interpretations reflected in these excluded documents are the very focus of the case.  Notably, neither the government nor any of the mining industry intervenors filed a motion to dismiss Plaintiffs' claims – agreeing that all issues are to be decided upon summary judgment based on a complete administrative record.  Thus, all of Plaintiffs' claims and requests for relief are properly before this Court at this stage of the case.

Of course, the government and industry will attempt to refute Plaintiffs' views of the law and facts of this case upon briefing on the merits – as they have a right to.  Yet, the government cannot attempt to improperly skew the case in its favor by manipulating the record and precluding this Court from reviewing highly relevant agency documents that relate to the very issues that will be resolved by this Court in its eventual merits decision.

Even if these documents are not considered part of the agency-supplied record, they fit within the long-accepted rule that courts may consider documents outside of the agency-produced record to enable effective judicial review.  This includes documents showing that the

agency failed to consider relevant factors, when the agency action is not adequately explained in the record, or when the issues are of such complexity that additional evidence will enhance judicial review.

Regarding the documents excluded by the government under claims of attorney-client and attorney-work-product privileges, the Federal Defendants offer no new information or justification. They still claim the attorney-client privilege, for example, for documents produced by non-attorneys with no listing of any attorney in the chain of custody. For other documents, they failed to include critical information required by this Circuit and District such as the authors or recipients of the document or its date. For still others, no person is listed at all – for either the author or recipient.

According to the government, as long as a document arguably involved a legal issue, it must be subject to the attorney-client privilege, despite the continuing failure of the Federal Defendants to meet even the basic requirements for a successful invocation of the privilege. Although the government admits it has the burden to satisfy compliance with all of the requirements for invoking the privilege, document after document lack these critical elements.

Regarding the asserted attorney-work-product privilege, the government offers no defense at all. Instead, the Federal Defendants' response discusses the "deliberative process privilege" at length. However, except for one excluded document labeled "awp-deliberative," none of the documents withheld by the government assert the deliberative process privilege. Based on the government's failure to respond at all to Plaintiffs' motion on these documents, these documents should be released. For the documents that list both privileges, absent the government meeting its burden regarding the attorney-client privilege, the documents should also be similarly released.

Overall, this Court should reject the government's attempt to shield its actions from judicial review under the guise of limiting the administrative record. There is no dispute that the agency documents contained in the Plaintiffs' motion were in the agency files, are related to the legal issues raised in this lawsuit, and were directly or indirectly part of the agency

decisionmaking.  As such, this Court should grant Plaintiffs' motion, and order the government to include the relevant documents in the record.  Alternatively, this Court should supplement the record with these excluded documents.

## SUMMARY OF THE CASE AND THE DISPUTED DOCUMENTS

Plaintiffs' Motion involves three sets of documents.  The first set consists of documents prepared by the Defendant Interior Department during the Clinton Administration regarding the agency's interpretation of two crucial aspects of the 1872 Mining Law that are directly at issue in this case: (1) the "millsite provision," 30 U.S.C. § 42, involving how much public land a mining company can legally claim as a statutory right for non-extractive uses such as waste dumping, cyanide and sulfuric acid leaching, and other processing operations.  The correct legal interpretation of the millsite provision is at the heart of Plaintiffs' Second Cause of Action, Complaint at p. 45, challenging the 2003 Millsite Rule (68 Fed. Reg. 61046-61081 (Oct. 24, 2003); and (2) the scope of federal authority over mining operations conducted on lands not covered by valid and perfected mining or millsite claims, including the requirement that the federal government charge and receive FMV for a mining company's use of such lands.  This issue was the focus of a major part of this Court's decision in Mineral Policy Center, 292 F.Supp. 2d, at 46-51, and this Court's subsequent remand order in that case.  Whether the challenged regulation known as the "2008 Mining Claim Rule" (73 Fed. Reg. 73789-73794 (Dec. 4, 2008)) complies with the Mining Law and the Mineral Policy Center decision is at the heart of Plaintiffs' First Cause of Action, Complaint at p. 44-45.

The 2003 Millsite Rule and 2008 Mining Claim Rule reversed the legal and policy decisions and actions taken by the Interior Department under Secretary Bruce Babbitt.  Plaintiffs' Motion concerns the Federal Defendants' improper exclusion of documents related to these decisions and actions.

Plaintiffs' Exhibit 1 (September 28, 2001 memorandum from Deputy Interior Secretary J. Steven Griles) is a directive to the Bureau of Land Management ("BLM") that limits the BLM's

application of the 1997 ruling by Secretary Babbitt interpreting the millsite provision of the Mining Law and further directs the Solicitor of the Interior Department to review the Babbitt millsite ruling.  Upon receiving that order, the Solicitor's Office began reviewing the 1997 Babbitt millsite ruling, and the Deputy Solicitor's subsequent opinion on October 7, 2003 which reversed the 1997 Babbitt ruling, formed the basis for the challenged 2003 Millsite Rule. *See*, 68 Fed. Reg. at 61054 (discussing the differing 1997 and 2003 millsite rulings).

Plaintiffs' Exhibit 2 (the March 25, 1999 "Crown Jewel Mine Decision") applied Secretary Babbitt's millsite ruling to a particular mine proposal.  That legal interpretation, and the authority to apply it to a particular mine proposal, was reversed by the Bush Administration in the challenged 2003 Millsite Rule.  The Crown Jewel Mine Decision was specifically referenced in the preamble to the 2003 Millsite Rule. 68 Fed. Reg. at 61055.  Notably, the 1999 Crown Jewel Mine Decision was issued well after, and relied upon, the 1997 Babbitt millsite ruling, which the Federal Defendants have included in the record.

Plaintiffs' Exhibit 3 (Secretary Babbitt's January 18, 2001 "Ancillary Use Memorandum") analyzed and confirmed the agency's legal interpretation of federal authority over lands not covered by valid and perfected mining and millsite claims (i.e., lands not governed by the rights of claimants in the Mining Law).  That Memorandum was relied upon by this Court in Mineral Policy Center to hold that, "while a claimant can explore for valuable minerals before perfecting a valid mining claim, without such a claim, she [mining claimant] has no property rights against the United States." 292 F.Supp.2d at 47-48.[1]

---

[1] "The Mining Law provides, … that a mining claim cannot be perfected 'until the discovery of the vein or lode.' 30 U.S.C. § 23, *see also Cole v. Ralph*, 252 U.S. 286, 295-96 (1920)." Mineral Policy Center, 292 F.Supp.2d at 46, n. 19.  In defining what a "valid" mining claim is, this Court noted that "Before one may obtain rights in a mining claim, one must locate a valuable deposit of a mineral." Id. *See also* Fed. Resp. at 8 ("the claimant must make a 'discovery' of a valuable mineral deposit on 'lands open to location' to assert a property interest against the government.").   "[L]ocation [of the claim] is the act or series of acts whereby the boundaries of the claim are marked, etc., but it confers no right in the absence of discovery, both being essential to a valid claim." Cole v. Ralph, 252 U.S. at 296.

"[P]ersons who conduct operations on lands without valid claims or mill sites do not have the same rights associated with valid claims or sites." Id. at 47, n. 21.  This ruling was "the backdrop," Id. at 48, for this Court's holding that because the claimant had "no property rights against the United States," the government must require the payment of "fair market value" for operations proposed on such lands. Id. at 49-51.

Plaintiffs' Motion additionally addressed the failure of the Federal Defendants to produce Interior Department documents related to or relied upon by the agency in making the decisions contained in the three Exhibits.  Because the Federal Defendants have refused to produce any documents related to these three critical decisions, Plaintiffs do not know the extent of the excluded documents.

The second set of documents requested in Plaintiffs' motion are those prepared by the Defendant Department of Agriculture or its U.S. Forest Service ("USFS").  Exhibit 4 is the 2003 national policy Directive from Undersecretary Mary Rey to the USFS disavowing the legal and policy directives contained in the 1999 Crown Jewel Decision (and the underlying 1997 Babbitt millsite rule) as well as the 2001 Ancillary Use Memorandum.  Exhibit 5 is a 2008 letter from the USFS Regional Forester in Colorado relying on the 2003 Rey Directive to preclude the USFS from inquiring into the validity of a mining or millsite claim when reviewing a proposed mining operation.  This position contradicted the Ancillary Use Memorandum, which had held that verification of claim validity (and the associated requirement for payment of  FMV as held in Mineral Policy Center) was a critical aspect of federal authority over mining on public lands.

In addition, and similar to documents related to Exhibits 1-3 noted above, Plaintiffs' Motion also addresses the failure of the Federal Defendants to produce Agriculture Department and USFS documents related to or relied upon by the agency in making the decisions contained in these two  Exhibits.  Needless to say, because the Federal Defendants have refused to produce any documents related to these decisions, Plaintiffs do not know the extent of the excluded documents.

The third set of excluded documents at issue are those for which the government has included in the record but has refused to release to the parties or this Court based on assertions of the attorney-client and attorney-work-product privilege.  Thus, there is no dispute over their inclusion in the record, just a dispute over whether the government has met its burden in asserting the privileges.

Regarding the merits of the case, although this Motion is not the forum for resolution of the upcoming dispositive motions, a brief discussion of the legal issues raised in the lawsuit is necessary.  This is because of the Federal Defendants' argument in its response that, especially regarding the Ancillary Use Memorandum and the 2008 Mining Claim Rule, the agencies' interpretation of the Mining Law and the <u>Mineral Policy Center</u> decision precludes any consideration of the Clinton-era documents.  Of course, Plaintiffs' interpretations are very different from the Federal Defendants.  But that does not mean that these documents are "inadmissible" and "irrelevant" to this Court review of the merits.[2]

Regarding the 2008 Mining Claim Rule, it was promulgated in response to Judge Kennedy's decision in <u>Mineral Policy Center</u> and focused on the proper level of federal authority over mining operations on lands not governed by the 1872 Mining Law.  That decision, in relevant part, established the proper scope of DOI/BLM's authority, pursuant to the Federal Land Policy and Management Act ("FLPMA") and the Mining Law, over mining operations proposed on lands not covered by "valid and perfected claims." *See* 292 F.Supp.2d at 46-48.  The decision partially remanded DOI/BLM's mining regulations challenged in that case (36 CFR Subpart 3809), and directed DOI/BLM to issue regulations requiring mining operations on federal land to pay FMV for the use of lands not covered by valid and perfected claims. <u>Id</u>. at 49-51.

---

[2] Plaintiffs' complaint also challenges the government's failure to comply with the environmental review requirements of the National Environmental Policy Act ("NEPA") and the public notice and comment mandates of the Administrative Procedures Act ("APA").  Although these claims are related, this Motion focuses on the exclusion of documents related to the Federal Defendants' interpretation (and violation of) the Mining Law.

Operations neither conducted pursuant to valid mining claims nor otherwise explicitly
protected by FLPMA or the Mining Law (*i.e.*, exploration activities, ingress and egress,
and limited utilization of mill sites) must be evaluated in light of Congress's expressed
policy goal for the United States to "receive fair market value of the use of the public
lands and their resources." 43 U.S.C. § 1701(a)(9).   Because, in promulgating 65 Fed.
Reg. 70,013, Interior was not cognizant of its statutory obligation to attempt to "receive
fair market value of the use of public lands and their resources," and did not balance its
competing priorities with that obligation in mind, the court finds that the regulations must
be remanded to Interior, so that Congress's policy goal, as set forth in § 1701(a)(9), may
be given proper effect.   Judgment shall therefore be entered for plaintiffs on this claim.

292 F.Supp.2d at 51.

Despite this clear direction from the Court, however, the 2008 Mining Claim Rule states

that DOI/BLM will **not** require the payment of FMV, essentially relying on its previous legal

interpretations of FLPMA and the Mining Law rejected in Mineral Policy Center.  The 2008

Rule perpetuates DOI/BLM's position  that FLPMA and the Mining Law preclude the agencies

from applying the "wide discretion in deciding whether to approve or disapprove of a miner's

proposed plan of operations" on lands not covered by valid claims, Mineral Policy Center, 292

F.Supp.2d at 48, and preclude the agencies from requiring the payment of FMV.  *See* 73 Fed.

Reg. at 73791-92.  Thus, under the 2008 Rule, DOI/BLM will not inquire into whether a specific

claim or group of claims proposed for mining operations are valid, will not apply its FLPMA-

mandated discretion over operations proposed on lands not covered by valid claims, and will not

require the payment of FMV.  In practice and in formal agency manuals and policies, the

DOA/USFS have adopted these DOI/BLM positions.

The Federal Defendants and mining industry intervenors dispute Plaintiffs' version of the

Mining Law and the Mineral Policy Center decision.  According to the 2008 Mining Claim Rule,

and as now reiterated by the government's response brief, the issue of the validity of

mining/millsite claims is irrelevant to determining whether to require the payment of FMV.

Thus, the only instance where FMV is required is when a mining company is proposing

operations on lands without any claims at all, or when a claim was improperly filed (i.e.,

"invalidly claimed").  *See* Fed. Response at 8-9, 12-14.   Thus, the challenged Rule abdicates any

FMV requirement except for the situation where a mining company would propose mining on

unclaimed lands – a nonsensical situation since that would expose the company to rival claimants and preclude the operator from taking advantage of the Mining Law's generous provisions for royalty-free extraction among other benefits. Thus, according to the Federal Defendants, because the Ancillary Use Memorandum and other excluded documents related to the Clinton Administration's interpretation of the Mining Law did not focus on the basis for the 2008 Rule (i.e, the situation of mining without mining claims), then these documents are "irrelevant."

However, this can only be true if the government's interpretation of Judge Kennedy's decision is correct and the 2008 Rule is legally valid. Yet those questions are precisely what will be decided by this Court on the merits. In other words, the government's exclusion of documents is based solely on its view of how the case should be resolved. Such a skewing of the record would effectively preclude judicial review, because this Court would never see the critical agency documents that take a different view of the law from that posited by the government.

Regarding the 2003 Millsite Rule, it reversed and overturned the previous DOI/BLM position on the strict limitations on the number and allowable acreages of millsite claims proposed to be utilized by mining operations. A millsite claimant has "the right to locate up to five acres of nonmineral land for mill site use in association with **each** valid mining claim. 30 U.S.C. § 42." Mineral Policy Center, 292 F.Supp. 2d at 47 (emphasis added). Under the Mining Law, a mining claim is roughly 20 acres in size, whereas a millsite claim is limited to 5 acres. *See* 30 U.S.C. §§ 23 and 35 (mining claims), § 42 (millsite claims).

Prior to the 2003 Millsite Rule, DOI/BLM interpreted § 42 of the Mining Law similarly to this interpretation. This interpretation was contained in the 1997 Babbitt millsite ruling (added by the government to the record as document AR:MIL012018) as well as the 1999 Crown Jewel Mine Decision. However, in the 2003 Rule, DOI/BLM reversed itself and stated that a claimant had a statutory right to locate/claim as many millsite claims and acres as it needed for a proposed mining operation, regardless of the number of associated mining claims to be utilized by that mining operation.

This policy reversal effectively eliminated the limitations on the allowable acreage and number of millsites under § 42. *See* 68 Fed. Reg. at 61054-61055.  Thus, by greatly expanding the number and acreage of millsite claims that can be claimed and developed at a mine site, the 2003 Millsite Rule creates statutory rights against the United States that did not exist under the 1997 Babbitt millsite rule and Crown Jewel Mine Decision, and severely limits the regulatory authority of the federal land agencies to protect the environment and non-mining resources of the public lands.  The mining industry intervenors naturally support the agencies' new interpretation contained in the 2003 Rule.

As noted above, and explained in more detail below, however, a defendant agency cannot exclude documents that contradict its version of the merits, nor exclude documents merely because they were generated prior to when the formal draft Rule was issued.  This novel and unprecedented attempt to undermine judicial review should be rejected.

## I.    THE EXCLUDED DOCUMENTS ARE PART OF THE COMPLETE RECORD

## A.    The Ancillary Use Memorandum and Related Documents Are Part of the Record

The Federal Defendants do not (and cannot) refute Plaintiffs' argument that the Ancillary Use Memorandum, and the other as-yet-unidentified documents in the agency's files utilized by Secretary Babbitt in promulgating that Memorandum, were prepared by the agency defendants and exist (and have existed) in the agencies' files.  Nor does the government contend that the Memorandum was issued or prepared after the 2003 or 2008 promulgation of the challenged regulations.  Rather, the government argues that, because the ultimate decisionmaker did not directly "consider" the Memorandum when the 2008 Rule was issued, the Memorandum was not "before" the agency and thus is not part of the record.

Yet this is based on the government's extremely limited (and Plaintiffs maintain illegal) interpretation of the Mining Law and the Mineral Policy Center decision as discussed above.  However, the government cannot exclude documents merely because they do not fit with their view of the law or contradict their eventual decision.  "The 'whole record' includes all materials

that 'might have influenced the agency's decision,' and not merely those on which the agency relied in its final decision. *Amfac Resorts v. U.S. Dep't of the Interior*, 143 F.Supp.2d 7, 12 (D.D.C. 2001)." <u>County of San Miguel v. Kempthorne</u>, 587 F.Supp.2d 64, 71 (D.D.C. 2008). The record must contain all documents that the agency "directly or indirectly considered." <u>Amfac Resorts</u>, at 12.  A complete administrative record contains all materials "pertaining to the [challenged] regulation." <u>Pers. Watercraft Indus. Ass'n v. Department of Commerce</u>, 48 F.3d 540, 546 n.4 (D.C. Cir. 1995).

The Federal Defendants' argue that "none of [Plaintiffs'] proffered documents even suggests that it was before the relevant federal officials" and that none of the documents were "before or considered by the relevant federal employees when they adopted the challenged mill site and 2008 rules." Fed. Resp. at 2-3.  The government bases this assertion on an extremely narrow view of what a "complete" record must contain or what was "before" the agency.

As noted above, and as detailed in Plaintiffs' Motion at pp. 7-9, an agency cannot exclude documents merely by stating that they did not directly "consider" the documents.  Regarding the government's truncated view of what was "before" it, "[i]t is axiomatic that **documents created by an agency itself or otherwise located in its files were before it**." <u>County of San Miguel</u>, 587 F.Supp.2d at 76 (emphasis added).

Allowing an agency to manipulate the record by excluding documents detrimental to its eventual decision by simply stating that they did not directly "consider" it would frustrate judicial review and eliminate the opposing party's right to present the "complete record" the court.  "The agency may not skew the record in its favor by excluding pertinent but unfavorable information. *Envtl. Def. Fund v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978).  **Nor may the agency exclude information on the grounds that it did not 'rely' on the excluded information in its final decision**." <u>Fund for Animals v. Williams</u>, 391 F.Supp.2d 191, 197 (D.D.C. 2005)(emphasis added).   "The requirement of review upon 'the whole record' means that courts may not look only to the case presented

by one party, since other evidence may weaken or even indisputably destroy that case."

Walter O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1987).

The government also argues that the Ancillary Use Memorandum "does not discuss any issue germane to the *Norton* court's limited remand." Fed. Resp. at 19. However, the government's assertion that there is "no evidence" that the Ancillary Use Memorandum "pertained to" the rulemaking, "might have influenced" the rulemaking, or was even "germane" to the issue, ignores the very record it submitted.  For example, as part of the record that it admits it relied upon when developing the 2008 Rule, the government submitted the documents related to the Bush Administration's reversal/rescission of the Ancillary Use Memorandum. *See* AR: FMV000267-274.

Most tellingly, a December 7, 2005 memorandum from Interior Secretary Gale Norton to the Acting Assistant Secretary for Land & Minerals Management and the Director of the BLM, entitled "Preparation of 'Fair Market Value' Regulations," specifically ordered agency officials, as part of the Mining Claim Rule rulemaking, to recognize the rescission of the Ancillary Use Memorandum, and to **"take these opinions into account as you consider possible regulatory revisions to address, among other matters, the "fair market value" issue remanded to the Department in the case of *Mineral Policy Center v. Norton*, 292 F.Supp. 2d 30 (D.D.C. 2003)."** (AR:FMV000267) (attached as Exhibit A herein)(emphasis added).

That December 7, 2005 Secretarial Memorandum referenced and attached two Interior Department Memorandums that specifically addressed the Ancillary Use Memorandum. *See*, November 14, 2005 Memorandum from the Interior Solicitor to Secretary Norton and the Director of the BLM entitled "Rescission of 2001 Ancillary Use Memorandum." (AR:FMV000268-69)(Exhibit B); November 14, 2005 Memorandum from the Solicitor to the Secretary and BLM Director entitled "Legal Requirements for Determining Mining Claim Validity Before Approving a Mining Plan of Operations." (AR:FMV000270-274)(Exhibit C).  Thus, it is illogical for the Federal Defendants to

argue that, having reviewed the Ancillary Use Memorandum and the legal rational for its reversal as part of the challenged rulemaking, to now argue that the Memorandum was never "before" the agency and is entirely "irrelevant" to the rulemaking.

Thus, there is no reasonable doubt that Secretary Babbitt's Ancillary Use Memorandum "pertains" to this case and had some "influence" on the rulemaking, even under the Federal Defendants' truncated view of the record.  Indeed, the legal issues involved in its reversal were so important that Secretary Norton ordered DOI/BLM officials to "take these opinions into account as you consider possible regulatory revisions to address, among other matters, the 'fair market value' issue remanded to the Department in the case of *Mineral Policy Center*" – the very focus of the rulemaking.  AR:FMV000267.

The fact that the Ancillary Use Memorandum had been superseded by the time the 2008 Rule was promulgated does not mean that the agency can shield its consideration by this Court.  If that were the case, any contrary agency document would never appear in the record for judicial review simply because it had been superseded – severely hamstringing a court's review on the merits.  Under longstanding administrative law, a court's ability to review the previous agency position is a critical part of its determination as to whether the agency's reversal is legally valid.

> "[A]n agency changing its course must supply a reasoned analysis." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 57 (1983) (quoting *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1971)); *see Ctr. for Sci. in Pub. Interest v. Dep't of Treasury*, 797 F.2d 995, 999 (D.C. Cir. 1986); *Louisiana Pub. Serv. Comm'n v. FERC*, 184 F.3d 892, 897 (D.C. Cir. 1999) ("For the agency to reverse its position in the face of a precedent it has not persuasively distinguished is quintessentially arbitrary and capricious."). An agency must therefore "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43 (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

Mineral Policy Center, 292 F.Supp.2d at 37-38.

Thus, in order to determine if the agency has "persuasively distinguished" its previous precedent, the court must necessarily have the previous interpretation (and agency documents supporting that previous position).  Otherwise, judicial review would be a one-sided street without consideration of all the relevant facts.  Accordingly, because the Ancillary Use Memorandum was specifically referenced as part of the rulemaking process for the 2008 Rule, as well as under the tenets of administrative law and judicial review, that Memorandum, and agency documents utilized by the agency in promulgating that Memorandum, are properly considered part of the "complete" record in this case.

**B.**      **The Crown Jewel Mine Decision and Related Documents Are Part of the Record**

The agencies' defense of their refusal to include the Clinton Administration's legal interpretation of the Mining Law's millsite provision is similar, with some slight variation.  The government argues that, for the March 25, 1999 Crown Jewel Mine Decision, because it was issued before the government promulgated the draft rule (on August 27, 1999, 68 Fed. Reg. 61047) which implemented the 1997 Babbitt millsite rule, this somehow means it was not "before" the agency when it issued the 1999 draft rule, or the later challenged final 2003 Millsite Rule. Fed. Resp. at 18-19.

As detailed above, this undermines this Court's ability to review the previous Administration's legal interpretation of a critical provision of the Mining Law at issue in this case.  Thus, on a basic level, the same justification for including the Ancillary Use Memorandum applies to the Crown Jewel Mine Decision.

Regarding the timing of the Crown Jewel Mine Decision, the government's argument contradicts its own actions.  Although the government did not produce the 1997 Babbitt millsite ruling when it originally submitted the record in February of 2011, Plaintiffs' requested that the 1997 ruling be included and the government added the document in its final submittal in April of 2011. *See* "Limitations on Patenting Millsites Under the Mining Law of 1872" ("1997 Millsite Memorandum"). AR: MIL012018.

Now, however, the Federal Defendants argue that because the Crown Jewel Mine Decision was issued before the beginning of the formal rulemaking process for the Millsite Rule (in August of 1999), this means that the Decision was somehow not "before" the agency. Fed. Resp. at 18.  Under the government's logic, however, this means that the 1997 Millsite Memorandum (the reversal of which formed the basis for the challenged 2003 Millsite Rule), was also not "before" the agency since it was issued before August, 1999.

This makes no sense and ignores the basic procedure for federal rulemaking. When the government issued its proposed Millsite Rule as part of its draft rule in August of 1999, it certainly was not done in a vacuum nor done without consideration of the then-controlling agency legal and policy interpretations and documents.  In essence, the government argues that it never considered any document prior to the day it issued its draft rule.  That also makes no sense, or in the alternative, admits of a seriously flawed rulemaking process.

Importantly, the Crown Jewel Decision was specifically referenced in the challenged Final Rule as indicative of the Clinton Administration's interpretation of the millsite provision of the Mining Law. 68 Fed. Reg. at 61055.  In addition, the October 7, 2003 opinion of the Deputy Solicitor, which reversed the 1997 Millsite Memorandum, specifically "supersedes the Crown Jewel decision letter." AR: MIL012034 at 39, n. 29 (MIL012072).  The October 7, 2003 opinion formed the basis for the October 24, 2003 Millsite Rule. *See* 68 Fed. Reg. at 61054-55.

Nevertheless, the Federal Defendants make much of the fact that a congressional budget rider later precluded the application of the Crown Jewel Mine Decision to that particular mine. Fed. Resp. at 18-19.  However, that rider only precluded the application of the 1997 Millsite Memorandum and the policies contained in the Crown Jewel Mine Decision to current or proposed mining operations filed before 1997.  The rider said nothing about limiting the Clinton Administration's millsite interpretation to future post-

1999 mining plans.  Another rider, in 2000, limited the application of the Clinton millsite policies to that fiscal year. *See* 68 Fed. Reg. at 61055 (discussing riders, the 1997 Millsite Memorandum, and the Crown Jewel Mine Decision).

In any event, the fact that the Crown Jewel Mine Decision was not made finally effective to that particular mine site does not mean that it does not "pertain" to the issues involving the agencies' reversal of the Decision's legal findings as reflected in the final 2003 Millsite Rule, *see* <u>Pers. Watercraft Indus. Ass'n</u>, 48 F.3d at 546 n.4, or "might have influenced the agency's decision." *See* <u>County of San Miguel</u>, 587 F.Supp.2d at 71. Indeed, as shown above, the Decision was specifically referenced in the record and analyzed as part of the Interior Department's reversal of the Clinton Administration's millsite interpretations and policies.

In addition, despite their relevance to the challenged Millsite Rule, **none** of the documents relied upon by the agencies in issuing the Crown Jewel Mine Decision, or in promulgating the 1997 Millsite Memorandum are included in the record.  On the surface this makes it seem that these important decisions were made without any legal or factual support – which the Federal Defendants will likely argue on the merits.  Yet, based on the government's response, it is now clear that it has never conducted any search of its files for this category of documents – instead believing erroneously that the Clinton-era millsite analysis is "irrelevant" to the rulemaking which later reversed those policies.[3]

Thus, for both the Ancillary Use Memorandum and the Crown Jewel Mine Decision, simply because these decisions were later superseded by the decisions of the Bush Administration leading up to the challenged Rules, and the Rules themselves, does not mean that the government can shield these documents from judicial review.  They go

---

[3] The same is true for the September 28, 2001 Memorandum directive from Deputy Secretary Griles, which discussed the 1997 Millsite Memorandum and began the process which led to the October 7, 2003 millsite opinion and the October 24, 2003 Millsite Rule.  The Griles Memorandum discusses additional documents related to the millsite issue (such as Secretary Babbitt's June 22, 1999 letter to Nevada Senator Reid) but these documents are also excluded.

to the heart of the merits in this case – whether the abrupt reversals of its legal positions in this case are legally valid. *See* <u>Louisiana Pub. Serv. Comm'n v. FERC</u>, 184 F.3d 892, 897 (D.C. Cir. 1999) ("For the agency to reverse its position in the face of a precedent it has not persuasively distinguished is quintessentially arbitrary and capricious.").

**C.    The Agriculture and Forest Service Documents Are Part of the Record**

The Federal Defendants continue to refuse to produce any documents from the Department of Agriculture ("DOA") or its USFS related to the challenged Rules.  The government argues that, under its view of the law, these two agencies are not properly part of this lawsuit and thus their documents cannot be considered. Fed. Resp. at 20-23.

Similar to the Interior documents discussed above, however, the government's argument rests entirely on their ultimate legal views on the merits.  The government cannot justify excluding a whole category of documents simply because they do not think that Plaintiffs can prevail against the DOA/USFS on the merits.  Here, the Federal Defendants have not moved to dismiss the DOA or USFS from the lawsuit, and thus, at this time, for this Motion, they are defendants in the case.  As such, the duty on the government to produce a complete record of the relevant DOA/USFS document cannot be waived.

Regarding the DOA and USFS documents, the Federal Defendants argue that neither the 2003 Memorandum from Undersecretary Rey (original Exhibit 4) or the 2008 Regional Forester letter (original Exhibit 5), or any document in the files of these two agencies, concern "issues unique to" the challenged rulemakings. Fed. Resp. at 21.  The government maintains that "plaintiffs and intervenors cannot link these Agriculture writings to the final [Rules]." Fed. Resp. at 22.

That is wrong.  The Rey Memorandum, for example, expressly cites the Ancillary Use Memorandum, the 1997 Millsite Memorandum, and the Crown Jewel Mine Decision as indicative of the previous/Clinton Administration's legal policies interpreting the Mining Law. The Memorandum then determines that "none of these documents" are to be utilized by the DOA/USFS in regulating mining operations on USFS lands.  Essentially, the Rey Memorandum

adopts the legal view which the Interior Department was adopting at roughly the same time in the 2003 Millsite Rule and the later 2008 Claims Rule.  Thus, there is a definite "link" between the DOA/USFS documents and the challenged Rules.  Similarly, the Colorado Regional Forester's letter shows that the USFS takes the same position as the challenged 2008 Rules – refusing to consider the validity of mining or millsite claims (and failing to require any payment of FMV) when reviewing proposed mining operations.

Thus, the documents are certainly relevant for this Court to better understand the federal government's legal interpretations of the Mining Law contained in the challenged regulations.

**D.**     **The Excluded Documents Should Be Considered As Supplements to the Record**

Even if the excluded documents are not considered part of the formal administrative record, these documents may also be considered by this Court to supplement the record submitted by the agency.  Federal courts have considerable discretion to consider documents not in the agency-submitted record when "resort to extra-record information [is appropriate] to enable judicial review to become effective."  Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989).  Esch enumerated eight situations where "extra-record review is appropriate," including: (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; and (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly.  *See also* Miners' Record Motion at 6 (making same argument).

Courts since Esch regularly allow supplementation of the record under these circumstances. *See*, Recent Past Preservation Network v. Latschar, 2009 WL 6325769, at *2 (D.D.C. 2009)(summarizing caselaw allowing record supplementation);  Amfac Resorts, 143 F.Supp.2d at 11-12 *citing* Camp v. Pitts, 411 U.S. 138, 142-43 (1973);  James Madison Ltd., Inc. v. Ludwig, 82 F.3d 1085, 1095 (D.C.Cir.1996);  Environmental Defense Fund, Inc. v. Costle, 657 F.2d 275, 285 (D.C.Cir.1981).   Courts will allow supplementation of the record under these situations especially "if petitioners made a prima facie showing that the agency excluded from

the record evidence adverse to its position." <u>Kent County, Delaware Levy Court v. U.S. E.P.A.</u>, 963 F.2d 391, 396 (D.C.Cir. 1992).

These circumstances are certainly present here.  First, there is no dispute that the government has excluded document "adverse to its position."  Second, these documents were reviewed by the agency (e.g., the Ancillary Use Memorandum and Crown Jewel Mine Decision), yet excluded from the record.  Third, the excluded documents are "relevant factors" pertaining to the agencies' shifting interpretations of the Mining Law – a central issue in the case.  Lastly, this evidence will assist this Court in reviewing these differing and complex legal issues on the merits.  It should also be noted that all of the documents and document categories requested by Plaintiffs are documents prepared by the Defendant agencies themselves before the relevant challenged Rules were issued (2003 for the Millsite Rule, 2008 for the Mining Claim Rule).

Thus, under these well-established justifications for supplementing the record, this Court should order the submittal of the excluded documents.

## II.     THE ASSERTED PRIVILEGES DO NOT APPLY TO ALL OF THE WITHHELD DOCUMENTS

The Federal Defendants have provided nothing new to justify their assertion of attorney-client and attorney-work-product privileges used to withhold over 300 documents in the record.  Indeed, their "privilege log" has not changed and still contains glaring omissions, from the lack of any name of either the author or recipient, or both, to omitted dates, to simplified descriptions of the documents (such as "email regarding proposed rule").  These omissions fail to meet the government's strict burden in proving the applicability of the asserted privilege for each document. <i>See</i> <u>Schreiber v. Society For Sav. Bancorp, Inc.</u>, 11 F.3d 217, 220 (D.C. Cir. 1993); <u>Alexander v. F.B.I.</u>, 192 F.R.D. 42, 45-46 (D.D.C. 2000).

## A.     <u>The Government Failed to Respond at All to Plaintiffs' Motion Regarding the Asserted Attorney-Work-Product Privilege</u>

The Federal Defendants withheld three documents under only the attorney-work-product privilege, all related to the Millsite Rule: "Millsite Privileged" documents numbered MIL000549

(4/16/1999); MIL000550-51 (4/20/1999); and MIL007527 (9/4/2003).  The remaining withheld

documents are under assertions of attorney-client or a combined attorney-client and attorney-

work-product privileges.  One document, MIL000548 (4/16/1999), was withheld with the

assertion of "awp deliberative."

Although Plaintiffs' Motion specifically challenged the government's assertion of the

attorney-work-product privilege, *see* Motion at 21-22, the government's reponse offers no

defense at all regarding this privilege.  Instead, the Federal Defendants' response discusses the

"deliberative process privilege" at length. Fed. Resp. at 24-25.  Based on the government's

failure to respond at all to Plaintiffs' Motion on the three attorney-work-product documents,

these documents should be released. *See* Local Rule 7(b)(failure to respond to a Motion may be

treated as conceding the Motion).  For the documents that list both privileges, absent the

government meeting its burden regarding the attorney-client privilege (discussed below), these

documents should also be similarly released.

## B.      The Government Failed to Adequately Justify the Attorney-Client Privilege

The agencies offer little to no defense to Plaintiffs' Motion on critical requirements for

the assertion of the attorney-client privilege.  They failed to correct a series of glaring omissions

regarding the names of the authors and recipients, or both, of these supposedly privileged

documents as well as failing to provide more than a cursory description of the documents.  They

also failed to respond at all to their failure to have the privileges invoked by the proper high-

ranking agency official.

The following documents in the "Millsite Privileged" log alone suffer from these errors:

MIL000043 (2/25/1999)(recipient missing); MIL000109 (3/2/1999)(recipient missing);

MIL000369 (3/26/1999)(author and recipient missing); MIL001342 (undated)(author and

recipient missing); MIL001347 (undated)(author and recipient missing); MIL004124

(undated)(recipient missing); MIL004485 (undated)(recipient missing); MIL004685

(undated)(author and recipient missing); MIL004689 (undated)(author and recipient missing);

- 21 -

and MIL004764 (6/16/2003)(author and recipient missing). *See* Docket # 72-1 (re-filed "Millsite Privilege" log).  For the "FMV Privileged" log, similar omissions are too numerous to list, with over ninety (90) documents either missing an author, recipient, date, and/or all three critical pieces necessary for the government to sustain the privilege. *See* Docket # 72-2 (re-filed "FMV Privilege" log).

As discussed in Plaintiffs' Motion, at 17 and 20-21, in order to meet its burden to sustain the assertion of the attorney-client privilege, the government must specifically describe and include this information – blanket assertions of privilege are inadequate. *See, e.g.*, Senate of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 584-85 (D.C. Cir. 1987)("conclusory assertions of privilege will not suffice to carry the agency's burden," and "[t]he information provided by the DOJ – consisting almost entirely of each document's issue date, its author and intended recipient, and the briefest references to its subject matter – will not do.").

According to the Federal Defendants, as long as a government attorney's name appears in the privilege log for a document, this automatically satisfies their strict burden to prove the applicability of the privilege. Fed. Resp. at 26.  That, however, is not the test in this Circuit.

> The privilege applies only if (1) the asserted holder of the privilege is sought to become a
> client; (2) the person to whom the communication was made (a) is a member of the bar of
> this court or his subordinate and (b) in connection with this communication is acting as a
> lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by
> his client (b) without the presence of strangers (c) for the purposes of securing primarily
> either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal
> proceeding, and not (d) for the purposes of committing a crime or tort; and (4) the
> privilege has not been (a) claimed and (b) not waived by the client.
> *Alexander*, 186 F.R.D. at 106 (quoting *In re Sealed Cases*, 737 F.2d 94, 98-99 (D.C. Cir.
> 1984)).

Alexander, 192 F.R.D. at 45, n. 2.  Listing only the recipient, or only the author, or neither, fails to provide this needed information.

Further, the mere fact that a person on the "cc list" or even an author or recipient may be an attorney does not provide the required evidence.  "[A]ttorney-client privilege 'does not allow the withholding of documents simply because they are the product of an attorney-client

relationship.... *It must also be demonstrated that the information is confidential*.'" <u>State of Maine v. U.S. Department of the Interior</u>, 385 F.3d 126, 136 (1st Cir. 2002)(emphasis in original), *quoting* <u>Mead Data Central, Inc. v. Dep't of the Air Force</u>, 566 F.2d 242, 253 (D.C. Cir.1977). "The possession of a law degree and admission to the bar is not enough to establish a person as an attorney for purposes of determining whether the attorney-client privilege applies." <u>Boca Investerings Partnership v. U.S.</u>, 31 F.Supp.2d  9, 11 (D.D.C. 1998).  "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." <u>Motley v. Marathon Oil Co.</u>, 71 F.3d 1547, 1550-51 (10th Cir. 1995). *See also* <u>U. S. v. Chen</u>, 99 F.3d 1495, 1501 (9th Cir. 1996) ("That a person is a lawyer does not, ipso facto, make all communications with that person privileged. The privilege applies only when legal advice is sought from a professional legal advisor in his capacity as such.").  For the numerous documents without any author or recipient, or both, it is hard to see how the government has "demonstrated that the information is confidential" when the government fails to provide even this basic information.

The government asserts that all of the names listed as authors/recipients are Interior Department attorneys rendering legal advice to clients. Fed. Resp. at 26, n. 5.  However numerous documents from these attorneys, and withheld under the attorney-client privilege, are addressed to other Interior Department attorneys (not clients) or to no one at all.  For example, many "FMV Privileged" documents are authored by Scott Haight, with no recipient. *See, e.g.,* Docket 72-2 (FMV000172, 000279, 000288, 000298, 000302, 000307, 000312, and 000432). This implies that Mr. Haight is an Interior Department attorney providing confidential legal advice to clients (although without any client listed this fails to meet the informational requirements of the privilege as noted above).  Yet for other documents, Mr. Haight is listed as the recipient of communications from Interior attorneys, such as Karen Hawbecker and Ted Hudson – implying that Mr. Haight is the client. *See, e.g.,* Docket 72-2 (FMV000192, 000194, 000795, 001070, 001219, 001220, and 001222).  For yet others still, Mr. Haight is listed as the co-author along with Interior attorneys Hawbecker or Hudson, of documents with no named

recipient. *See, e.g.,* Docket 72-2 (FMV000128, 000156, 000195, 000211, 000240, 000250, 000259, 000284, 000493-696, 000772, 000798, 000819, 001007, 001030, 001223, 001240, 001259, and 001297).

To successfully invoke the attorney-client privilege, however, Mr. Haight cannot be both a client and an attorney at the same time for the same series of documents.  In addition, Mr. Haight's role as a BLM policy-maker for this rulemaking further undermines the government's sweeping claims of privilege.  Mr. Haight is currently the Field Manager for the Butte, MT office of the BLM, a non-attorney role. http://www.blm.gov/mt/st/en/info/offices.html (last viewed July 12, 2011).  Plaintiffs cannot verify that Mr. Haight is an attorney, or if he is, acted as an attorney providing legal advice to clients during the rulemaking process.  For example, Mr. Haight was listed as the BLM public contact person for the proposed Mining Claim Rule. *See* 72 Fed. Reg. at 8139 (Feb. 23, 2007).  To the best of Plaintiffs' knowledge, Mr. Haight was with the Montana office of the BLM during the rulemaking and was not an attorney in the Solicitor's office.

Even if Mt. Haight is a lawyer, the government's burden to maintain the privilege is especially heightened when there is no evidence that he was providing confidential legal advice. If a lawyer's "duties included the formulation of public regulations and the interpretation of these regulations; we find it difficult to understand how the interpretation of public regulations can be considered confidential and covered by the attorney-client privilege, and believe that defendants have failed to demonstrate that they are." Gulf Oil Corp. v. Schlesinger, 465 F.Supp. 913, 917 (E.D. Pa. 1979).  *See also* Boca Investerings, 31 F.Supp.2d  at 12 (in-house lawyer, not working in organization's legal department, and providing "management or business" information, is not protected by the privilege), *citing* In re Sealed Case, 737 F.2d 94, 99 (D.C. Cir. 1984).

The government also argues that the brief descriptions of the withheld documents as "draft rule" or "memorandum" sent between attorneys means that the document has been described with enough specificity to establish the privilege. Fed. Resp. at 25-26.  However, numerous documents between the same Interior Department attorneys, with the same "draft rule" or "memorandum" description are found throughout the "non-privileged" log.  *See, e.g.,*

- 24 -

"Millsite Non-Privileged" documents: MIL000042, 3/1/1999 ('email regarding proposed revisions to text of the mining claim rule') sent to Karen Hawbecker, attorney in the Solicitor's office; MIL001058, 5/1/1999 ('Memorandum regarding rulemaking …') sent from Hawbecker to Interior Solicitor John Leshy. Docket # 53-1.  Thus, it is impossible to tell from the minimalistic title of most of these documents whether the correspondence was truly meant to be confidential and contained legal advice, among the other requirements to assert the privilege.

Although the Federal Defendants admit that they bear the burden to establish the privilege for each withheld document, they argue that Plaintiffs have failed to show why the documents are needed. Fed. Resp. at 26.  This ignores the fact that, as explained in the Plaintiffs' motion, the need for the "complete" record is a fundamental prerequisite for effective judicial review. Motion at 23-25.  "We would not uphold the claim of privilege if failure to disclose . . . would substantially impair the rights of [the parties challenging the agency action]." Izaak Walton League of America v. Marsh, 655 F.2d 346, 370 (D.C. Cir. 1981).  Contrary to the government, the issue is not "why" the plaintiffs need to see the withheld documents. Fed. Resp. at 26.  The fact that the documents are in the record, and that the agency has failed to meet its burden to justify the asserted privilege, is enough to warrant disclosure.

Lastly, the agencies argue that disclosure of the documents, even for *in camera* review, is not appropriate because the government should get yet another chance to develop a proper privilege log. Fed. Resp. at 27-28.  However, the government has had since at least April, if not February and before, to justify withholding of the alleged privileged documents and has failed to produce any additional information.  Even the log provided with their response brief is merely the same log submitted with the record in February.  Further delay is not justified.

## CONCLUSION

As was the situation in Mineral Policy Center, this case involves important issues involving tens of millions of acres of federal public land in the West.  The government's efforts to shield critical agency documents from this Court's review – documents that undoubtedly pertain to this case yet are damaging to the government's position – should be rejected.

Respectfully submitted this 15th day of July, 2011.


*/s/ Edward S. Scheideman*
_____
Edward S. Scheideman, DC Bar # 475128
DLA PIPER US, LLP
500 8th Street, NW
Washington, DC 20004
(202) 799-4534
Fax: (202) 799-5534
edward.scheideman@dlapiper.com


*/s/ Roger Flynn*
_____
Roger Flynn, *Pro Hac Vice*
Jeffrey C. Parsons, *Pro Hac Vice*
WESTERN MINING ACTION PROJECT
P.O. Box 349
440 Main St., #2
Lyons, CO 80540
(303) 823-5738
Fax (303) 823-5732
wmap@igc.org

Attorneys for Earthworks, High Country Citizens' Alliance, Great Basin Resource Watch, Save the Scenic Santa Ritas, and Western Shoshone Defense Project


## Certificate of Service

I hereby certify that on this 15th day of July, 2011, I caused the foregoing (and all attachments thereto) to be transmitted to the Clerk's Office of the U.S. District Court for the District of Columbia via email to the address of dcd_cmecf@dcd.uscourts.gov, which will serve counsel for all parties.

/s/ *Roger Flynn*
_____
Roger Flynn

**EXHIBIT LIST**
for
Plaintiffs' *Reply* in Support of Their Motion to Compel Production of Documents
Improperly Withheld From the Administrative Record
in
Earthworks, et al. v. U.S. Department of the Interior, et al.
No. 1:09-cv-01972-HHK

A.     December 7, 2005 Memorandum from Interior Secretary Gale Norton to the Acting
       Assistant Secretary for Land & Minerals Management and the Director of the BLM,
       entitled "Preparation of 'Fair Market Value' Regulations." (AR:FMV000267).

B.     November 14, 2005 Memorandum from the Interior Solicitor to Secretary Norton and the
       Director of the BLM entitled "Rescission of 2001 Ancillary Use Memorandum."
       (AR:FMV000268-69).

C.     November 14, 2005 Memorandum from the Solicitor to the Secretary and BLM Director
       entitled "Legal Requirements for Determining Mining Claim Validity Before Approving
       a Mining Plan of Operations." (AR:FMV000270-274).